1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Beth E. Terrell, CSB #178181
Email: bterrell@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Paul Arons
Email:  lopa@rockisland.com
LAW OFFICE OF PAUL ARONS
685 Spring Street, Suite 04
Friday Harbor, Washington  98250
Telephone:  (360) 378-6496
Facsimile:  (360) 378-6498

Deepak Gupta
Email: deepak@guptabeck.com
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN BREAZEALE, KAREN SOLBERG, KEVIN HIEP VU, NANCY MORIN, and NARISHA BONAKDAR, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br>VICTIM SERVICES, INC., d/b/a CorrectiveSolutions , NATIONAL CORRECTIVE GROUP, INC., d/b/a CorrectiveSolutions, and MATS JONSSON,<br><br>Defendants. | No. 3:14-cv-05266-MEJ<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER EQUITABLE RELIEF FOR VIOLATIONS THE FAIR DEBT COLLECTION PRACTICES ACT, [15 U.S.C. §§ 1692, *et seq.*] AND CALIFORNIA UNFAIR COMPETITION LAW [Cal. Bus. & Prof. Code §§ 17200, *et seq.*]<br><br>Magistrate Maria-Elena James<br><br><u>CLASS ACTION</u><br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiffs allege on their own behalf, on behalf of others similarly situated, and on behalf of the general public, as follows:

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 1

1

2

## I.   INTRODUCTION

3      1.      The plaintiffs are five California consumers who received a series of letters

4   threatening them with criminal prosecution unless they paid alleged debts arising from dishonored

5   checks. The letters all bore the seal and letterhead of a county district attorney.

6      2.      What the plaintiffs did not realize was that these letters—although they appeared to

7   come from California district attorneys—were actually sent by Defendant CorrectiveSolutions, a

8   private debt-collection business. The letters claimed that the plaintiffs would face criminal

9   prosecution unless they paid the amounts owed on their checks plus over $200 in illegal fees.

10   CorrectiveSolutions operates much like any other high-volume debt collector: It solicits business

11   from national retailers and other merchants and then attempts to collect on dishonored checks using

12   standardized collection notices. But there is one crucial difference: Under CorrectiveSolutions' "Bad

13   Check Restitution Program," the company pays county district attorneys for the use of their seal and

14   letterhead, thereby disguising its ordinary civil debt collection as law enforcement. It is

15   CorrectiveSolutions' business model to scare consumers into believing that they are the subject of

16   real criminal proceedings and that unless they "agree" to pay for an expensive "diversion" program,

17   they may be arrested, prosecuted, and even imprisoned.

18      3.      CorrectiveSolutions' programs violate both state and federal consumer-protection

19   laws governing collection abuses.  The programs also disregard the requirements imposed by

20   California permitting bad check diversion programs for real criminal suspects. Just a few weeks ago,

21   moreover, the American Bar Association issued a formal ethics opinion condemning the practices of

22   companies like CorrectiveSolutions and concluding that they are engaged in the unauthorized

23   practice of law. *See* ABA Formal Ethics Opinion 469 (Nov. 12, 2014), attached as Exhibit 10. The

24   opinion emphasizes that such practices are "deceptive" because they "misuse the criminal justice

25   system by deploying the apparent authority of a prosecutor to intimidate an individual," and are also

26   "abusive" because they convey "the impression that the machinery of the criminal justice system has

27   been mobilized" against the consumer.

28

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 2

4.      In violation of applicable legal and ethical standards, CorrectiveSolutions uses false and misleading threats of criminal prosecution to intimidate Californians who have written checks that are dishonored by the bank. The plaintiffs bring this lawsuit to end Defendants' unlawful practices in California and recover for consumers the unlawful fees that the Defendants have collected.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over Plaintiffs' claims under the Fair Debt Collection Practices Act ("FDCPA"), under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## III.      PARTIES

7.      Plaintiff Kevin Breazeale is an individual residing in Alameda County, California.

8.      Plaintiff Karen Solberg is an individual residing in Sacramento County, California.

9.      Plaintiff Kevin Vu is an individual residing in Orange County, California.

10.      Plaintiff Nancy Morin is an individual residing in Placer County, California.

11.      Plaintiff Narisha Bonakdar is an individual residing in El Dorado County, California.

12.      Defendant Victim Services, Inc., d/b/a CorrectiveSolutions is a Delaware corporation with its principal place of business in San Clemente, California. It operates in California and a number of other states.

13.      Defendant National Corrective Group, Inc., d/b/a CorrectiveSolutions, is a Delaware corporation that has or had its principal place of business in San Clemente, California. It operated in California and a number of other states.  Plaintiffs allege, on information and belief, that in approximately June 2014, National Corrective Group, Inc. sold the CorrectiveSolutions business to Victim Services, Inc. and that after the sale, Victim Services, Inc. took over operation of the collection business that is the subject of this lawsuit. Unless otherwise stated, when plaintiffs refer to CorrectiveSolutions in this First Amended Complaint, they are referring to the

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 3

1    CorrectiveSolutions business, whether operating under the corporate ownership of National

2    Corrective Group, Inc., or of Victim Services, Inc.

3        14.    Defendant Mats Jonsson is or was the CEO of National Corrective Group, Inc., and is

4    the CEO and principal shareholder of Victim Services, Inc. On information and belief, plaintiffs

5    allege that Jonsson created Victim Services Inc. for the purpose of owning and operating the

6    CorrectiveSolutions check collection business. At all times relevant herein, Defendant Jonsson has

7    determined and exercised actual control over the collection policies and practices at issue in this

8    lawsuit.  He has authorized, approved and ratified the collection letters that CorrectiveSolutions uses

9    and the fees that CorrectiveSolutions charges.  He has actively promoted the "Bad Check Restitution

10   Program" to California district attorneys and advocated for the contractual provisions used to justify

11   the collection letters sent to class members and the fees they are charged.  Jonsson has had the

12   ability to control the letterhead used in the form letters, the content of the letter and the fees

13   assessed, and he has used his power over CorrectiveSolutions' collection practices to implement the

14   practices that are the subject of this lawsuit.

15       15.    Defendant CorrectiveSolutions and Defendant Jonsson (collectively "Defendants")

16   use the instrumentalities of interstate commerce and the mails in a business the principle purpose of

17   which is the collection of debts. Defendants collect, or attempt to collect, debts owed, or allegedly

18   owed, to others and are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

19       16.    Defendants are not employees of any California district attorney.

