FREEDMAN+TAITELMAN, LLP
Michael A. Taitelman, Esq. (SBN 156254)
mtaitelman@ftllp.com
Sean M. Hardy, Esq. (SBN 266446)
smhardy@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Defendants Victim Services, Inc., National Corrective Group, Inc., American Justice Solutions, Inc., Birch Grove Holdings, Inc., Mats Jonsson, and Karl Thomas Jonsson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SOLBERG, NANCY MORIN, and NARISHA BONAKDAR on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>VICTIM SERVICES, INC., d/b/a CorrectiveSolutions, NATIONAL CORRECTIVE GROUP, INC., d/b/a CorrectiveSolutions, AMERICAN JUSTICE SOLUTIONS, INC., d/b/a CorrectiveSolutions, BIRCH GROVE HOLDINGS, INC., MATS JONSSON and KARL THOMAS JONSSON,<br><br>Defendants. | Civ. No. 3:14-cv-05266-VC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(7) OR, IN THE ALTERNATIVE, TO REQUIRE JOINDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  August 9, 2018<br>Time: 10:00 a.m.<br>Courtroom: 4 |

TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Thursday, August 9, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, Courtroom 4, 17th floor, San Francisco, California 94102,  Defendants Victim Services, Inc. ("VS"), National Corrective Group, Inc. ("NCG"), American Justice Solutions, Inc. ("AJS"), Birch Grove Holdings, Inc. ("BGH"), Mats Jonsson, and Karl Thomas Jonsson (collectively, "Defendants") will and hereby do move the Court pursuant to Fed. R. Civ. P. 12(b)(7), Fed. R. Civ. P. 12(c), and Fed. R. Civ. P. 19, to dismiss the Second Amend Complaint against them for Plaintiffs' failure to join

necessary parties, namely the California district attorneys who are parties to the contracts with NCG and VSI that give rise to the Plaintiffs' claims ("the contracting DAs"). In the alternative, the Defendants move that the Court require joinder of the missing necessary parties.

The Motion is made on the grounds that the contracting DAs are necessary parties; that joinder of the contracting DAs is not feasible; and that the contracting DAs sovereign immunity, as well as many other relevant factors, support dismissal. In the alternative, if joinder is ruled feasible, then the contracting DAs must be joined before any of Plaintiffs' claims can go forward.

This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the Declaration of Sean M. Hardy ("Hardy Decl.") and its attached exhibits; the Request for Judicial Notice; the pleadings, records and papers on file in this action; and such other oral and documentary evidence as the Court may deem necessary for adjudication of this matter.

DATED: June 25, 2018

By: /s/M. Taitelman
Michael A. Taitelman
Sean M. Hardy
FREEDMAN + TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
Tel: (310) 201-0005
Fax: (310) 201-0045
mtaitelman@ftllp.com
smhardy@ftllp.com
Attorneys for Victim Services, Inc.,
National Corrective Group, Inc., American Justice
Solutions, Inc., Birch Grove Holdings, Inc., Mats
Jonsson, and Karl Thomas Jonsson

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................... 1

II.   ISSUES PRESENTED............................................................................................ 2

III.  LEGAL STANDARD FOR A RULE 12(B)(7) MOTION.................................... 2

IV.  LEGAL AND FACTUAL BACKGROUND ......................................................... 3

  A.  In California, DAs Exercise State Police Power Deciding if Probable Cause ...................... 3

  B.  The Power of DAs to Establish Diversion Programs in California Exists................................ 3

  C.   The California Legislature Authorizes Pre-Trial Bad Check Diversion .................................. 4

  D.  NCG's and VSI's Role in Administering California DA Programs ....................................... 5

  E.  The Fair Debt Collection Practices Act's Structure and History ................................. 6

  F.  The Requirements of Comity ......................................................................... 7

  G.  Cases Interpreting the Bankruptcy Act Inform the FDCPA's Interpretation............................. 7

  H.  For Each Plaintiff, Probable Cause Appears on the Face of the SAC ...................................... 8

  I.  Plaintiffs Seek to Destroy Existing DA Contracts and to Regulate the DAs............................... 8

V.   STANDARDS FOR JOINDER AND DISMISSAL UNDER RULE 19 ....................................... 8

VI.  ABSENT CONTRACTING DISTRICT ATTORNEYS ARE NECESSARY........................... 9

  A.  If The California DAs Are Not Parties To This Lawsuit, The Court Would Be ....................... 9

  B.  The Contracting DAs Have A Legally Cognizable Interest........................................ 11

VII.  HERE JOINDER IS NOT "FEASIBLE" UNDER RULE 19(A) ............................................. 12

VIII.   ABSENT THE DISTRICT ATTORNEYS, THIS CASE SHOULD BE DISMISSED......... 12

IX.  ALTERNATIVELY, IF JOINDER IS FEASIBLE, PLAINTIFFS SHOULD BE.................... 15

X.   CONCLUSION...................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**

*Betts v. Equifax Credit Information Servs.,*
    245 F. Supp. 2d 1130, 1133-34 (W.D. Wash. 2003) ............................................................ 8

*Breazeale v. Victim Servs., Inc.,*
    198 F. Supp. 3d 1070, 1078 (N.D. Cal. 2016) ................................................................ 14

*Breazeale v. Victim Servs., Inc.,*
    878 F.3d 759, 769-70 ............................................................................................................ 1

*Colusa v. California,*
    547 F.3d 962, 970 (9th Cir. 2008) .................................................................................... 11

*Davis v. Municipal Court,*
    46 Cal. 3d 64, 73 (1988). ............................................................................................... 1, 4

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
    276 F.3d 1150, 1156 (9th Cir. 2002) ................................................................ 2, 11, 12, 13

*Del Campo v. Kennedy,*
    517 F.3d 1070, 1077 (9th Cir. 2008) ........................................................................ 12, 13

