UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN SOLBERG, et al.,

Plaintiffs,

v.

VICTIM SERVICES, INC. D/B/A
CORRECTIVESOLUTIONS, et al.,

Defendants.

Case No.  14-cv-05266-VC

**ORDER GRANTING IN PART
MOTION FOR CLASS
CERTIFICATION**

Re: Dkt. No. 225

The plaintiffs' motion for class certification is granted in large part.

1. The plaintiffs may pursue their FDCPA claims on behalf of a 23(b)(3) class with the following definition: All persons in California to whom the defendants sent a collection demand in connection with a returned check from whom the defendants attempted to collect or collected money for checks written for personal, family, or household purposes, from December 1, 2013, to May 7, 2015.

The class is limited to people who were sent the "old" version of the letter before the defendants entered into a consent decree with the Consumer Financial Protection Bureau. In response to the consent decree, the defendants made several non-trivial changes to the bad check diversion program that went into effect on May 8, 2015. For starters, the relevant district attorney must now approve the list of people to whom the defendants send letters. Because the defendants are exempt from the FDCPA if, among other requirements, they only contact someone following a district attorney's determination of probable cause, a shift in the district attorney's role could be significant for liability. *See* 15 U.S.C. § 1692p(a)(2)(C). The revised letters also no longer use the district attorney's signature and they identify the defendants by name, both changes that might impact whether the letters are misleading. *See* 15 U.S.C. § 1692e. Regardless of whether these changes are ultimately dispositive, they are surely material to the analysis. As a result, the

named plaintiffs – all of whom received the old letter – cannot represent a class of people who were subject to the revised program.

The narrowed definition otherwise meets the requirements of Rule 23, despite the defendants' many arguments to the contrary. To begin, the defendants have not identified any concrete differences among their practices in the different California counties. Fed. R. Civ. P. 23(a)(2); 23(b)(3). Class members received identical collection letters arising out of the defendants' substantially similar arrangements with the involved district attorney's offices. Because the content of the letter and the details of the defendants' arrangement will determine their liability under the FDCPA, "the commonality linking the class members is the dispositive question in the lawsuit." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). And there is no numerosity problem, because: (i) Rule 23(a)(1) does not require the plaintiffs to identify exactly how many people received letters stemming from checks written for personal, family, or household purposes; (ii) the three named plaintiffs fall into this category; and (iii) it is an obvious matter of common sense that a significant portion of the many letter recipients throughout California do so as well. *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014).

The defendants argue that named plaintiffs Bonakdar and Solberg are not typical of the class because they failed to read the demand letters. Fed. R. Civ. P. 23(a)(3). Even assuming that were the case – which would beg the question why both responded to the letter – the FDCPA requires an objective inquiry that rests on "whether the 'least sophisticated debtor would likely be misled by a communication.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). There is no need to evaluate how much of the letter any individual class member read. The defendants also contend that Bonakdar is atypical because she was referred to the defendants by the El Dorado County District Attorney's office, while the majority of class members were referred by a merchant. But, again, the defendants have not pointed to any evidence that the District Attorney's office took additional steps to evaluate probable cause or otherwise acted in a manner that might impact their liability. Finally, the defendants have not identified anything in this case to suggest that the plaintiffs or their attorneys will not "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

2. The plaintiffs also seek restitutionary and injunctive relief under the UCL. As an initial

matter, the plaintiffs do not have standing to seek injunctive relief, because their threatened injury is not "sufficiently likely to occur." *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012). It is unlikely that these plaintiffs will bounce checks in the future, whether inadvertently or otherwise. And in the event they do inadvertently bounce checks, it is unlikely that they will then be pulled into the diversion program. While there is a written policy governing who is placed in the program, it is a different written policy from the one the plaintiffs were subjected to – and it changed in response to precisely the kinds of claims the plaintiffs are making in this case. *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (explaining that a plaintiff may establish standing where the plaintiff's injury stemmed from a written policy in place "at the time of the injury"), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

Despite not having standing to pursue injunctive relief, the plaintiffs may still seek restitution. For purposes of restitution, the plaintiffs seek certification of a slightly narrower class than for the FDCPA claim – a class of people who actually paid fees to the defendants after receiving the letter, rather than a class of all people who received the letter.

The defendants argue that restitution is only available as a follow-on to an award of injunctive relief under section 17203, but the California Supreme Court has rejected that position. *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247, 1271 (1997) (concluding that section 17203 authorizes an award of restitution "whether or not the court also enjoins future violations"); *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010) (describing injunctive and restitutionary relief as "wholly independent remedies"). Although a subsequent California Supreme Court case explains that restitution is "ancillary" to injunctive relief, it does not suggest that an injunction is a prerequisite to an award of restitution. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011); *see also Maraventano v. Nordstrom, Inc.*, 2013 WL 5936183, at *5 (S.D. Cal. Nov. 1, 2013). Therefore, *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011), and *Deitz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006), on which the defendants rely, were incorrectly decided.

The analysis of whether class certification is appropriate for the restitution claim under the UCL is otherwise comparable to the analysis for the FDCPA class. The defendants had previously argued that the UCL class was not sufficiently cohesive because only some of the

class had been harmed by the letter, but the class is now limited to people who "all suffered the same injury" by virtue of having paid fees to the defendants. *Evon*, 688 F.3d at 1029. Accordingly, the plaintiffs may represent a UCL class pursuant to Rule 23(b)(3) with the following definition: All persons in California to whom the defendants sent an initial collection demand in connection with a returned check at any time from September 1, 2011, to May 7, 2015, and who subsequently paid any fees to the defendants in response to that letter.

3. The separate FDCPA and UCL classes are created under Rule 23(d) for case management purposes; they are not formally distinct subclasses that require separate representation. *See Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786-87 (9th Cir. 1982); *see also* 3 Newberg on Class Actions § 7:32 (5th ed.).

**IT IS SO ORDERED.**

Dated: December 12, 2018

_____
VINCE CHHABRIA
United States District Judge