20                    **IV.    CALIFORNIA'S BAD CHECK DIVERSION ACT**

21

22       17.    In California, "bad check diversion programs" are governed by statute. *See* Bad

23   Check Diversion Act, Cal. Penal Code § 1001.60 *et seq.* ("Diversion Act"). The Diversion Act

24   permits county boards of supervisors to authorize county district attorneys to create bad check

25   diversion programs if the supervisors determine that sufficient funds exist to run the program. Cal.

26   Penal Code § 1001.60. District attorneys may contract with private companies to conduct authorized

27   programs. *Id.*

28

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 4

18.     The Diversion Act permits district attorneys to refer check writers to bad check diversion programs only if "there is probable cause to believe" the person violated California's "Bad Check Law," California Penal Code § 476a. Cal. Penal Code § 1001.60.

19.     Under the California Penal Code, it is not a crime simply to present a check that is later dishonored. Cal. Penal Code § 476a. To the contrary, the statute is explicitly limited to a person who, "willfully, with intent to defraud," presents a check, "knowing at the time" that there are not sufficient funds in the account to cover the check. *Id.*

20.     The Diversion Act requires district attorneys to make two distinct and necessary individualized determinations in each and every case referred to a "bad check diversion program." First, the district attorney must find probable cause to believe that the check writer had the necessary fraudulent intent when he or she presented the check. Second, before referring a case to the diversion program, the district attorney must consider the five factors set forth in California Penal Code Section 1001.62.

21.     The Diversion Act does not permit a district attorney to make a blanket determination that all checks fitting particular criteria may be referred to a diversion program, and dispense with an individualized review of the evidence in each case.

22.     Once a district attorney properly decides to refer a particular check writer to a diversion program, the district attorney may require the check-writer participant, as a condition of avoiding prosecution, (a) to complete a class, (b) to make full restitution to the victim for the amount of the check and for bank charges incurred by the victim, and (c) to pay in full "the diversion fees, if any, specified in Section 1001.65." Cal. Penal Code § 1001.64.

23.     Section 1001.65 authorizes two fees: first, a $50 administrative fee and second, reimbursement for bank charges actually incurred by the victim, up to a maximum of $15 per check. Cal. Penal Code §§ 1001.64–.65. No other charges or fees are authorized. Accordingly, the most a bad check diversion program can charge a check writer in fees is $65.

## V.     DEFENDANTS' BAD CHECK RESTITUTION PROGRAM

24.     Defendants operate a computer-driven collection business, using standardized forms, demand letters, and procedures. The material difference between Defendants' check collection

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 5

business and that of their competitors is that Defendants pay district attorneys for permission to use the name and authority of the district attorneys' office. Defendants create the appearance that they are operating a criminal diversion program, not a check collection business.

25.     Unlike real criminal diversion programs, in Defendants' program, no prosecutor has reviewed the evidence, made a probable cause determination, or charged the check writer before he or she is offered "diversion." In fact, it is unlikely that a check writer who ignores the diversion offer will be charged with a crime.

26.     The driving force behind Defendants' demands is to collect its fees, including its fee for an expensive "Financial Accountability" class. Although Defendants demand fees for the class, they do not in fact require check writers to attend the class.

27.     Defendants' standard forms, practices, and procedures are exemplified in the "Start Up Packet" for the "Bad Check Restitution Program" prepared for Glenn County in 2013, a copy of which is attached to this First Amended Complaint as Exhibit 1.

28.     As Defendants' program materials demonstrate, Defendants typically receive referrals directly from retailers and private collection agencies, not from district attorneys. Defendants' major referral sources are national retailers like Target and Safeway, and large debt collection entities such as Telecheck and Certegy. In advertising materials sent to retailers, CorrectiveSolutions has touted its ability to harness the power of the "DA brand."

29.     Typically, Defendants' collection process begins when retailers and collections agencies transmit electronic check information to Defendants for the purpose of collection.

30.     Usually, the electronically transmitted information includes little more than is available from reviewing the face of the check. Information necessary to make a probable cause determination under the California Penal Code, or to weigh the factors listed in the Diversion Act is not provided.  Unless Defendants have explicit information that a referred check fails to meet the very broad "Intake Criteria," *see* Exhibit 1 at 5–6, Defendants will commence the collection process.

31.     In some counties, prior to attempting collection of an individual's check, Defendants obtain the district attorney's purported approval by sending the district attorney a list of new checks.

1   Defendants will begin collections unless the district attorney pulls a check from the list within a few

2   days. In other counties, Defendants skip even this step.

3       32.     Defendants begin their uniform collections process by using the check information

4   they receive to generate form collection letters.

5       33.     Throughout California, Defendants send check writers a series of form collection

6   letters that are substantially the same:

7           a.  Each letter is on the official letterhead of a district attorney with whom

8               Defendants have contracted.

9           b.  The only material differences in the letters Defendants send to check writers

10              in different counties is the name of the district attorney, letterhead, and seal

11              that appears on the letters. Defendants seek unlawful fees in each letter,

12              including a Financial Accountability class fee, although the amount of the

13              charges may vary from county to county.

14          c.  Each letter is designed to appear as if it was sent by a district attorney's office

15              and is an official communication from that office.

16          d.  Each letter contains either an explicit or implicit threat to prosecute the check

17              writer if he or she fails to pay all fees associated with Defendants' "Bad

18              Check Restitution Program."

19          e.  Defendants' "Start-Up Packet" contains examples of each letter in their "core

20              letter series." *See* Exhibit 1 at 16–24.

21      34.     In addition to the form letters, Defendants contact check writers by email and

22  telephone, frequently repeating or amplifying their prosecution threats.

23      35.     Despite its official appearance, the collection effort is driven and controlled by

24  CorrectiveSolutions, a private, for-profit collection company, which seeks to maximize the fees it

25  can extract from the Californians it deceives and intimidates.

26      36.     CorrectiveSolutions' relationship with district attorneys is governed by

27  CorrectiveSolutions' form contract, which sets forth the fees it will charge check writers, the fees it

28  will pay district attorneys, and its allocation of partial payments.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 7

37.     CorrectiveSolutions' contract with the El Dorado County district attorney's office is attached to this First Amended Complaint as Exhibit 2.  It is an example of CorrectiveSolutions' form contract and reflects the fees CorrectiveSolutions charges throughout California:

| | |
|---|---|
| Administrative fee: | $ 50 |
| Diversion seminar fee | $191 with automatic 3% annual increase |
| Restitution fee | $ 15 maximum, based on merchant's bank charge |
| Credit/debit card fee | $10 |
| Payment Plan late fee | $10 |
| Class rescheduling fee | $25 |
| Overpayment refund fee | $5 |

*See* Exhibit 2 at 8.  None of these fees are lawful because Defendants' program does not comply with the Diversion Act's prerequisites.