*Disabled Rights Action Committee v. Las Vegas Events, Inc.,*
    375 F.3d 861, 879 (9th Cir. 2004) ...................................................................................... 9

*Downing v. Globe Direct LLC,*
    806 F.Supp.2d 461, 464-65 (D.Mass. 2011) .............................................................. 10, 14

*EEOC v. Peabody Western Coal Company,*
    400 F.3d 774, 779 (9th Cir. 2005) .................................................................. 2, 9, 11, 12, 15

*EEOC v. Peabody Western Coal Co.*
    610 F.3d 1070, 1083 (9th Cir. 2010) .................................................................. 2, 9, 11, 13

*Fleming v. Pickard,*
    581 F.3d 922, 925-26 (9th Cir. 2009) ................................................................................ 8

*Geiger v. Federal Bureau of Prisons,*
    487 F. Supp. 2d 1155, 1159 (C.D. Cal. 2007) ............................................................... 2, 8

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT

*Giannini v. Schering-Plough Corp.*,

   2007 WL 1839789, at *4 (N.D. Cal., June 26, 2007)............................................................7

*Hovey v. Ayers*,

   458 F.3d 892, 921-22 (9th Cir. 2006)................................................................................3

*In re Byrd*,

   256 B.R. 246, 254 (Bankr. E.D.N.C. 2000)........................................................................7

*In re Gruntz*,

   202 F.3d 1074, 1084-85 (9th Cir. 2000)............................................................................7

*In re Reif*,

   363 B.R. 107, 109 (Bankr. D. Az. 2007)............................................................................7

*In re Wilson*,

   30 B.R. 91, 97 (Bankr. E.D. Tenn. 1983)..........................................................................7

*Kelly v. Robinson*,

   479 U.S. 36, 47 (1986) .................................................................................................1, 7

*Knowledgeplex, Inc. v. Placebase, Inc.*,

   2008 WL 5245484, at *4 (N.D. Cal. Dec. 17, 2008)........................................................11

*Lee v. City of Los Angeles*,

   250 F.3d 668, 689 (9th Cir. 2001) ...................................................................................2

*Lomayaktewa v. Hathaway*,

   520 F.2d 1324, 1325 (9th Cir. 1975)................................................................................11

*McShan v. Sherrill*,

   283 F.2d 462, 464 (9th Cir. 1960) ...................................................................................2

*National League of Cities v. Usery*,

   426 U.S. 833, 839-840 (1976) ........................................................................................6

*Natural Resources Defense Council v. Kempthorne*,

   539 F.Supp.2d 1155, 1187-88 (E.D. Cal. 2008) ..............................................................13

*New York v. United States*,

   505 U.S. 144, 157 (1992) ...............................................................................................6

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT

*People v. Andrews*,

    65 Cal. App. 4th 1098, 1101, 1104 (1998) ........................................................... 3

*People v. Bernstein*,

    88 Cal. App. 2d 522, 524-525 (1948) ................................................................ 8

*People v. Eubanks*,

    14 Cal 4th 580, 588 (1997) ................................................................................ 3

*People v. Khan*,

    41 Cal. App. 393, 396-397 (1919) ...................................................................... 8

*People v. Lucas*,

    12 Cal. 4th 415, 477 (1995) ...................................................................... 1, 3, 8

*People v. Viray*,

    134 Cal. App. 4th 1186, 1197 (2004) ................................................................ 3

*Pitts v. County of Kern*,

    17 Cal. 4th 340, 362 (1998) ............................................................................... 3

*Repub. of the Philippines v. Pimental*,

    128 S. Ct. 2180, 2191 (2008) .................................................................. 2, 13, 14

*Republic of the Philippines v. Pimental*,

    553 U.S. 851, 128 S.Ct. 2180, 2191 (2008) ..................................................... 12

*Roe v. City & County of San Francisco*,

    109 F.3d 578, 583 (9th Cir.1997) ..................................................................... 12

*Rust v. Sullivan*,

    500 U.S. 173, 191 (1991) ................................................................................... 6

*Sprewell v. Golden State Warriors*,

    266 F.3d 979, 988 (9th Cir. 2001) ...................................................................... 2

*Sulit v. Slep-Tone Entm't*,

    2007 WL 4169762, at *4 (N.D. Cal. Nov. 20, 2007) ......................................... 2

*United Mine Workers v. Gibbs*

    383 U.S. 715, 726 (1960) ................................................................................... 7

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT

*Weiner v. San Diego County,*
   210 F.3d 1025, 1031 (9th Cir. 2000) ...................................................................... 2, 12

**Statutes**

15 U.S.C. § 1692 ............................................................................................................ 6

15 U.S.C. § 1692a .......................................................................................................... 6

15 U.S.C. § 1692a(5) ..................................................................................................... 6

15 U.S.C. § 1692a(6)(C), (F) ......................................................................................... 6

15 U.S.C. § 1692k(d) ................................................................................................... 14

15 U.S.C. §§ 1692c-1692k ............................................................................................ 6

28 U.S.C. § 3002(3) ....................................................................................................... 7

Cal. Penal Code § 1001 .................................................................................................. 4

Cal. Pen. Code § 1001.60 .............................................................................................. 5

Cal. Pen. Code § 1001.62 .............................................................................................. 5

Cal. Pen. Code § 1001.63 .............................................................................................. 5

Cal. Penal Code § 1001.60 ......................................................................................... 9, 12

Cal. Penal Code § 1001.68 ............................................................................................ 5

California Penal Code §§1001.60 – 1001.65 ................................................................. 9

Penal Code § 476a ......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(7) ................................................................................................. 2

Fed. R. Civ. P. 12(c), (h)(2)(B) ..................................................................................... 2

Fed. R. Civ. P. 19(a) ...................................................................................................... 8