38.     Even if Defendants' program was otherwise lawful, only the administrative and restitution fees are permitted by the Diversion Act.

39.     Under CorrectiveSolutions' form contract with El Dorado County, Defendants pay the district attorney 40% of the $50 administrative fee.  Defendants retain 100% of all other fees collected.  *See* Exhibit 2 at 9.

40.     When a check writer sends in only a partial payment, Defendants allocate 50% to the merchant and retain 50% for their fees.  *See* Exhibit 2 at 9.

41.     When CorrectiveSolutions threatens prosecution in its collection letters, it does not know that the district attorney will prosecute if the check writer refuses to participate in its program or pay the fees that CorrectiveSolutions demands.  In some cases, CorrectiveSolutions knows that the district attorney will not initiate prosecution because the amount of the check falls below the district attorney's established threshold for even considering prosecution.

42.     Plaintiffs allege, on information and belief, that very few check writers to whom Defendants send collection letters will ever be prosecuted, even if the check writer makes only partial payment or no payment at all.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 8

43.     Defendants' letters provide a toll-free number for check writers with questions to call.  That number connects callers to Defendants' offices, where calls are answered by Defendants' employees.

44.     Check writers are led to believe that they are calling their local district attorney's office.  To further the illusion that check writers have called the district attorney, Defendants encourage county district attorneys to record a message scripted by Defendants that plays when check writers call the toll-free number.

45.     The message states that to avoid the risk of prosecution, the check writer must enroll in the Bad Check Restitution Program.  An example of the script is in the Glenn County Start-Up Packet.  *See* Exhibit 1 at 31.

46.     Check writers who call in are ultimately connected with Defendants' commission employees, whose compensation is directly tied to the amount of money they collect from check writers.  Defendants' employees do not disclose that they work for a private company and not the district attorney.  To induce payment Defendants routinely make express and implicit threats of prosecution to check writers with whom they speak.

## VI.     DEFENDANTS INTIMADATED AND DECEIVED PLAINTIFFS
### Kevin Breazeale

47.     Kevin Breazeale is 49 years old, and has been steadily employed with the same company as an applications support engineer for more than six years. He has lived in Alameda County for over two decades.

48.     On or about September 14, 2013, Mr. Breazeale leased a car from Dublin Hyundai, primarily for his personal and family use. Mr. Breazeale agreed to make $847 monthly payments and to pay a $500 refundable security deposit. On or about September 14, 2014, Mr. Breazeale gave Dublin Hyundai a check for $500.  The check was post-dated and Dublin Hyundai agreed to hold the check for deposit.

49.     Sometime after giving the check to Dublin Hyundai, Mr. Breazeale realized he did not have enough money in his account to cover the check. He contacted Dublin Hyundai and explained the situation, but the dealership had already deposited the check.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 9

50.     Dublin Hyundai agreed that Mr. Breazeale could cover the check with partial payments.  He paid $250 in November 2013 and paid the $250 balance in February 2014.

51.     Mr. Breazeale is still leasing the car and making the monthly payments required under the lease agreement.

52.     Defendants sent Mr. Breazeale a letter dated January 17, 2014, a copy of which is attached to this First Amended Complaint as Exhibit 3.  The letter appeared to be from the "Alameda County District Attorney Bad Check Restitution Program." It demanded payment for the check to Dublin Hyundai and additional fees.  The letter was titled:

**OFFICIAL NOTICE - IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the Alameda County District Attorney, bore the signature block and signature of "Nancy O'Malley, District Attorney," and listed a "Case number."

53.     The letter said Mr. Breazeale was accused of a crime punishable by up to a year in prison. The letter said that Mr. Breazeale could avoid the possibility of further action by participating in the "Bad Check Restitution Program." The letter also said that Mr. Breazeale had to attend a Financial Accountability class and pay a total of $730.00, consisting of the check amount plus the following fees:

Admin Fee:                                        $50

Financial Accountability Class Fee:        $180

54.     Mr. Breazeale was shaken and upset by the letter. He called the toll-free phone number listed in the letter, which appeared to be the phone number for the Office of the Alameda County District Attorney.

55.     Mr. Breazeale explained that he had resolved the unpaid check issue with Dublin Hyundai.  Mr. Breazeale was directed to send in a receipt showing payment of the check and to wait four or five days for a response. When he called back, he was told the car dealer was demanding payment of the full $730.

56.     As instructed by the first letter, Mr. Breazeale mailed a letter to the "Alameda County District Attorney Bad Check Restitution Program," disputing that he owed any money. Mr. Breazeale incurred postage and stationary costs to send his letter.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 10

57.     Mr. Breazeale decided not to pay anything to the Bad Check Restitution Program because he had paid the dealership and had not committed a crime.

58.     Defendants sent Mr. Breazeale a second letter purporting to be from the "Alameda County District Attorney Bad Check Restitution Program," dated February 3, 2014. The letter was titled:

**FAILURE TO RESPOND - IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the Alameda County District Attorney, and bore the signature block and signature of "Nancy O'Malley, District Attorney." A copy of this letter is attached to this First Amended Complaint as Exhibit 4.

59.     The second letter told Mr. Breazeale that he had failed to respond or comply with the "District Attorney's Official Notice," that he still owed $730.00, and that he could still receive continued phone calls or notices until he fulfilled the requirements of the District Attorney Bad Check Restitution Program.

60.     Mr. Breazeale consulted an attorney to determine his legal rights. To facilitate the consultation he had to transmit relevant documents to the attorney, which he did, partially via a commercial facsimile service, incurring costs for faxing.

61.     Defendants sent Mr. Breazeale a third letter from the "Alameda County District Attorney Bad Check Restitution Program," dated March 6, 2014.  The letter was titled:

**WARNING - SECOND NOTICE OF FAILURE TO COMPLY**

The letter was on the letterhead of the Alameda County District Attorney, and bore the signature block and signature of "Nancy O'Malley, District Attorney."  A copy of the third letter is attached to this First Amended Complaint as Exhibit 5.