Fed. R. Civ. P. 19(a)(1)(A) ........................................................................................... 8

Fed. R. Civ. P. 19(a)(1)(A), (B) .................................................................................... 1

Fed. R. Civ. P. 19(a)(1)(B) ........................................................................................... 9

Fed. R. Civ. P. 19(b) .................................................................................................... 12

Fed. R. Civ. P. 19(b)(1) ............................................................................................... 13

Fed. R. Civ. P. 19(b)(4) ............................................................................................... 14

Fed.R. Civ. P. 19(b) ..................................................................................................... 12

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT

Federal Rules of Civil Procedure, Rule 19 ............................................................. 2, 8

Rule 12(b)(7) ......................................................................................................... 2

Rule 19(a) .............................................................................................................. 9

Rule 19(a)(1) ...................................................................................................... 9, 11

Rule 19(a)(1)(A) ................................................................................................... 9

Rule 19(a)(1)(B)(i) .............................................................................................. 11

Rule 19(a)(2) ........................................................................................................ 11

Rule 19(b) ...................................................................................................... 9, 13, 14

Rules 19(b) and 12(b)(7) ..................................................................................... 2

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT

I. **INTRODUCTION**

The Ninth Circuit's decision in this case compels the joinder of all California district attorneys ("DAs") who have contracted with NCG and VSI to administer bad check diversion programs. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 769-70.   The Ninth Circuit recognized that these diversion programs were legitimate exercises of State police power.   *Id.*   Further, the Ninth Circuit acknowledged, as this Court has, that Defendants act as the agents of the DAs pursuant to contract, resulting in legitimate non-prosecution agreements under California criminal law between the *DAs* and participants in the diversion programs. *Id.*

Plaintiffs' SAC is a broad attack on the bad check diversion programs run by California DAs. Plaintiffs allege that the DAs who utilize NCG and VSI to administer their bad check programs have: (a) abdicated their prosecutorial discretion; (b) created, directed, and are parties to an unlawful scheme; and (c) inflicted *fraud* upon Californians.   Plaintiffs even seek to enjoin the Defendants from running these programs in the manner prescribed by the DAs, while destroying the current contracts between the various DAs and VSI.   Yet Plaintiffs have conspicuously failed to name *any* of these DAs in their lawsuit.   *Nothing* prevents the DAs from contracting with a separate entity to run these programs in the same fashion, even if Plaintiffs succeed on all their claims.

Joinder is necessary where a person's absence will prevent complete relief; impede the missing person's ability to protect their interest; or leave an existing party subject to inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A), (B).   If joinder is feasible, a necessary party must be joined; if not, courts must weigh whether to dismiss the action. Here, all of the Plaintiffs' claims are directly rooted in their allegation that the Defendants violated the law by virtue of the manner in which DAs set-up and/or run their pre-complaint bad check diversion programs. (SAC ¶¶ 25-47.)   Plaintiffs seek to enjoin compliance with their contracts with the DAs -- all without the DAs as parties. (SAC, Prayer ¶¶ A-B.)

Properly understanding the contracts, the Defendants' and DAs relative (and proper) roles, and the applicable state and federal law, depend heavily upon recognizing the State's significant and legitimate interest in protecting the function of these criminal restitution programs. *Davis v. Mun. Court*, 46 Cal. 3d 64, 73; *People v. Lucas*, 12 Cal. 4th 415,477 (1995). The issues posed here are similar to those arising in the bankruptcy context where federalism concerns have driven the interpretive approach. *Kelly v. Robinson*, 479 U.S. 36, 47 (1986); *Geiger v. Federal Bureau of Prisons*,

487 F. Supp. 2d 1155, 1159 (C.D. Cal. 2007).

Here, joinder is necessary because the DAs are parties to contracts that Plaintiffs seek to destroy. *Dawavendewa v. Salt River Project Agric. Improv. & Power Dist*., 276 F.3d 1150, 1157 (9th Cir. 2002). The effort to challenge and change the DA's practices also requires joinder. *EEOC v. Peabody West. Coal. Co*., 610 F.3d 1070, 1082 (9th Cir. 2010). Moreover, without the DAs, it is impossible to fashion complete relief and the Defendants face multiple or inconsistent obligations. *See Dawavendewa*, 276 F.3d at 1153-1156. The DAs' sovereign immunity, however, renders joinder infeasible making dismissal necessary. *See, e.g., Repub. of the Philippines v. Pimental*, 128 S. Ct. 2180, 2191 (2008); *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000). Alternatively, if joinder of the contracting DAs is feasible, it should be ordered.

Each of the DAs who contracted with NCG or VSI is a necessary party. They **must** be joined. The DAs' presence is necessary to protect California's interests in these programs; to accord complete relief among the parties; and to avoid unfair prejudice to Defendants. Rule 19 and comity principles require no less. If the DAs cannot be joined, the case should be dismissed under Rules 19(b) and 12(b)(7).

## II.   ISSUES PRESENTED

1.   Are the DAs who contracted with NCG and VSI necessary parties under Rule 19?

2.   In the contracting DAs are necessary parties, is their joinder feasible?

3.   If joinder is not feasible, should this case be dismissed?

## III.   LEGAL STANDARD FOR A RULE 12(B)(7) MOTION

Rule 12(b)(7) authorizes challenges to a complaint based upon a plaintiff's failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7); *see also* Fed. R. Civ. P. 12(c), (h)(2)(B). For a joinder motion, the Court may consider evidence outside the pleadings. *See McShan v. Sherrill,* 283 F.2d 462, 464 (9th Cir. 1960). Although the Court is not bound by the allegations of the SAC, the allegations can justify relief. *See, e.g., Sulit v. Slep-Tone Entm't,* 2007 WL 4169762, at *4 (N.D. Cal. Nov. 20, 2007). If the SAC's conclusory allegations, legal assertions, and claims or characterizations are contradicted by exhibits attached to the SAC, they are not treated as true. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court may also take judicial notice of "matters of public record." *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