62.     The third letter said that Mr. Breazeale had failed to respond to notices regarding California Penal Code 476a, that he still owed $730, and that he could receive continued phone calls or notices until he fulfilled the requirements of the District Attorney Bad Check Restitution Program.

63.     Mr. Breazeale may have received additional letters.

64.     Mr. Breazeale did not pay fees for or attend the Financial Accountability class.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 11

1    65.    Mr. Breazeale has not been prosecuted.

2    **<u>Karen Solberg</u>**

3    66.    Karen Solberg has lived in the Woodlake neighborhood in Sacramento for almost 20

4    years.

5    67.    On approximately April 16, 2013, Ms. Solberg went to the office of Freeway

6    Insurance in Sacramento, to insure her personal vehicle. Ms. Solberg explained that she wanted to

7    purchase insurance, and wanted coverage for her daughter Emily as an additional driver of the

8    vehicle.  Ms. Solberg was quoted a price, which she paid. She was told to return with Emily's

9    driver's license information.

10   68.    When Ms. Solberg returned to the Freeway Insurance office, accompanied by her

11   daughter Emily, she was told that it would cost $75 to add Emily. Ms. Solberg explained that she

12   had been told that there would be no additional charge. The Freeway Insurance representative

13   insisted that Emily could only be added if Ms. Solberg paid $75.

14   69.    Feeling she had no choice if she wanted Emily insured, Ms. Solberg wrote a check

15   for $75 and left the office, confused and upset. She later called the Freeway Insurance office

16   supervisor and corporate offices, and was told that Freeway Insurance would not refund the

17   additional charge.

18   70.    Ms. Solberg decided to stop payment of the $75 check, cancel her Freeway

19   Insurance, and purchase insurance from another company. She did all three.

20   71.    Subsequently, FedChex Recovery contacted Ms. Solberg seeking payment of the $75

21   check plus a $25 service charge. Because she had stopped payment as a result of her good faith

22   dispute regarding Freeway Insurance's charges, Ms. Solberg owed neither the check amount, nor

23   any additional charges.

24   72.    Defendants sent Ms. Solberg a letter dated October 22, 2013, a copy of which is

25   attached to this First Amended Complaint as Exhibit 6. The letter appears to be from the "Orange

26   County District Attorney Bad Check Restitution Program," and seeks payment of a $75.00 check to

27   "Spot Coverage."  The letter was titled:

28

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 12

**OFFICIAL NOTICE - IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the Orange County District Attorney, bore the signature block of "Tony Rackauckas, District Attorney," and listed a "Case number."

73.     The letter stated that Ms. Solberg was accused of committing a crime for which she could be punished by up to a year in jail.  The letter stated that Ms. Solberg could avoid the possibility of further action and resolve the matter by participating in the "Bad Check Restitution Program," which  would require her to attend a Financial Accountability class and pay a total of $285.00, consisting of the check amount plus the following fees:

| | |
|---|---|
| Admin Fee: | $50 |
| Financial Accountability Class Fee: | $160 |

74.     Ms. Solberg was disturbed, angered and frightened by the letter. She did not understand why the Orange County District Attorney was threatening her over a check she had written in Sacramento County, or why she was accused of a crime when she had stopped payment on the check because of a dispute with an insurance company.

75.     Ms. Solberg contacted the "Bad Check Restitution Program," but was unable to persuade the Program to stop threatening her.  She received at least three subsequent collection demands, dated in December 2013 and January and February 2014, all on the letterhead of the Orange County District Attorney, bearing the signature block of "Tony Rackauckas, District Attorney," listing a "Case number," and demanding payment of $285.

76.     Ms. Solberg consulted an attorney to determine her legal rights. To facilitate the consultation she had to transmit copies of the letters she had received, which she did via the U.S. mails, incurring costs for postage and stationary.

77.     Ms. Solberg did not pay any money to the "Orange County Bad Check Restitution Program," or attend a Financial Accountability class.

78.     Ms. Solberg has not been prosecuted.

**Kevin Hiep Vu**

79.     Kevin Hiep Vu, a graduate of Cal State-Long Beach, is a married father of one.  He is a longtime resident of Orange County, California, currently residing in Fountain Valley.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 13

80.   In March 2014 he had his car repaired at Herb's Volvo, in Fullerton, California. He was charged $536.75 for repairs.

81.   Mr. Vu did not have enough money in his checking account at that time to pay for the repairs, so he wrote a check to Herb's Volvo in the amount of $536.75, with Herb's Volvo agreeing to hold the check for a few days until he could deposit money to cover the check.

82.   Mr. Vu was unable to cover the check the following week. Herb's Volvo deposited the check and it did not clear.

83.   Defendants sent Mr. Vu a letter dated June 19, 2014, a copy of which is attached to this First Amended Complaint as Exhibit 7. The letter appeared to be from the "Orange County District Attorney Bad Check Restitution Program." The letter was titled:

**OFFICIAL NOTICE - IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the Orange County District Attorney, bore the signature block of "Tony Rackauckas, District Attorney," and listed a "Case number."

84.   The letter stated that Mr. Vu was accused of committing a crime punishable by up to a year in prison. The letter said that Mr. Vu could avoid the possibility of further action and resolve the matter by participating in the "Bad Check Restitution Program." This would require him to attend a Financial Accountability class and pay a total of $752.75, consisting of the check amount, plus the following fees:

| | |
|---|---|
| Admin Fee: | $ 50 |
| Financial Accountability Class Fee: | $160 |
| Returned Item Fee | $  6 |

85.   Mr. Vu was scared by the threatening letter. He didn't want to go to jail, but he was going to have difficulty immediately coming up with the amount being demanded.

86.   Mr. Vu called the toll-free number listed on the letter, but was put on hold for so long that he decided to hang up and call back later. He then researched bad check restitution programs on the internet and discovered there were serious questions regarding the legality of the threats and demands in the letter he had received.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 14

87.     On or about June 25, 2014, in response to the letter he had received, Mr. Vu purchased and mailed a money order to the "Orange County District Attorney Bad Check Restitution Program" in the amount of $536.75, with the instructions that the money was for Herb's Volvo, and that he did not want to participate in the Bad Check Restitution Program or pay any fees for the Program.

88.     Mr. Vu alleges, on information and belief, that pursuant to its standard practice, Defendants ignored his instructions and kept $216.00 of his payment for their own fees.

89.     Mr. Vu received a second collection demand from the "Orange County District Attorney Bad Check Restitution Program," dated July 7, 2014, indicating that the District Attorney still had a case against him, stating that he had not fully complied with the "District Attorney's Official Notice" and that he still owed $216. A copy of that letter is attached to this First Amended Complaint as Exhibit 8.