**IV.**   **LEGAL AND FACTUAL BACKGROUND**

    **A.**   **In California, DAs Exercise State Police Power Deciding if Probable Cause Exists and May Utilize Judicially Unreviewable Internal Guidelines**

The California Supreme Court holds that prosecutors act on behalf of the State when they make decisions about whom to prosecute and whom ***not*** to prosecute. *See People v. Eubanks*, 14 Cal 4th 580, 588 (1997). This is because prosecutors conduct all of their prosecution functions "*on behalf of the People*." *Id*. at 589 (emphasis added); *see also Pitts v. County of Kern*, 17 Cal. 4th 340, 362 (1998).[1] Thus DAs "independently exercise[] ***all the executive branch's discretionary powers***" from "the investigation of and gathering of evidence relating to criminal offenses" through "the crucial decisions of whom to charge and what charges to bring" and beyond. *Id*. at 589 (emphasis added).

"Up until the moment the complaint is filed, the prosecutor possesses a broad and exclusive discretion to decide what, whom, and whether to prosecute." *People v. Viray*, 134 Cal. App. 4th 1186, 1197 (2004). Consistent with this broad discretion, California's probable cause standard is very low; it is nothing more than "'*some* rational ground for assuming *the possibility* that the offense charged has been committed and the accused is guilty of it.'" *Hovey v. Ayers*, 458 F.3d 892, 921-22 (9th Cir. 2006) (emphasis added). There is also "no legal support" for a claim that a defendant has "a right to have the charging decision based upon all the evidence reasonably available" or even "upon an accurate presentation of the evidence." *People v. Lucas*, 12 Cal. 4th 415, 477 (1995). Similarly, DA internal guidelines used for charging decisions are judicially unreviewable absent a claim of invidious discrimination or vindictive prosecution. *See Lucas*, 12 Cal. 4th at 478. Using such guidelines can lead to wide disparities in results, but they remain unreviewable. *See, e.g., People v. Andrews*, 65 Cal. App. 4th 1098, 1101, 1104 (1998) (no challenge to "25 years to life" sentence based on .1 gram of drug possession where county guidelines led to full prosecution and another county would not prosecute at all).

    **B.**   **The Power of DAs to Establish Diversion Programs in California Exists Independent of Statutory Authorization**

In 1972, California's legislature adopted the state's first statutorily-mandated pretrial diversion

---

[1] *But see*, *e.g.*, *Womack v. County of Amador*, 551 F. Supp. 2d 1017, 1027-28 (E.D. Cal. 2008) (following vacated Ninth Circuit opinion on issue of Eleventh Amendment immunity).

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(7)

program. *See Davis v. Municipal Court*, 46 Cal. 3d 64, 73 (1988). During the same timeframe, however, without statutory authorization, many "[DAs] throughout California, *acting with the encouragement of grants provided by the federal government*, began implementing experimental local diversion programs in their own jurisdictions." *Id.* at 74 (emphasis added). In response to an Attorney General opinion suggesting the statute preempted local programs, the Legislature clarified that for ***all*** statutory diversion programs local prosecutors were free to continue their experimentation. *See Davis*, 46 Cal. 3d at 74; Cal. Penal Code § 1001.

Then, in 1988, following a criminal defendant's initially successful challenge to a prosecutor's use of discretion that rendered her categorically *ineligible* for diversion, the California Supreme Court held that the decision "to decline to prosecute a particular defendant on condition that he participate in an alternative program . . . has traditionally been viewed as a subset of the prosecutor's broad charging discretion." *See Davis*, 46 Cal. 3d at 77. *Davis* also held that a prosecutor's "inherent executive authority" included not only the power to authorize diversion but "extended also to the establishment or approval of general eligibility standards to guide the exercise of such discretion by all deputies under his direction." I*d.*, at 77, 81. After recognizing that "[DAs] throughout the country have frequently fashioned eligibility requirements . . . *in the absence of specific legislative authorization*," the Supreme Court concluded that "the Legislature simply chose to retain the district attorney's executive control over *the establishment and design* of such programs." *Id.* at 78 (emphasis added). Since *Davis*, DAs and the Legislature have consistently continued to authorize a wide variety of diversion programs and to charge for their required educational classes. Although many programs involve education, it appears that not one statute provides a specific dollar limit for such charges. (*See, e.g.,* Decl. of Sean M. Hardy ("Hardy Decl."), ¶¶ 5-10.)

## C.    The California Legislature Authorizes Pre-Trial Bad Check Diversion

With the *Davis* case still pending, in 1985 the state Legislature passed SB1108, providing explicit legislative authorization for bad check diversion programs. (Hardy Decl. Ex. 2, Ex. 3 at p. 3.) The purpose of the bill was "to provide a feasible alternative to prosecution and to reduce the number of bad check violations." (Hardy Decl. Ex. 3 at p. 2, Ex. 4 at p. 1.) Class completion, full restitution and full payment of the collection fee(s) are all part of the *minimum* guidelines, leaving wide discretion

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(7)

elsewhere. *See* Cal. Pen. Code § 1001.65. As enacted, the bill also provides:

- that the diversion program may reach everyone for whom there is "probable cause" to suspect a Penal Code § 476a violation, Cal. Pen. Code § 1001.60;

- that the program may be conducted by *a private entity under contract with the district attorney*, Cal. Pen. Code § 1001.60;

- for guidelines in foreclosing diversion eligibility, identifying minimum criteria, Cal. Pen. Code § 1001.62; and

- for notice that states the relevant criminal penalty. Cal. Pen. Code § 1001.63.