90.     Mr. Vu received at third collection demand from the "Orange County District Attorney Bad Check Restitution Program," dated August 4, 2014, on the letterhead of the Orange County District Attorney, bearing a signature block for "Tony Rackauckas, District Attorney," and listing a "Case number." A copy of that letter is attached to this First Amended Complaint as Exhibit 9.

91.     Mr. Vu has received at least one additional collection demand from the "Orange County District Attorney Bad Check Restitution Program," on the letterhead of the Orange County District Attorney, bearing a signature block for "Tony Rackauckas, District Attorney," and listing a "Case number."

92.     Mr. Vu has neither made additional payments nor attended the "Financial Accountability" class.

93.     Mr. Vu has not been prosecuted.

**Nancy Morin**

94.     Nancy Morin is a physically disabled, single mother of a 12-year-old daughter.  She resides in Auburn, Placer County, California, where she cares for her daughter and herself and assists her 86-year-old father in taking care of himself and his property.

95.     On September 10, 2014, Ms. Morin wrote a check for $165.87 to the local Safeway supermarket for groceries for her family.  The check did not initially clear, even though Ms. Morin has overdraft protection for that account.  The check was redeposited on September 23, 2014 and was paid.

96.     Defendants sent Ms. Morin a letter dated December 10, 2014, a copy of which is attached to this First Amended Complaint as Exhibit 11.  The letter appeared to be from the "Placer County District Attorney Bad Check Restitution Program," and was titled:

**OFFICIAL NOTICE - IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the Placer County District Attorney, bore the signature block of "R. Scott Owens, District Attorney," and listed a "Case # 43329789."

97.     The letter stated that Ms. Morin was accused of committing a crime punishable by up to a year in the county jail.  The letter said that Ms. Morin could avoid the possibility of further action by participating in the "Bad Check Restitution Program."  The letter stated that this would require her to attend a Financial Accountability class and pay a total of $407.12, consisting of the check amount, plus the following fees:

| | |
|---|---|
| Admin Fee: | $ 50 |
| Financial Accountability Class Fee: | $190 |
| Returned Item Fee: | $ 1.25 |

98.     Ms. Morin was terrified by this letter.  She felt she had been accused of a crime, essentially convicted without a trial, and told that she had to pay $407 to avoid going to jail.  She called the phone number listed in the letter, but did not reach a live person.  She checked her records, which confirmed the check had been paid.  On December 15, 2014, Ms. Morin mailed a letter to the address listed for the Bad Check Restitution Program.  In the letter Ms. Morin explained that her check cleared on redeposit and should have been covered by overdraft protect when it was initially deposited.  She enclosed a redacted copy of her bank statement showing that the check had cleared and a copy of her account profile, showing that she had overdraft protection.

99.     Despite having provided proof that her check had cleared on redeposit, Defendants sent Ms. Morin a second letter, dated December 26. 2014, titled:

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 16

**FAILURE TO RESPOND – IMMEDIATE ATTENTION REQUIRED**

This letter was also on the official letterhead of the Placer County District Attorney, and bore the district attorney's signature.  A copy of this letter is attached as Exhibit 12. The letter stated falsely that Ms. Morin had "failed to respond or fully comply with the District Attorney's Official Notice," and stated that she had an "**outstanding balance of $407.12**."

100.    In response, Ms. Morin again called the phone number listed in the letter, but could not reach a live person.  Therefore, on January 14, 2015, she sent the Bad Check Restitution Program another copy of her December 15, 2014 letter, enclosing the documentation that showed that her check had cleared almost four months earlier.

101.    Ms. Morin incurred postage costs, including certified mail costs, to mail Defendants the multiple letters and proof that her check had cleared.

102.    Despite this proof that her check had cleared, on January 26, 2015, Defendants sent Ms. Morin a third collection demand, titled:

**WARNING-SECOND NOTICE OF FAILURE TO COMPLY**

This letter was also on the official letterhead of the Placer County District Attorney, and bore the district attorney's signature.  A copy of this letter is attached as Exhibit 13. The letter again stated falsely that Ms. Morin had "failed to respond to the District Attorney Notices," and stated that she had **an outstanding balance of $407.12**.

103.    On January 29, 2015, after having received the third collection demand, Ms. Morin called the "Bad Check Restitution Program" and was able to reach a "case agent." The case agent confirmed that Defendants had received her letter and documentation, but that they would not consider it because the bank statement she had enclosed contained redactions.

104.    To the best of Ms. Morin's knowledge, Defendants are still going to continue to attempt to collect $407.12 for a check that cleared on redeposit on September 23, 2014.

105.    Ms. Morin has not made any payments, and has not been prosecuted.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 17

**Narisha Bonakdar**

106.    Narisha Bonakdar is a single mother and lives month to month.  She resides in El Dorado County, California.  Ms. Bonakdar works as a legislative coordinator for the California Department of Fish and Wildlife.

107.    In February 2014, Ms. Bonakdar wrote a check for $200 to the El Dorado Transit Authority for her monthly bus pass.  The El Dorado Transit Authority waited several weeks to cash her check.  When the check was finally deposited, it was dishonored due to insufficient funds.  She later made a payment in full for the $200 transit pass plus fees.

108.    In March 2014, Ms. Bonakdar again wrote a check for $200 to the El Dorado Transit Authority for her monthly bus pass.  Shortly after writing the check, Ms. Bonakdar received notification that her check for $200 had not cleared.  Ms. Bonakdar believed the notification was for the check that had been dishonored in February, for which she had recently made full payment.  She therefore disregarded the notice of insufficient funds.

109.    Several months later, Defendants sent Ms. Bonakdar a letter dated June 13, 2014, a copy of which is attached to this First Amended Complaint as Exhibit 14.  The letter appeared to be from the "El Dorado County District Attorney Bad Check Restitution Program," and was titled:

**OFFICIAL NOTICE – IMMEDIATE ATTENTION REQUIRED**

The letter was on the letterhead of the El Dorado County District Attorney, bore the signature block of "Vern Pierson, District Attorney," and listed a "Case # 42841068."