Following passage, the original pilot programs prepared reports for the Legislature. (*See* Hardy Decl. Ex. 2 at p. 2, Exs. 9-12.) ***These reports indicated DAs were charging class fees in addition to the statutory administrative fee.*** (Hardy Decl. Ex. 9 at p. 27, 50, Ex. 10 at p. 3, Ex. 11 at p. 2, Ex. 12 at pp. 13-14.) So too had the out-of-state programs that California used as models. (Hardy Decl. Ex. 5 at p. 16, Ex. 6 at pp. 74, 77; Ex. 3 at p. 3.) At least one program was even being run internally for a time by purely administrative staff without attorney involvement. (Hardy Decl. Ex. 9 at pp. 11-12; see also Ex. 12 at pp. 34-25.) The reports also reflect strong support from the DAs. (*See, e.g.*, Hardy Decl., Ex. 9 at pp. 1, 9, Ex. 10 at pp. 1-2, 7.) Subsequently, the Legislature allowed expansion of these programs in every county while making no statutory changes to address the reported class fees. *See* Cal. Penal Code § 1001.68 (repealed).

### D. NCG's and VSI's Role in Administering California DA Programs

Both NCG and VSI performed their bad check diversion work under contracts with DAs like Exhibit 2 to the SAC. (SAC ¶¶ 38-41.) Under such contracts, among other things, DAs establish, control, and direct the criteria for probable cause; create and approve the format, language, and criteria for each and every letter that NCG or VSI was authorized to send, review all processes and fees; and exercise "managerial control…at all times" with respect to any communications NCG or VSI may have. (SAC, Ex. 2, Recitals (iv), § 3-6, 13, Ex. 2, Sched. 1). The SAC contains no allegations that either NCG or VSI failed to abide by any of the contracts or that any DAs failed to create the contractually-obligated standards. (*See* SAC ¶ 38.) Various DAs have testified about the importance and value of Defendants' services in terms of the DA's strong policies. (*See, e.g.*, ECF 26-1, ECF 92-1,

ECF 92-2.) These efforts highlight the States' fundamental interests here.

### E.    The Fair Debt Collection Practices Act's Structure and History

In 1976, the Supreme Court invalidated the extension of the Fair Labor Standards Act minimum wage and maximum hour requirements to States and their subdivisions. *See National League of Cities v. Usery,* 426 U.S. 833, 839-840 (1976).[2] This ruling was grounded in the Tenth Amendment, concluding that "Congress may not exercise [its Commerce Clause] power so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made."3 *Id.* at 855. The next year, Congress passed the FDCPA. See 15 U.S.C. § 1692. The FDCPA regulates or prohibits a number of actions involving efforts by statutorily-defined "debt collectors" to collect a statutorily-defined "debt." See 15 U.S.C. § 1692a (definitions); 15 U.S.C. §§ 1692c-1692k.

The Supreme Court assumes "out of respect for Congress" that Congress "legislates in the light of constitutional limitations." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991). Consistent with this assumption, when passed, Congress included in the FDCPA a number of limiting principles or word choices consistent with *National League of Cities*. The definition of "debt collector," for instance, contains among its six exclusions including one for federal or State officers performing their official duties to collect "any debt" and another for any person collecting "any debt" if such activity is "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(C), (F). In addition, the term "debt" itself is limited in several ways, including a requirement that it arise out of a "transaction" where the subject is obtained "primarily for personal, family or household purposes." *See* 15 U.S.C. § 1692a(5).

The FDCPA dispute here focuses on the resolution of two questions: (1) can Plaintiffs or Congress use the FDCPA to deprive California prosecutors of their wide discretion in determining probable cause; and/or (2) can Plaintiffs' dissatisfaction with the fees imposed by California's DAs create an FDCPA violation? (*See* SAC ¶¶ 38-41, 84, 94.)

---

[2] *National League of Cities* was subsequently overruled. But its Tenth Amendment concerns continue to find voice in various contexts. *See, e.g., New York v. United States*, 505 U.S. 144, 157 (1992) ("The Tenth Amendment thus directs us to determine, as in this case, whether an incident of state sovereignty is protected by a limitation on an Article I power").

### F.   The Requirements of Comity

An additional factor present here is comity. "Comity is 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Giannini v. Schering-Plough Corp.*, 2007 WL 1839789, at *4 (N.D. Cal., June 26, 2007). Comity is a multi-faceted principle that counsels, among other things, that "[n]eedless decisions of state law should be avoided." *See id.*; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1960).

### G.   Cases Interpreting the Bankruptcy Act Inform the FDCPA's Interpretation

"The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly v. Robinson*, 479 U.S. 36, 47 (1986). In fact, the States' interest "in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court" when considering equitable relief or in interpreting statutes. *Id.* Restitution principles are important to the *federal* government. *See, e.g.*, 28 U.S.C. § 3002(3) (defining "restitution" as a "debt of the United States"). But there is also recognition of the fundamental importance of the *States'* restitution efforts. *See Kelly,* 479 U.S. at 49. As a result, the Ninth Circuit holds that a criminal prosecution for failing to pay a debt such as child support is not affected by a bankruptcy's automatic stay. *See In re Gruntz*, 202 F.3d 1074, 1084-85 (9th Cir. 2000). Part of the rationale is that "any criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor." *Id.* In bankruptcy these principles apply to restitution through a pre-complaint bad check diversion program as much as to judicially-imposed restitution and do not depend upon whether the money goes to the State or the victim. *See In re Byrd*, 256 B.R. 246, 254 (Bankr. E.D.N.C. 2000).[3]

The same considerations apply to the FDCPA. Thus, courts hold that efforts to collect restitution by the federal Board of Prisons do not fall within the FDCPA in part because "federal criminal restitution is not a 'debt' under the CCPA." *Geiger v. Federal Bureau of Prisons*, 487 F. Supp.