110.    The letter stated that Ms. Bonakdar was accused of committing a crime punishable by up to a year in the county jail.  The letter said that Ms. Bonakdar could avoid the possibility of further action by participating in the "Bad Check Restitution Program."  The letter stated that this would require her to attend a Financial Accountability class and pay a total of $448.50, consisting of the check amount, plus the following fees:

| | |
|---|---|
| Admin Fee: | $ 50 |
| Financial Accountability Class Fee: | $191 |
| Returned Item Fee | $ 7.50 |

111.   Ms. Bonakdar was confused and frightened by this letter.  She did not believe that she had bounced a check to El Dorado that she had not already paid in full, and she believed she had been accused of a crime. She called the El Dorado Transit Authority and explained her confusion, but they would not accept her payment. In addition, Ms. Bonakdar contacted the El Dorado County District Attorneys' Office to confirm the authenticity of the letter from Defendants and was advised to make payment.

112.   As a result, Ms. Bonakdar began making regular payments to Defendants for the $200 check to the Transit Authority, the $50 administrative fee, the $7.50 returned check fee, and the $191 Financial Accountability Class. She has been making regular payments and is almost finished paying all of Defendants' fees associated with the bounced check.

113.   Ms. Bonakdar also traveled to and participated in Defendants' "financial education class," during which time she had to secure childcare for her daughter.

## VII.   FACTS COMMON TO PLAINTIFFS AND THE CLASS

114.   Defendants subjected Plaintiffs and class members to the standardized collection procedures described above.

115.   Merchants and debt collectors who refer unpaid checks to Defendants seek to recover money, not report a crime. Most referrals consist of electronic check data obtained from the face of the check. The referrals do not contain sufficient information to determine whether the checks meet a district attorney's criteria for accepting checks, whether diversion is appropriate pursuant to the Diversion Act, or to make probable cause determinations.

116.   The form letters Defendants sent to Plaintiffs and class members contain numerous material misrepresentations and omissions, including, but not limited to, the following:

   a.   The district attorney operates and controls a "Bad Check Restitution Program" that is authorized by California law.

   b.   The letter was prepared and mailed by the district attorney, and is official correspondence from the district attorney who has reviewed evidence and determined that, absent diversion, prosecution is warranted.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 19

   c. Communications to the toll-free phone number and address printed on the letter will be received and considered by the district attorney.

   d. The check writer has been accused of a crime, namely violation of Penal Code § 476a.

   e. The check writer must enroll in a misdemeanor diversion program to avoid probable criminal prosecution.

   f. To avoid probable prosecution, the check writer must pay the check amount, plus a $50.00 administrative fee, a Financial Accountability Class fee of $160.00 or more, and other fees that may be assessed by the district attorney, and must attend a Financial Accountability class.

117. The true facts are as follows:

   a. The Bad Check Restitution Program is operated for profit by Defendants. The district attorney has no meaningful involvement with individual cases. The Program does not meet the Diversion Act's requirements.

   b. Defendants, not employees of the district attorney, prepare and send the form letters. Defendants send the letters without anyone in the district attorney's office reviewing evidence or determining that prosecution is warranted.

   c. District attorneys rarely review the facts related to the dishonored checks referred to Defendants. If a district attorney investigates a case he or she does so after Defendants collection efforts are complete.

   d. The address and phone number on the form letters are contact points for Defendants, not the district attorney.

   e. The fees that Defendants demand are not permitted by California law.

   f. Defendants do not require check writers to attend the Financial Accountability class for which they demand fees. Defendants do not send files to district attorneys for review if the check writer has paid all the fees they demand, but has not attended the Financial Accountability class.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 20

## VIII. CLASS ACTION ALLEGATIONS

118. This action is brought as a class action, as follows:

**Umbrella class:** All persons to whom Defendants sent a collection demand in connection with a returned check, purporting to be a letter from a California county district attorney, within four years preceding the filing of this Complaint, whose claims are not barred by the settlement in *Smith v. Levine Leichtman Capital Partners, el al*., Civ. No. 10-0010 (N.D. Cal.).

**FDCPA Subclass:** All members of the umbrella class, from whom Defendants attempted to collect, or collected money for checks written for personal, family, or household purposes, within one year preceding the filing of this Complaint.

119. Plaintiffs allege the umbrella class and subclass (collectively "Class") are so numerous that joinder of all members is impractical. The umbrella class contains in excess of 100,000 class members and the subclass includes tens of thousands of class members.

120. The numerous questions of law and fact common to the class include:

    a. Whether Defendants made demands on all Class members that are the same or similar to the demands made to Plaintiffs.

    b. Whether Defendants falsely represent that their collection letters are lawfully authorized, issued, or approved by a state official.

    c. Whether the FDCPA governs Defendants' collections practices.

    d. Whether Defendants' collections practices are unfair, fraudulent, or unlawful.

    e. Whether Defendants fail to provide the validation notice required by the FDCPA.

    f. Whether Defendants fail to provide the debt collection warning required by the FDCPA.

    g. Whether Defendants threaten to take any action that cannot legally be taken or that is not intended to be taken.

    h. Whether Defendants falsely represent the character, amount, or legal status of debts.

    i.   Whether Defendants represent or imply that nonpayment of debts will result in the arrest or criminal prosecution of check writers when such action is not intended.

    j.   Whether Defendants collect or attempt to collect fees that are not permitted by law.

    k.   Whether Defendants use any business, company, or organization name other than CorrectiveSolutions' true name.

    l.   Whether Defendants are engaged in the unauthorized practice of law.

121.    Plaintiffs' claims are typical of the claims of the Class. All claims of Plaintiffs and the Class are based on the same facts and legal theory.

122.    Plaintiffs will fairly and adequately protect the interests of the Class. They have retained counsel who are experienced in handling class actions and consumer debt cases. Neither Plaintiffs nor their attorneys have any interests that may conflict with the interests of the Class.

123.    The Class can be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants act on grounds generally applicable to the classes such that declaratory and injunctive relief with respect to the Class as a whole is appropriate.

124.    The Class can also be certified under Rule 23(b)(3) because:

    a.   Questions of law and fact common to the members of the class predominate over any questions affecting an individual member.

    b.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

125.    Plaintiffs request certification of the Class pursuant to Rule 23(b)(2), or, in the alternative, a hybrid class combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for declaratory and equitable relief, including injunctive relief and restitution.