---

[3] *See also In re Reif*, 363 B.R. 107, 109 (Bankr. D. Az. 2007); *In re Wilson*, 30 B.R. 91, 97 (Bankr. E.D. Tenn. 1983); *Kelly*, 479 U.S. at 51-52.

2d 1155, 1159 (C.D. Cal. 2007). Similarly, where a car is impounded, collection efforts on a towing-related deficiency claim fall outside the FDCPA because the debt did not arise from a "transaction," but from an imposition by law enforcement personnel and by statute. *See Betts v. Equifax Credit Information Servs.*, 245 F. Supp. 2d 1130, 1133-34 (W.D. Wash. 2003).[4]

### H.     For Each Plaintiff, Probable Cause Appears on the Face of the SAC

The SAC identifies three named plaintiffs. (*See* SAC ¶¶ 48-80.) As the SAC acknowledges, the challenged bad check diversion programs send out initial letters only after receiving both a complaint of a bad check and a notification that a repayment demand was unsuccessful. (SAC ¶¶ 25-37, Ex. 1-2.) Here, for each case, the question is not whether Defendants believed they should not be prosecuted; at most it is whether the relevant ***DAs*** had objective probable cause to proceed. The SAC establishes they did.[5] (*See* SAC, ¶ 48-80).

### I.     Plaintiffs Seek to Destroy Existing DA Contracts and to Regulate the DAs

Plaintiffs' SAC is replete with allegations seeking two related things: (1) rulings that will destroy or decimate the DA contracts at issue; and (2) rulings that the Defendants acted unlawfully ***because California DAs have acted unlawfully*** and Defendants complied with the DA's contracts. (*See, e.g.,* SAC ¶¶ 325-47, 94, 103-104, 114-115, 121, Ex. 2.) The Plaintiffs' goal to destroy the contracts and regulate the DAs is also apparent as Plaintiffs seek:

- A finding the DA's contractually-required practices violated the law, (Prayer, ¶ A);

- Broad injunctive relief against Defendants, extending to the DAs, (Prayer, ¶ B); and

- Restitution, ***including monies paid to the DAs*** (Prayer for Relief, ¶ H.)

## V.     STANDARDS FOR JOINDER AND DISMISSAL UNDER RULE 19

Under the Federal Rules of Civil Procedure, Rule 19, "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" in two circumstances. Fed. R. Civ. P. 19(a). First, the person must be joined if "the court cannot accord complete relief among existing parties" in the person's absence. Fed. R. Civ. P. 19(a)(1)(A).

---

[4] *See also Fleming v. Pickard*, 581 F.3d 922, 925-26 (9th Cir. 2009).
[5] *See People v. Lucas*, *supra*, 12 Cal. 4th at 477; *see also People v. Khan*, 41 Cal. App. 393, 396-397 (1919) (cavalier attitude toward bounced check sufficed to support intent); *People v. Bernstein*, 88 Cal. App. 2d 522, 524-525 (1948) (belated restitution irrelevant to intent defense).

Second, the person must be joined if person has an interest in the action and disposing of the action without joining the person may:

- as a practical matter impair or impede the person's ability to protect the interest; or
- leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). "If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *EEOC v. Peabody Western* Coal *Company*, 400 F.3d 774, 779 (9th Cir. 2005) ("*Peabody I*"). If it is not "feasible" to join a "necessary" party, in the third stage courts "look to the factors provided in Rule 19(b) to determine whether, 'in equity and good conscience,' the action should proceed among the existing parties or should be dismissed.'" *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1083 (9th Cir. 2010) ("*Peabody II*").

## VI.     ABSENT CONTRACTING DISTRICT ATTORNEYS ARE NECESSARY

Under every prong of Rule 19(a), the DAs who contracted with Defendants to run bad check diversion programs are "necessary" parties to this lawsuit.

### A.     If The California DAs Are Not Parties To This Lawsuit, The Court Would Be Unable To Grant Plaintiffs The Complete Relief They Seek.

Without the DAs who contracted with NCG and VSI, this Court would not be able to grant complete relief. In the Rule 19(a)(1)(A) analysis, a court "asks whether the absence of the party would preclude [it] from fashioning meaningful relief as between the parties." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). In other words, Rule 19(a)(1) is "concerned with consummate rather than partial or hollow relief." *Peabody I*, 400 F.3d at 780. In this case, there cannot be complete relief unless the California DAs contracting with NCG or VSI are joined.

First, California Penal Code §§1001.60 – 1001.65 primarily governs the conduct of the DAs, not the Defendants. Under the Penal Code, it is *the DA* that must meet the threshold statutory requirements to operate a bad check diversion program such as identifying "probable cause," not private parties who contract with them. *See, e.g.*, Cal. Penal Code § 1001.60. Under Plaintiffs' theory,

in order to command that the Penal Code requirements be met, this Court must order **the DAs** to change their processes and rules. The Defendants are incapable of addressing these alleged defects, much less ensuring compliance.

Second, Plaintiffs' SAC openly acknowledges that the DAs are acting in concert with Defendants, in a principal-agent relationship. (*See* SAC ¶¶ 25-47; *see also* SAC, Ex. 2). As a result, there is no way the Court could properly issue the injunction Plaintiffs seek against Defendants—and also "all those acting in concert with them"—if the DAs are absent from this lawsuit.