# IX.    CLAIMS FOR RELIEF

## COUNT I
### (Fair Debt Collection Practices Act)

126.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

127.    The FDCPA prohibits debt collectors from using false, deceptive or misleading communications to collect a debt, 15 U.S.C. §§ 1692e, 1692e(10), or from using unfair or unconscionable means to collect, 15 U.S.C. § 1692f. Defendants' Bad Check Restitution Program is grounded in deception and unfairness, in violation of these general prohibitions. Additionally, Defendants violate specific FDCPA provisions by disguising who they are, how much a check writer owes, and what will happen if a check writer does not pay, as follows:

a. **FALSE IDENTITY**: Defendants' standard practice is to send collection letters on official prosecutor letterhead to convey the false impression that the letters were sent by a law enforcement agency, rather than by Defendants, in violation of 15 U.S.C. §§ 1692e(9) and (14). Defendants' standard form letters include the false representation that Defendants are a law office, namely, the office of the county district attorney, in violation of 15 U.S.C. § 1692e(3). Additionally, Defendants violate 15 U.S.C. § 1692d(6) by placing telephone calls to sub-class members without any meaningful disclosure of their identity.

b. **FALSE THREATS**: Defendants' standard form letters include the false threat that the failure to pay all amounts demanded will result in the arrest or imprisonment of the check writer, in violation of 15 U.S.C. § 1692e(4)–(5). Defendants have neither the authority, nor the intent to initiate a prosecution, and most check writers from whom Defendants attempt to collect are never prosecuted, even if the check writer pays less than the full amount demanded.

c. **UNLAWFUL FEES:** The fees that Defendants charge for their Bad Check Restitution Program are not permitted by California law. Defendants violate

15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by collecting and attempting to collect these fees.

d. **MISSING WARNINGS AND DISCLOSURES:** The initial form letter that Defendants send to check writers, of which Exhibits 3, 6, 7, 11 and 14 are examples, does not contain the validation notice required by 15 U.S.C. §1692g(a), nor do Defendants provide the validation notice within five days of the initial communication. None of the collection letters that Defendants send contain the debt collection disclosure notice required by 15 U.S.C. § 1692e(11).

128.     As a direct and proximate cause of Defendants' violations of the FDCPA, Plaintiffs and the Class have suffered actual damages, including unlawful collection charges and other monetary losses. In addition, Plaintiffs and the Class are entitled to recover statutory damages of up to $1,000 for each named plaintiff, and such amounts as the court may allow for all other class members not to exceed the lesser of $500,000 or one percent of the net worth of each debt collector, plus the costs of the action, including reasonable attorneys' fees.

### COUNT II
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

129.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

130.     The California Unfair Competition Law, ("UCL"), California Business & Professions Code §§17200, *et seq.*, prohibits business acts or practices that are (a) unlawful, (b) unfair, or (c) fraudulent. The UCL provides that a court may order equitable relief, including injunctive relief and restitution to affected members of the general public as remedies for any violations of the UCL.

131.     The Diversion Act, California Penal Code § 1001.60, *et seq.*, provides the exclusive authorization for Bad Check Diversion Programs. Defendants' Bad Check Restitution Program does not comply with the requirements of the Act.

132.     The Diversion Act only authorizes diversion programs where a district attorney reviews evidence and determines that there is probable cause to conclude that an individual has

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 24

1    violated Penal Code § 476a, by writing a check, knowing it would not clear and intending to defraud

2    the check payee. When a district attorney makes a probable cause determination, he or she is then

3    required to review five factors listed in Penal Code § 1001.62 and decide whether referral to a

4    diversion program is appropriate.

5          133.    The Diversion Act authorizes only a $50 administrative fee, and the returned check

6    fee actually charged by the check recipient's bank, up to a maximum of $15. No class fee may be

7    charged unless ordered by a court after a check writer has actually been charged and convicted for

8    intentionally writing a dishonored check.  Cal. Penal Code § 1001.65(b).

9          134.    Defendants routinely violate the FDCPA and fail to conform to the requirements and

10   limitations of the Diversion Act.

11         135.    Cal. Bus. & Prof. C. § 6126 prohibits the unauthorized practice of law. The American

12   Bar Association has investigated the practice of private companies like Corrective Solutions sending

13   collection letters on the letterhead of prosecutors The ABA has determined that this conduct is

14   deceptive and that the companies that send these letters are engaged in the unauthorized practice of

15   law. (ABA Formal Ethics Opinion 469, Nov. 12, 2014, filed as Exhibit 10.) By sending letters on

16   the letterhead of the office of local district attorneys, Defendants are falsely holding themselves out

17   as a law office, despite the fact that they are not licensed to practice law, and are engaged in a

18   deceptive and unlawful practice.

19         136.    Defendants' collections practices are fraudulent because they are likely to deceive the

20   public. Defendants' false assertion of official authority; incomplete description of "bad check"

21   criminal liability under California law; reference to nonexistent "criminal charges" having been

22   made; false threats of prosecution; demands for unlawful fees in order to avoid prosecution,

23   regardless of the facts of a particular case; and all the other false and misleading aspects of

24   Defendants' collection scheme are likely to deceive the public.

25         137.    The acts and practices complained of herein constitute unfair business practices

26   because these acts and practices are patently unfair, substantially injurious to the general public, and

27   offensive to public policy.

28

138.     Each Plaintiff has lost money or property as a result of Defendants' multiple violations of the UCL.

139.     Plaintiffs are entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by Defendants by reason of and through the use of these unlawful and fraudulent acts and practices. Pursuant to the UCL, Plaintiffs, individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendants' unlawful and fraudulent business acts and practices are entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which Defendants acquired by means of such unlawful, unfair and fraudulent business practices.

140.     In addition, Plaintiffs are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure § 1021.5.

**COUNT III**
**(Fraudulent Misrepresentation)**

141.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

142.     Cal. Penal Code §§ 1001.60, *et seq*., provides that a district attorney may not refer a person for diversion under the Diversion Act, unless there is probable cause to believe the check writer committed a violation of Section 476a.

143.     Cal. Penal Code §§ 1001.60, *et seq*., defines and limits the fees that a district attorney may collect from a check writer who is participating in a lawfully operating bad check restitution program, and does not permit any fees other than an administrative fee and a returned item fee.

144.     Beginning more than four years prior to the filing of this lawsuit, National Corrective Group, Inc. and Jonnson  shared authority to determine and approve the content of the form letters and other communications sent to check writers in connection the operation of the Corrective Solutions "district attorney bad check restitution program."  They made a conscious decision to approve these communications.

145.    In or around June 2014 Jonnson formed Victim Services, Inc. and thereafter Victim Services, Inc. and Jonnson shared authority to determine and approve the content of the form letters and other communications sent to check writers in connection with the operation of the Corrective Solutions "district attorney bad check restitution program."