Third, without the DAs' presence, they could simply contract with a new entity or bring the same operations back in-house. This concern was addressed by the court in *Downing v. Globe Direct LLC*, 806 F.Supp.2d 461, 464-65 (D.Mass. 2011).  In *Downing,* the plaintiff brought a putative class action against a direct mailing company, alleging violations of the Drivers Privacy Protection Act ("DPPA").  The direct mailing company entered into a contract with the Massachusetts Registry of Motor Vehicles, in which the company was provided with the names and addresses of drivers to whom Massachusetts wished to mail vehicle registration renewal notices.  *Id.*  The court found Massachusetts was a necessary and indispensable party to the action under Rule 19, dismissing the case.  *Id.* at 468-70. In finding the State a necessary party, the court noted that any decision it made would "effectively invalidate Massachusetts's contract."  *Id.* at 467.  All 19(b) factors revealed Massachusetts was an indispensable party, and its Eleventh Amendment immunity prevented joinder and mandated dismissal. The court also noted that, "as Massachusetts is not a party to this case and judgment against a named defendant can never bind a non-party, *then Massachusetts could enter into another contract with a different company*."  *Id.* at 468-69 (emphasis added).  Indeed, a judgment rendered in the state's absence would be inadequate as nothing prevented it "from engaging in extremely similar conduct with a different company[.]"  *Id.* at 469. The court also found that a declaration that the defendant violated the DPPA would be the same as finding Massachusetts violated the law, prejudicing the absent party. *Id.*  This factual scenario is exceedingly similar to the instant case, and the *Downing* court's analysis is therefore highly persuasive. Here, because the declaratory judgment and injunction **could not** require the DAs to correct the violations alleged by Plaintiffs or change the overall operations of these programs, the relief sought by Plaintiffs would be plainly hollow.  *See Dawavendewa v. Salt River*

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(7)

*Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002).  Absent the DAs, this lawsuit is a cruel sham – destined to repeat itself.

### B.    The Contracting DAs Have A Legally Cognizable Interest

The second prong of Rule 19(a)(1) tests if the absent party's participation is necessary to protect a legally cognizable interest. *See* Rule 19(a)(1)(B)(i). The DAs have several important "legally cognizable interests," each of which establishes the DAs' "necessary" presence. First, the DAs are parties to the contracts with NCG and VSI that form the predicate for the claims against all the Defendants. "A crucial premise of mandatory joinder [under Rule 19(a)(2)] is that the absent [parties] possess an interest in the pending litigation that is legally protected." *Colusa v. California*, 547 F.3d 962, 970 (9th Cir. 2008). Such a legally protected interest includes an interest that "arises from the terms in bargained contracts" as long as the contractual interest is "substantial." *Id*. In fact, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside … a contract, all parties who may be affected by the determination of the action are *indispensable*." *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (emphasis added).[6]

Plaintiffs' allegations leave no doubt that Plaintiffs seek to destroy and/or decimate the contract between Defendants and the DAs: Under the contracts the DAs have control over the program. (*See, e.g.*, SAC, Ex. 2.) Yet, Plaintiffs seek not just to impose liability for Defendants' alleged role in honoring the contracts; they are seeking to enjoin any compliance with the contracts. (SAC, Prayer, at ¶ B; *see also* SAC ¶ 106.) The DAs face possible indemnification as well. (*See* SAC, Ex. 2 at ¶ 12.)

Second, "a public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its rules, regulations and practices." *Peabody II*, 610 F.3d at 1082; *see also Peabody I,* 400 F.3d at 780. Because Plaintiffs are trying to prevent Defendants from complying with actions under the control of, and in accordance with, the DAs' instructions and procedures, the DAs have this additional legally cognizable interest.

If Plaintiffs are successful, it may have the practical effect of ending the DAs' bad check

---

[6] *See also Dawavendewa*, 276 F.3d at 1157 ("[A] party to a contract is necessary … to litigation seeking to decimate that contract."); *Knowledgeplex, Inc. v. Placebase, Inc.*, 2008 WL 5245484, at *4 (N.D. Cal. Dec. 17, 2008).

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(7)

1   diversion programs, and would necessarily impact and change the current administration of the

2   programs. Such a result would abrogate California's statute expressly authorizing DAs use of private

3   parties. *See* Cal. Penal Code § 1001.60. Moreover, every aspect of Plaintiffs' case directly implicates

4   core Tenth Amendment principles. All this is done while asking this Court to conclude that the

5   Supreme Court's words in *Kelly* about the central importance of criminal restitution schemes in our

6   federal system – regardless of where the money flows – have no bearing on a statute that never

7   purported to regulate the restitution activities of prosecutors. *See* 479 U.S. at 47, 51-52. The contracting

8   DAs have a legally cognizable and fundamental interest in this case that will be impaired if they are not

9   joined.[7]

10   **VII.   HERE JOINDER IS NOT "FEASIBLE" UNDER RULE 19(A)**

11          "If an absentee is a necessary party under Rule 19(a), the second stage [of the Rule 19 analysis]

12   is for the court to determine whether it is feasible to order that the absentee be joined." *Peabody I*, 400

13   F.3d at 779. Although the DAs are "necessary," it is not feasible to join them because they enjoy

14   Eleventh Amendment sovereign immunity. *See Republic of the Philippines v. Pimental*, 553 U.S. 851,

15   128 S.Ct. 2180, 2191 (2008); *Peabody I*, 400 F.3d at 780; *Dawavendewa*, 276 F.3d at 1163. For the

16   reasons explained earlier, the California DAs' operation of their diversion programs is fundamentally

17   and indivisibly intertwined with their prosecutorial role.[8] As a result, this Court should proceed to Rule

18   19's third stage analysis.[9] *See* Fed.R. Civ. P. 19(b).

19   **VIII.   ABSENT THE DISTRICT ATTORNEYS, THIS CASE SHOULD BE DISMISSED**

20          Because the DAs are "necessary" parties whose joinder is not feasible, "equity and good

21   conscience" call for dismissal. *See* Fed. R. Civ. P. 19(b). In the usual case, the four factors that a court

22   "must consider in making this determination" include:

23          (1) the extent to which a judgment rendered in the person's absence might prejudice

---

[7] Defendants also risk being placed in a position between complying with their contracts or with this
Court's potential orders or facing multiple liabilities. That too renders the DAs a necessary party. *See
Dawavendewa, supra*, 276 F.3d at 1153-1156.