146.    On information and belief, Plaintiffs allege Defendants have reviewed a consistent line of legal decisions issued since 2001, holding that in operations materially the same as the Corrective Solutions operation, it is a misrepresentation to state that a check writer risks prosecution, when no prosecutor has reviewed evidence regarding the check writer and determined that prosecution is likely if the check writer fails to participate in a "restitution" program.  Since 2008, Defendants have known that in *Schwarm v. Craighead*, 552 F. Supp. 2d 1056 (E.D. Cal. 2008), the district court ruled that class fees and other fees not expressly authorized in the Diversion Act are not permitted by law.  Defendants know or should have known that on June 3, 2010, in *del Campo v. Mealing*, 718 F. Supp.2d 1116 (N.D. Cal. June 3, 2010), the district court ruled that collection efforts materially the same as those sent by Defendants in this case were misleading because of, *inter alia*, false threats of prosecution and because the "Financial Accountability Class" fee was not permitted by law.

147.    The standard form letters Defendants sent to check writers throughout the class period contain multiple implied and express representations that there is a substantial likelihood that the check writer will be prosecuted if he or she does not pay the fees Defendants demand, which fees far exceed those permitted by law.  These same representations are made in verbal communications with check writers.

148.    The standard form letters that defendants have sent throughout the class period contain the following misrepresentations:

   a.    A misrepresentation that Defendants' written and verbal communications are from the local district attorney or from persons employed within the district attorneys' office and directly supervised by attorneys within that office;

   b.    A misrepresentation that, preceding the communication to the consumer, the district attorney named in the notice received a crime report alleging that the

consumer committed a violation of Pen. C. § 476a, that the district attorney has reviewed the report, determined it has merit, and is now contacting the check writer about alleged criminal activity;

c.  A misrepresentation that the consumer meets the legal definition of a person who can be put into a "bad check diversion program" and has been properly referred to such a program by a district attorney;

d.  A misrepresentation that a "program" or "class" fee—demanded in addition to the "administrative" and "returned item" fees—is an authorized component of an official "bad check diversion program" and that a district attorney is actually demanding such payment;

e.  A misrepresentation that a failure to pay all the fees demanded and to attend a "Financial Accountability" class will likely trigger a criminal prosecution, which could result in imprisonment.

149.   Each Defendant knew, at all times when determining and approving the content of the letters, that the representations regarding the fees owed and the risk of prosecution, were, and are false, or were made with reckless disregard for the truth or falsity of these representations.

150.   Defendants made these representations with the intention that the check writers rely on the representation and pay the fees that Defendants demand.

151.   As a result of the misrepresentations described herein, Plaintiffs and the members of the putative class, have paid unlawful fees to Defendants totaling millions of dollars.

## COUNT VI
### (Negligent Misrepresentation)

152.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs

153.   In communicating with check writers in connection with the bad check restitution program Defendants assume a duty to be truthful in their statements to check writers.

154.   Defendants breached this duty in numerous ways, by making the false representations described in this First Amended Complaint.

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 28

155.    Relying on these representations, Plaintiffs and the class have paid money that they did not owe, including, but not limited to class fees, return item fees, administrative fees and other assessments.

156.    The class alleged herein has paid millions of dollars in these unlawful fees.

## X.    PRAYER FOR RELIEF

For these reasons, Plaintiffs request that judgment be entered for them and for members of the class, against the Defendants, for:

1.    Declaratory relief that Defendants' collection practices violate the FDCPA and the UCL;

2.    A preliminary and permanent injunction enjoining Defendants, their officers, employees, agents, and all those acting in concert with them as follows:

(a)  Prohibiting Defendants from participating in the collection of checks pursuant to the Bad Check Diversion Act unless all requirements of the statute are met;

(b)  Prohibiting Defendants from communicating with check writers without disclosing in each communication that it is a debt collector, not a district attorney's office;

(c)  Prohibiting Defendants from seeking to collect, or collecting, any unlawful fees, including, but not limited to, class fees; and,

(d)  Prohibiting Defendants from making false representations in their communications with check writers.

3.    Certification of the proposed class and sub-class set forth in this First Amended Complaint.

4.    Appointment of Plaintiffs as representatives of the umbrella class.

5.    Appointment of Plaintiffs as representatives of the FDCPA subclass.

6.    Appointment of the undersigned counsel as counsel for the class and subclass.

7.    Actual damages;

8.    Restitution;

9.    Statutory damages pursuant to 15 U.S.C. §1692k;

10.    Punitive damages;

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 29

1    11.    Costs and reasonable attorneys' fees;

2    12.    Permit Plaintiffs leave to amend the First Amended Complaint to conform to the

3    evidence presented at trial.

4    13.    Such other and further relief as the Court deems proper.

5                      **<u>DEMAND FOR TRIAL BY JURY</u>**

6    Plaintiffs demand trial by jury under Rule 38(b) of the Federal Rules of Civil Procedure of

7    all issues triable of right by a jury.

8    RESPECTFULLY SUBMITTED AND DATED this 6th day of February, 2015.

9                              TERRELL MARSHALL DAUDT
10                             & WILLIE PLLC

11                             By:  /s/ Beth E. Terrell, CSB #178181
12                                  Beth E. Terrell, CSB #178181
                                    Email: bterrell@tmdwlaw.com
13                                  936 North 34th Street, Suite 300
                                    Seattle, Washington  98103-8869
14                                  Telephone:  (206) 816-6603
                                    Facsimile:  (206) 350-3528
15

16                                  Paul Arons
                                    Email:  lopa@rockisland.com
17                                  LAW OFFICE OF PAUL ARONS
                                    685 Spring Street, Suite 04
18                                  Friday Harbor, Washington  98250
                                    Telephone:  (360) 378-6496
19                                  Facsimile:  (360) 378-6498
20

21                                  Deepak Gupta
                                    Email: deepak@guptabeck.com
22                                  GUPTA BECK PLLC
                                    1735 20th Street, NW
23                                  Washington, DC 20009
                                    Telephone: (202) 888-1741
24                                  Facsimile: (202) 888-7792
25

26                                  *Attorneys for Plaintiffs*

27

28

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 30

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on February 6, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

No Appearances

*Attorneys for Defendants*

DATED this 6th day of February, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:  /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181
Email: bterrell@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and Proposed Class*

BREAZEALE V. NCG, ET AL- FIRST AMENDED
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,
ETC. - 31