[8] *See also Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000); *Pitts, supra*, 17 Cal.4th at
362; *Roe v. City & County of San Francisco*, 109 F.3d 578, 583 (9th Cir.1997).

[9] If Plaintiffs contend that the DAs are *not* entitled to sovereign immunity – *see Del Campo v. Kennedy*,
517 F.3d 1070, 1075 (9th Cir. 2008) – Defendants alternatively request that the Court order Plaintiffs to
join the contracting DAa.

that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed.

*Peabody II*, at 1083. In situations where "the necessary party enjoys sovereign immunity . . . there may be very little need for balancing Rule 19(b) factors" because such immunity "may be viewed as one of those interests compelling by themselves, which requires dismissing the suit." *Dawavendewa*, 276 F.3d at 1162. Thus "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action **must** be ordered where there is a potential for injury to the interests of the absent sovereign." *Pimental*, 128 S.Ct. at 2191 (emphasis added). Here, that should be dispositive.

In any case, examining the four factors of Rule 19(b) only further highlights why "equity and good conscience" calls for dismissal. The first Rule 19(b) factor strongly favors dismissal. Fed. R. Civ. P. 19(b)(1). Both the Defendants and the DAs will face unfair prejudice if this case moves forward in its current posture.

First, Defendants will be forced to defend the state's sovereign interests in the bad check diversion programs, as well as the proper interpretation of state penal statutes and the prosecutor's role, in order to defend their own conduct. But Defendants are prejudiced whenever they must invoke the State's interests because the Defendants are **not** the state. *See, e.g., Del Campo v. Kennedy*, 517 F.3d 1070, 1077 (9th Cir. 2008) (holding Defendants are not entitled to sovereign immunity). Legal error flows from any failure to give adequate consideration to the interests of absent state actors, as treatment of the defendants as if they were *just like* any other private party violates comity principles since Defendants here are **not** like all others; they were carrying out core state policies while under state managerial control. And if their private status results in discounting the *public* concerns behind the DA's contracts and behavior at issue, everyone suffers. Accordingly, the courts have already recognized this need to have *both* private and public parties to a contract as parties to the litigation. *See Natural Resources Defense Council v. Kempthorne*, 539 F.Supp.2d 1155, 1187-88 (E.D. Cal. 2008).

Second, the State will also face significant prejudice through Plaintiffs' attempted interference with its operation of core sovereign functions and through Plaintiffs' efforts to violate principles of comity. Allowing this case to continue without the DAs would also threaten constitutional error. All the relief that Plaintiffs seek is predicated on their claim that California's DAs have acted unlawfully in contracting with either NCG or VSI. (*See, e.g.*, SAC ¶¶ 25-27.) There is simply no way to shape the relief to avoid the prejudice discussed above, or even to provide meaningful relief, without the contracting DAs. As a result, Plaintiffs do not have any "alternative remedies or forms of relief" available to them that would lessen the prejudice Defendants face. *Pimental*, 128 S.Ct. at 2192. Thus, "there is no substantial argument to allow [this] action to proceed." *Id*.

The third Rule 19(b) factor also favors dismissal. *See* Fed. R. Civ. P 19(b)(3). In the context of Rule 19(b), "adequacy" refers not to the "satisfaction" of Plaintiffs' claims but rather the "public stake in settling disputes by wholes, whenever possible." *Pimental*, 128 S.Ct. at 2193. Here, no "adequate" remedy exists and certainly no "settling disputes by wholes" without the DAs. *See Downing,* 806 F.Supp.2d at 468-69.

Finally, the fourth Rule 19(b) factor does not require allowing this case to go forward. *See* Fed. R. Civ. P. 19(b)(4). Given states' concurrent jurisdiction over FDCPA claims, Plaintiffs are hard-pressed to establish that ***federal court*** (as opposed to state court) is the proper forum to resolve the state claims underlying their federal allegations. *See, e.g.*, 15 U.S.C. § 1692k(d).  This Court has already held that it is inconceivable that the California Legislature, when it passed SB1108, intended disputes over the programs to be governed by ***federal law*** (as opposed to state law).  *Breazeale v. Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1078 (N.D. Cal. 2016).  If it is to be decided anywhere, this case belongs in California Superior Court.

But even if Plaintiffs have no alternative forum, "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for the definitive resolution of their claims." *Id*. at 2194. In such circumstances, any prejudice to an existing party is "outweighed by prejudice to the absent entities invoking sovereign immunity." *Id*. Under Rule 19(b), dismissal of this case is needed.

///

///

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(7)

**IX.  ALTERNATIVELY, IF JOINDER IS FEASIBLE, PLAINTIFFS SHOULD BE ORDERED TO JOIN EVERY CONTRACTING DISTRICT ATTORNEY**

If this Court should determine that DAs do not enjoy sovereign immunity, this case should be dismissed with leave to amend so that Plaintiffs may join the DAs.  Even if Plaintiffs are unlikely to state a cause of action against any DAs, a "plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19." *Peabody I*, 400 F.3d at 781. Here, such joinder should be ordered.

**X.  CONCLUSION**

For all the reasons above, Defendants respectfully request that the Court grant their motion to dismiss for failure to join the contracting DAs. If joinder is not feasible, this should be done with prejudice. Alternatively, if joinder is feasible, the motion to dismiss should be granted with leave to amend, and Plaintiffs ordered to join all contracting DAs encompassed by their purported class claims.

DATED: June 25, 2018

By:  /s/M. Taitelman
Michael A. Taitelman
Sean M. Hardy
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
Tel: (310) 201-0005
Fax: (310) 201-0045
mtaitelman@ftllp.com
smhardy@ftllp.com
Attorneys for Victim Services, Inc.,
National Corrective Group, Inc., American Justice
Solutions, Inc., Birch Grove Holdings, Inc., Mats
Jonsson, and Karl Thomas Jonsson