FREEDMAN + TAITELMAN, LLP
MICHAEL A. TAITELMAN (SBN 156254)
mtaitelman@ftllp.com
SEAN M. HARDY (SBN 266446)
smhardy@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Tel.:  (310) 201-0005
Fax:  (310) 201-0045

Attorneys for Defendants Victim Services, Inc., National Corrective Group, Inc., American Justice
Solutions, Inc., Birch Grove Holdings, Inc., Mats Jonsson, and Karl Thomas Jonsson

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SOLBERG, NANCY MORIN, and NARISA BONAKDAR on their own behalf and on behalf of others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>VICTIM SERVICES, INC., d/b/a CorrectiveSolutions, NATIONAL CORRECTIVE GROUP, INC., d/b/a CorrectiveSolutions, AMERICAN JUSTICE SOLUTIONS, INC., d/b/a CorrectiveSolutions, BIRCH GROVE HOLDINGS, INC., MATS JONSSON and KARL THOMAS JONSSON,<br><br>               Defendants. | Civ. No. 3:14-cv-05266-VC<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF OMNIBUS MOTION FOR:**<br><br>**(1) JUDGMENT ON THE PLEADINGS FOR LACK OF SUBJECT MATTER JURISDICTION;**<br>**(2) JUDGMENT ON THE PLEADINGS FOR FAILURE TO JOIN REQUIRED PARTIES OR, ALTERNATIVELY, FOR JOINDER;**<br>**(3) SUMMARY JUDGMENT; AND**<br>**(4) CLASS DECERTIFICATION**<br><br><br>Date: July 30, 2020<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor |

**DEFENDANTS' OMNIBUS MOTION**

TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Thursday, July 30, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, Courtroom 4, 17th floor, San Francisco, California 94102,  Defendants Victim Services, Inc. ("VSI"), National Corrective Group, Inc. ("NCG"), American Justice Solutions, Inc. ("AJS"), Birch Grove Holdings, Inc. ("BGH"), Mats Jonsson, and Karl Thomas Jonsson (collectively, "Defendants") will and hereby do move the Court pursuant to move this Court the following orders: (1) granting Defendants judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and dismissing this action pursuant to the doctrine of comity and the Tax Injunction Act; (2) granting Defendants judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) for failure to name required parties, or, in the alternative, ordering that the absent 32 California counties be joined pursuant to Federal Rule of Civil Procedure 19; (3) granting Defendants summary judgment pursuant to Federal Rule of Civil Procedure 56; and (4) decertifying the class pursuant to Federal Rule of Civil Procedure 23.

This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the Declaration of Sean M. Hardy ("Hardy Decl.") and its attached exhibits; the pleadings, records and papers on file in this action; and such other oral and documentary evidence as the Court may deem necessary for adjudication of this matter.

DATED: June 1, 2020

By: /s/M. Taitelman
    Michael A. Taitelman
    Sean M. Hardy
    Attorneys for Victim Services, Inc.,
    National Corrective Group, Inc., American
    Justice Solutions, Inc., Birch Grove
    Holdings, Inc., Mats Jonsson, and Karl
    Thomas Jonsson

**DEFENDANTS' OMNIBUS MOTION**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    DISMISSAL OF PLAINTIFFS' REMAINING CLAIMS IS WARRANTED .................. 2

   A.  Standard ............................................................................................................ 2

   B.  The Doctrine of Comity Bars Adjudication of Plaintiffs' Remaining Claims .................... 2

      1.  Plaintiffs Have Access To a "Plain, Adequate, and Complete" Remedy in State Court . 8

   C.  The Tax Injunction Act Also Bars Plaintiffs' Remaining Claims ....................................... 9

      1.  The TIA Bars Plaintiffs' Requests for Injunctive and Declaratory Relief.................... 10

      2.  Plaintiffs' Requests for Monetary Damages Further Violate the TIA .......................... 11

      3.  The TIA Applies Equally to Suits Involving Private Parties ......................................... 12

      4.  A "Plain, Speedy, And Efficient" State Law Remedy Is Available.............................. 13

III.   DISMISSAL IS WARRANTED BECAUSE THE COUNTIES ARE REQUIRED PARTIES UNDER RULE 19 ............................................................................... 14

   A.  Standard .......................................................................................................... 14

   B.  The Counties are Required Parties Under Rule 19(a)......................................................... 14

      1.  The Remaining Claims Require the Joinder of the Counties ......................................... 14

      2.  The Counties are Required Parties to Plaintiffs' Declaratory Judgment ....................... 17

      3.  The Counties Ability To Protect Their Interests Would be Impaired ........................ 19

      4.  Joinder of the Counties is Not Feasible ........................................................................ 19

      5.  This Case Cannot Proceed Absent Joinder of the Counties ........................................... 20

      6.  Alternatively, the Counties Should be Joined as Defendants.......................................... 21

IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ................................. 22

   A.  The Counties Bear the Burden of Defending the Challenged BCDP Fees........................ 22

   B.  BCDP Fees Retained by Defendants are Not Taxes as a Matter of Law.......................... 22

   C.  BCDP Fees are Not an Unconstitutional Tax Because they are Voluntary...................... 24

   D.  Plaintiffs Lack Standing to Challenge the BCDP Fees as Unlawful Taxes...................... 25

   E.  BCDP Fees are Lawful Regulatory Fees ......................................................................... 26

   F.  BCDP Fees are Lawful User Fees .................................................................................... 30

V.   THE CLASS SHOULD BE DECERTIFIED AS TO THE REMAINING CLAIMS .......... 30

   A.  The Court May Decertify a Class at Any Time ................................................................ 30

   B.  Plaintiffs' Remaining Claims Lack Commonality and Typicality .................................... 30

VI.   CONCLUSION............................................................................................... 35

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>FEDERAL CASES</u>

*Alto v. Black,*
738 F.3d 1111 (9th Cir. 2013) ................................................. 14

*Amarok Corp. v. State of Nev., Dep't of Taxation,*
935 F.2d 1068 (9th Cir. 1991) ................................................. 9

*American Greyhound Racing, Inc. v. Hull,*
305 F.3d 1015 (9th Cir. 2002) ................................................. 14

*Bakia v. Los Angeles County State of Cal.,*
687 F.2d 299 (9th Cir.1982) ................................................. 14

*Berger v. Home Depot USA, Inc.,*
741 F.3d 1061 (9th Cir. 2014) ................................................. 30

*Blangeres v. Burlington N., Inc.,*
872 F.2d 327 (9th Cir. 1989) ................................................. 7, 13

*Breazeale v. Victim Servs., Inc.,*
198 F.Supp.3d 1070 (N.D. Cal. 2016) ................................................. 21, 29

*California v. Grace Brethren Church,*
457 U.S. 393 (1982) ................................................. *passim*

*Capitol Indus.-EMI, Inc. v. Bennett,*
681 F.2d 1107 (9th Cir. 1982) ................................................. 8

*Carver v. Sheriff of LaSalle Cty., Illinois,*
324 F.3d 947 (7th Cir. 2003) ................................................. 15

*Chase Manhattan Bank, N.A. v. City & Cty. of San Francisco,*
121 F.3d 557 (9th Cir. 1997) ................................................. 13

*City of Maryland Heights v. Tracfone Wireles, Inc.,*
2013 WL 791866 (E.D. Mo. March 4, 2013) ................................................. 13

*Davis v. Mich. Dep't of Treasury,*
489 U.S. 803 (1989) ................................................. 8

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
276 F.3d 1150 (9th Cir. 2002) ................................................. 18, 19

**DEFENDANTS' OMNIBUS MOTION**

*Deja Vu Showgirls of Las Vegas, L.L.C. v. Nevada Dep't of Taxation*,
   2006 WL 2161980 (D. Nev. July 28, 2006) ...........................................................11

*Del Campo v. Kennedy*,
   517 F.3d 1070 (9th Cir. 2008) ...............................................................................20

*Delno* v. *Market St. Ry. Co.*,
   124 F.2d 965 (9th Cir. 1942) .................................................................................18

*Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.*,
   416 F.2d 707 (7th Cir. 1969) ...........................................................................17, 18

*Dillon v. Montana*,
   634 F.2d 463 (9th Cir. 1980) ........................................................................6, 8, 10

*Doe v. United States*,
   419 F.3d 1058 (9th Cir.2005) ..................................................................................2

*Downing v. Globe Direct LLC*,
   806 F.Supp.2d 461 (D.Mass. 2011) ..................................................................18, 21

*Dworkin v. Hustler Magazine Inc.*,
   867 F.2d 1188 (9th Cir. 1989) .................................................................................2

*E.E.O.C. v. Peabody W. Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) ...........................................................................19, 22

*E.E.O.C. v. Peabody W. Coal Co.*,
   610 F.3d 1070 (9th Cir. 2010) ...............................................................................19

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
   651 F.3d 722 (7th Cir. 2011) (en banc) ................................................................13

*Fair Assessment in Real Estate Ass'n Inc. v. McNary*,
   454 U.S. 100 (1981).......................................................................................... *passim*

*Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*,
   493 U.S. 331 (1990)...........................................................................................8, 11

*Fredrickson v. Starbucks Corp.*,
   840 F.3d 1119 (9th Cir. 2016) ........................................................................ *passim*

*Georgeadis v. Cty. of Fairfield*,
   2000 WL 1459418 (S.D. Ohio Sept. 25, 2000) ....................................................20

*Great Lakes Dredge & Dock Co. v. Huffman*,
   319 U.S. 293 (1943)..................................................................................................3

iii

*Gwozdz v. HealthPort Techs.,*
LLC, 846 F.3d 738 (4th Cir. 2017)...................................................................11, 13

*Heintz v. Jenkins* (1995)
514 U.S. 291 (1995)..............................................................................................20

*Hibbs v. Winn,*
542 U.S. 88 (2004)............................................................................................3, 10

*Home Buyers Warranty Corp. v. Hanna,*
750 F.3d 427 (4th Cir. 2014) ................................................................................21

*Hyatt v. Yee,*
871 F.3d 1067 (9th Cir. 2017) ..............................................................................10

*Int'l Soc. for Krishna Consciousness of California, Inc. v. City of Los Angeles,*
611 F.Supp. 315 (C.D. Cal. 1984) ........................................................................17

*Jerron W., Inc. v. State of Cal., State Bd. of Equalization,*
129 F.3d 1334 (9th Cir. 1997) ...........................................................................7, 12

*Joseph v. Hyman,*
659 F.3d 215 (2d Cir. 2011)....................................................................................4

*Kersten v. State of California Franchise Tax Bd.,*
2017 WL 1079941 (E.D. Cal. Mar. 22, 2017) .....................................................4, 9

*Kokkonen v. Guardian Life Ins. Of America,*
511 U.S. 375 (1994)................................................................................................2

*Leiss v. DeMarois,*
2020 WL 1693672 (D. Or. Apr. 7, 2020) ...............................................................9

*Levin Metals Corp. v. Parr-Richmond Terminal Co.,*
799 F.2d 1312 (9th Cir. 1986) ...........................................................................17, 18

*Levin v. Commerce Energy, Inc.,*
130 S.Ct. 2323 (2010)......................................................................................2, 6, 7

*Levin v. Commerce Energy, Inc.,*
560 U.S. 413 (2010)......................................................................................3, 4, 7, 8

*Lomayaktewa v. Hathaway,*
520 F.2d 1324 (9th Cir. 1975) ..............................................................................19

*Mandel v. Hutchinson,*
494 F.2d 364 (9th Cir. 1974) ..................................................................................8

**DEFENDANTS' OMNIBUS MOTION**

*May Trucking Co. v. Oregon Dep't of Transp.,*
    388 F.3d 1261 (9th Cir. 2004) .....................................................................10, 12, 17

*Miller v. Jennings,*
    243 F.2d 157 (5th Cir. 1957) .........................................................................................17

*Hood ex rel. Mississippi v. City of Memphis,*
    570 F.3d 625 (5th Cir. 2009) .........................................................................................21

*Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n,*
    515 U.S. 582 (1995)...........................................................................................................3

*Natural Resources Defense Council v. Kempthorne,*
    539 F.Supp.2d 1155 (E.D. Cal. 2008).........................................................................21

*Neujahr v. Steinke,*
    2009 WL 2003293 (D. Neb. July 6, 2009) .................................................................20

*Newman v. Checkrite Cal., Inc.,*
    912 F.Supp. 1354 (E.D. Cal. 1995).............................................................................22

*Olympic Sports Prod. v. Universal Athletic Sales Co.,*
    760 F.2d 910 (9th Cir.1986) ..........................................................................................22

*Perry v. Coles Cty., Illinois,*
    906 F.3d 583 (7th Cir. 2018) ...........................................................................................4

*Powers v. Credit Mgmt. Servs., Inc.,*
    776 F.3d 567 (8th Cir. 2015) .........................................................................................31

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) .......................................................................................34

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .........................................................................................30

*Rosewell v. LaSalle Nat. Bank,*
    450 U.S. 503 (1981)..........................................................................................8, 10, 11, 17

*Shermoen v. United States,*
    982 F.2d 1312 (9th Cir. 1992) .......................................................................................14

*Tosco Corp. v. Communities for Better Environment,*
    236 F.3d 495 (9th Cir. 2001) ...........................................................................................2

*Tully v. Griffin, Inc.,*
    429 U.S. 68 (1976)............................................................................................................10

v

**DEFENDANTS' OMNIBUS MOTION**

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
593 F.3d 802 (9th Cir. 2010) ................................................................30

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ................................................................30

*Washer & Refrigeration Supply Co., Inc. v. PRA Government Services, LLC*,
2010 WL 3614172 (M.D. Ala. Sept. 8, 2010) ................................................13, 26

*White v. Univ. of California*,
765 F.3d 1010 (9th Cir. 2014) ................................................................21

*William Lyon Homes, Inc. v. Cnty. of Nye*,
2011 WL 5373670 (D. Nev. Nov. 4, 2011) ................................................17, 22

## CALIFORNIA CASES

*California Assn. of Prof. Scientists v. Dept. of Fish & Game*,
79 Cal.App.4th 935 (2000) ................................................................26, 27, 28

*California Bldg. Indus. Assn. v. Governing Bd.*,
206 Cal.App.3d 212 (1988) ................................................................24

*California Bldg. Indus. Assn. v. San Joaquin Valley Air Pollution Control Dist.*,
178 Cal.App.4th 120 (2009) ................................................................25

*California Chamber of Commerce v. State Air Res. Bd.*,
10 Cal.App.5th 604 (2017) ................................................................24, 25

*California Farm Bureau Fed'n v. State Water Resources Control Bd.*,
51 Cal.4th 421 (2011) ................................................................27

*California Pub. Records Research, Inc. v. Cty. of Yolo*,
4 Cal.App.5th 150 (2016) ................................................................16

*California Tow Truck Ass'n v. City & Cty. of San Francisco*,
225 Cal.App. 4th 846 (2014) ................................................................28, 29

*Citizens for Fair REU Rates v. City of Redding*,
6 Cal.5th 1 (2018) ................................................................16

*City of Oakland v. Superior Court*,
45 Cal.App. 4th 740 (1996) ................................................................30

*City of San Buenaventura v. United Water Conservation Dist.*,
3 Cal.5th 1191 (2017) ................................................................15, 22, 27

*Cmty. Mem'l Hosp. v. Cty. of Ventura*,
50 Cal.App.4th 199 (1996) ................................................................20

**DEFENDANTS' OMNIBUS MOTION**

*Cotta v. City & Cty. of San Francisco*,
  157 Cal.App.4th 1550 (2007) ............................................................. 30

*Dey v. Cont'l Cent. Credit*,
  170 Cal.App.4th 721 (2008) ................................................................. 9

*Evans v. City of San Jose*,
  3 Cal.App.4th 728 (1992) ................................................................... 30

*Grotenhuis v. County of Santa Barbara*,
  182 Cal.App.4th 1158 (2010) ....................................................... 25, 26

*Heritage Pacific Financial, LLC v. Monroy*,
  215 Cal.App.4th 972 (2013) ................................................................. 9

*Loeffler v. Target Corp.*,
  58 Cal.4th 1081 (2014) ....................................................................... 26

*Logan v. S. California Rapid Transit Dist.*,
  136 Cal.App.3d 116 (1982) ................................................................. 9

*N. California Water Assn. v. State Water Resources Control Bd.*,
  20 Cal.App.5th 1204 (2018) .......................................................... 27, 28

*Olson v. Hickman*,
  25 Cal. App. 3d 920 (1972) ................................................................ 20

*Plumas Cty. v. Wheeler*,
  149 Cal. 758 (1906) ...................................................................... 27, 28

*San Diego Gas & Elec. Co. v. San Diego County Air Pollution Control Dist.*,
  203 Cal.App.3d 1132 (1988) ........................................................ 26, 28

*Schmeer v. Cty. of Los Angeles*,
  213 Cal.App.4th 1310 (2013) ................................................ 16, 23, 24

*Scol Corp. v. City of Los Angeles*,
  12 Cal.App.3d 805 (1970) .................................................................. 25

*Sinclair Paint Co. v. State Board of Equalization*,
  15 Cal.4th 866 (1997) ................................................................... 27, 28

*TracFone Wireless, Inc. v. County of Los Angeles*,
  163 Cal.App.4th 1359 (2008) ............................................................. 25

*United Bus. Com. v. City of San Diego*,
  91 Cal.App.3d 156 (1979) .................................................................. 28

**DEFENDANTS' OMNIBUS MOTION**

*Watson v. Merced County*,
  274 Cal.App.2d 263 (1969) ........................................................................27

*Wells v. One2One Learning Found.*,
  39 Cal.4th 1164 (2006) ............................................................................20

*Zolly v. City of Oakland*,
  47 Cal.App.5th 73 (2020) .........................................................................16

**FEDERAL STATUTES**

15 U.S.C. § 1692a (6)(C) ...........................................................................20

15 U.S.C. § 1692a (8) .................................................................................20

28 U.S.C. § 1341 ..............................................................................3, 10, 13

42 U.S.C. § 1983 ..........................................................................................4

**CALIFORNIA STATUTES**

Cal. Govt. Code § 6100 ..............................................................................33

Cal. Govt. Code § 25303 ............................................................................33

Cal. Govt. Code § 26503 ..............................................................................7

Cal. Govt. Code §§ 26503, 26504 .................................................7, 11, 16

Cal. Govt. Code § 66016(b) ........................................................................29

Cal. Penal Code § 1001.64 .........................................................................32

Cal. Penal Code § 1001.65 .........................................................................24

Cal. Pub. Res. Code § 40059(a)(2) ............................................................29

**OTHER AUTHORITIES**

96 Cal. Op. Atty. Gen. 24 (2013)....................................................7, 11, 16

Cal. Const. Article XI, § 1 ..........................................................................20

Cal. Const., Article XIII A, § 3(b) ..............................................................26

Cal. Const., Article XIII C, § 1, subd. (e) ..........................15, 16, 22, 23

California Constitution Article III ................................................................6

**DEFENDANTS' OMNIBUS MOTION**

California Constitution Article XIII...........................................................................3, 23

California Constitution Article XIII A, § 3(a) ................................................................26

California Constitution Articles XIII C and XIII D.........................................................22

**RULES**

Fed. R. Civ. P. 19(a)(1)(B) ...........................................................................................14

Fed. R. Civ. P. 12(b) .......................................................................................................2

Fed. R. Civ. P. 12(b)(1)....................................................................................................2

Fed. R. Civ. P. 12(b)(7)..................................................................................................14

Fed. R. Civ. P. 12(c) ...................................................................................................2, 14

Fed. R. Civ. P. 12(h)(2)..................................................................................................14

Fed. R. Civ. P. 19 .................................................................................................. *passim*

Fed. R. Civ. P. 19(a).........................................................................................14, 17, 19

Fed. R. Civ. P. 19(b).............................................................................14, 17, 20, 21

Fed. R. Civ. P. 23(a) (2).........................................................................................30, 31

Fed. R. Civ. P. 23(a)(3)..................................................................................................34

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................30

**DEFENDANTS' OMNIBUS MOTION**

## I.    INTRODUCTION

This class action concerns the administration of Bad Check Diversion Programs ("BCDPs") by Defendants NCG and VSI as the agents of the District Attorneys ("DAs") for 32 California counties.[1]  On November 20, 2019, this Court issued its ruling on the parties' cross-motions for summary judgment (the "Ruling").  Dkt. No. 348.  This Court's comprehensive Ruling reduced this case to one issue – the propriety of the fees associated with Defendants' administration of the BCDPs.  Specifically, the Court granted summary judgment in favor of Defendants on all of Plaintiffs' claims, except those based on the allegation that Defendants charged fees not authorized by California law.  *Id.* at 2.  The Court found that the remaining claims under the FDCPA and California UCL hinged on Plaintiffs' contention that the "fees are actually 'taxes' prohibited by state law absent approval by two-thirds of the respective local government's electorate."  *Id.* at 23.  Pursuant to the Court's order at the December 11, 2019 case management conference (Dkt. No. 351), Defendants now bring this omnibus motion, on the following independent grounds.

First, Plaintiffs' remaining claims admittedly seek to interfere with California's taxation scheme.  Controlling precedent requires that this action be dismissed for lack of subject matter jurisdiction pursuant to both the doctrine of comity and the Tax Injunction Act, as the law is clear that actions affecting state taxation are properly resolved in state courts.

Second, the absent Counties are required parties to this action under Rule 19.  California law requires that the Counties bear the burden of defending any charges or fees that are challenged as unlawful taxes.  The issue of the lawfulness of the fees thus cannot be addressed until the Counties are joined.  However, joinder of the Counties is not feasible, as they cannot be sued under either the FDCPA or UCL.  This case should be dismissed on this alternative ground.

Third, although Defendants do not bear the burden to establish the lawfulness of the BCDP fees, should the Court reach this issue, summary judgment should be entered for Defendants.  Under established California law, the challenged fees do not constitute taxes.  Indeed, Plaintiffs lack standing to challenge the fees as purported illegal taxes, as the only proper method for doing so is through a refund action in California

---

[1] These counties are Alameda, Calaveras, Colusa, Contra Costa, El Dorado, Fresno, Glenn, Imperial, Lassen, Los Angeles, Madera,  Marin, Mariposa, Merced, Modoc, Monterey, Nevada, Orange, Placer, Riverside, San Bernardino, San Joaquin, San Mateo, Santa Barbara, Santa Clara, Santa Cruz Sierra, Siskiyou, Sonoma, Stanislaus, Tulare, and Tuolumne (collectively, the "Counties").

**DEFENDANTS' OMNIBUS MOTION**

state court.  Rather, the BCDP fees were enacted by the Counties as lawful regulatory fees and user fees under California law.

Finally, this Court should decertify the class as to Plaintiffs' remaining claims, which are no longer amenable to statewide resolution.  As there are clear and material differences in the level of DA involvement in BCDPs between the Counties, as well as the procedures by which the Counties approved the BCDP fees, commonality is lacking.  Further, typicality is lacking, as Plaintiff Bonakdar (the only Plaintiff to complete a BCDP or pay any money) participated in a BCDP in a County that lacked the level of DA involvement present in other Counties, and which did not have its BCDP fees approved by the County Board of Supervisors, which was the case in the majority of Counties.

## II.  DISMISSAL OF PLAINTIFFS' REMAINING CLAIMS IS WARRANTED

### A.  Standard

Under Federal Rule of Civil Procedure ("Rule") 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim.  *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir.2005). A motion brought under Rule 12(c) is "functionally identical" to one brought pursuant to Rule 12(b), and "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Under Rule 12(b)(1), the plaintiff, as the party seeking to invoke the court's jurisdiction, "has the burden of proving jurisdiction in order to survive the motion."  *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001). The court presumes that any case "lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Of America*, 511 U.S. 375, 377 (1994).   A motion on the pleadings based on lack of subject matter jurisdiction is an appropriate mechanism to address the issue presented here (i.e., whether comity and/or the Tax Injunction Act requires that the Court decline to exercise jurisdiction).  *Levin v. Commerce Energy, Inc.*, 130 S.Ct. 2323, 2329 (2010) (dismissal based on comity doctrine).

### B.  The Doctrine of Comity Bars Adjudication of Plaintiffs' Remaining Claims

Plaintiffs contend that the fees charged to participants in the Counties' BCDPs are illegal taxes in

violation of Article XIII of the California Constitution. They seek declaratory relief that the BCDPs charge illegal taxes, injunctive relief prohibiting the collecting of such taxes, actual damages consisting of monies paid to BCDPs, statutory damages, and restitution (also consisting of monies paid to BCDPs). *See* Dkt. No. 216 at 28-29. As Plaintiffs plainly seek to interfere in matters affecting state taxation, United States Supreme Court and Ninth Circuit precedent compel the dismissal of Plaintiffs' remaining claims under the doctrine of comity.[2]

The doctrine of comity counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010). The doctrine has particular force when federal courts are asked to pass on the legality of state taxation matters. For it "is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Levin*, 560 U.S. at 421-422, quoting *Dows v. Chicago*, 78 U.S. 108, 110 (1871). In 1937, Congress partially codified the "federal reluctance to interfere with state taxation" with the Tax Injunction Act ("TIA").[3] *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 590 (1995). The Supreme Court has time and again reaffirmed "the continuing sway of comity considerations, independent of the [TIA]." *Levin*, 560 U.S. at 423. In so doing, the Supreme Court has consistently held that "the comity doctrine is more embracive than the TIA[.]" *Id.* at 424. Indeed, the Supreme Court reiterated that where the comity doctrine justifies dismissal of an action, no separate inquiry into the application of the TIA is necessary. *Id.* at 432; *Fair Assessment in Real Estate Ass'n Inc. v. McNary*, 454 U.S. 100, 107 (1981) ("Because we decide today that the principle of comity bars federal courts from granting damages relief in [state tax] cases, we do not decide whether [the TIA], standing alone, would require such a result."); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 294 (1943) (reserving judgment on TIA's application where comity precluded suit). Municipal and local taxes constitute state taxes for purposes of the comity doctrine. *See Hibbs v. Winn*, 542 U.S. 88, 100 fn. 1 (2004); *Great Lakes*

---

[2] Plaintiffs contend that the BCDP fees are unlawful taxes in violation of California law and seek refunds of such taxes via restitution and actual damages. Although Defendants deny this, the disposition of the remaining claims is framed by Plaintiffs' contention. Dkt. No. 348 at 23-24.

[3] The TIA mandates that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

**DEFENDANTS' OMNIBUS MOTION**

*Dredge & Dock Co.*, 319 U.S. at 298.

Under the doctrine of comity, federal courts decline to interfere "with the fiscal operations of the state governments" where a "plain, adequate, and complete" state remedy is otherwise available. *Levin*, 560 U.S. at 422. The determination of whether an available remedy is "plain, adequate, and complete" mirrors the TIA analysis of whether a state remedy is "plain, speedy, and efficient." *See Fair Assessment,* 454 U.S. at 116 fn. 8. Courts therefore look to the same body of law when conducting either analysis. *Id*.

"In cases involving state taxes, the comity doctrine establishes an even '[m]ore embracive' prudential rule that federal courts should refrain from hearing 'claims for relief that risk disrupting state tax administration.'" *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124 (9th Cir. 2016) (quoting *Levin*, 560 U.S. at 417); *see also Kersten v. State of California Franchise Tax Bd.*, 2017 WL 1079941, at *2 (E.D. Cal. Mar. 22, 2017) ("The comity principle's teeth are sharpest in federal cases involving challenges to state taxation."). As such, federal courts have consistently relied upon the doctrine of comity to reject plaintiffs' attempts to impede the administration of state taxation schemes.

The comity doctrine is broader in scope than TIA "because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that 'risk disrupting state tax administration'" *Joseph v. Hyman*, 659 F.3d 215, 218–19 (2d Cir. 2011) (quoting *Levin*, 560 U.S. at 417). For instance, in *Joseph,* the Second Circuit held that the comity doctrine supported dismissal of a challenge by a group of commuters to an exemption to a New York law that imposes a surcharge on parking lots and garages. *Joseph,* 659 F.3d at 217-18. This was the case even though, had the plaintiffs been successful, their suit would have resulted in ***more*** revenue flowing to the state. *Id.* at 216; *see also Perry v. Coles Cty., Illinois*, 906 F.3d 583, 590 (7th Cir. 2018) ("Thus, addressing the merits of plaintiffs' claims, even if they would result in additional taxes for the County, would plainly interfere with Coles County's ability to collect taxes.").

In *Fair Assessment*, the Supreme Court evaluated whether a damages action could be brought under 42 U.S.C. § 1983 to redress the unconstitutional administration of a state tax system. 454 U.S. at 101-02. After confirming the continued viability of the comity doctrine, the Court concluded that comity barred taxpayers from challenging the administration of a state tax system, even in a § 1983 action. *Id.* at 116. Rather, the Supreme Court instructed that "taxpayers must seek protection of their federal rights by state

remedies . . . and may ultimately seek review of the state decisions in this Court." *Id.*

The Ninth Circuit has similarly enforced the doctrine of comity where lawsuits challenge the legality of state taxation schemes.  For instance, in *Marvin F. Poer & Co. v. Ctys. of Alameda*, the plaintiffs sued every county in California for damages in the amount of taxes paid for the 1978-1979 tax year.  725 F.2d 1234, 1235 (9th Cir. 1984).  The plaintiffs tasked the federal courts with adjudicating the constitutionality of Article XIIIA of the California Constitution, commonly known as Proposition 13.  *Id.*  The Ninth Circuit, applying the Supreme Court's holding in *Fair Assessment,* affirmed the district court's dismissal of the action on comity grounds.  *Id.* at 1236.

More recently, in *Fredrickson*, class action plaintiffs alleged that Starbucks had improperly withheld state and federal taxes and sought both equitable relief and statutory damages.  840 F.3d at 1121.  The fact that "the plaintiffs seek to recover only statutory damages, and not the tax amounts said to be improperly collected, does not matter."  *Id.* at 1124.  This is because, in order to award statutory damages, a federal court would first have to declare that state law prohibited the withholding of the challenged taxes, and "Starbucks would of course cease doing so in order to avoid future liability."  *Id.*  Noting that the plaintiffs' claims turned "solely on the proper interpretation of state law," the Ninth Circuit concluded that granting the requested damages would impermissibly "halt" a portion of Oregon's tax scheme and reduce "the flow of tax revenue into Oregon's coffers."  *Id*. at 1124-25.  Going further, the Ninth Circuit made clear that "***[p]recisely because the plaintiffs' claims turn solely on the proper interpretation of state law***, there is no federal interest involved in the dispute, which Oregon's courts are better equipped to resolve given their greater familiarity with the nuances of state tax law."  *Id.* at 1125 (emphasis added).  Indeed, the Ninth Circuit even noted that Starbucks had been sued because it has been acting as Oregon's "private collection agent."  *Id.*  The *Fredrickson* court held that principles of comity barred plaintiffs' statutory damages claims and remanded the case to state court. *Id*. at 1126.

Additionally, in *Armstrong v. Walborn,* a nontaxpayer challenged the constitutionality of a Montana tax scheme that allegedly discriminated against religious schools.  745 F.Appx. 12 (9th Cir. 2018).  In affirming the district court's dismissal of the plaintiff's complaint, the Ninth Circuit held that it "need not determine whether the TIA bars federal court jurisdiction over the Association's claims because pursuant to the comity doctrine, a complaint regarding an allegedly unconstitutional state benefits program should

proceed originally in state court." *Id.* at 13.  Following *Levin* and *Fredrickson,* the Ninth Circuit found that it would be improper for "a federal court to evaluate legislative preferences and involve itself in Montana's management of its fiscal operations." *Id.*

Similarly, in *Thorp v. D.C.,* the district court held that dismissal under comity doctrine was warranted where the "[p]laintiff's claims are inextricably intertwined with a determination of the appropriate scope, interpretation, and application of D.C. tax law."  317 F.Supp.3d 74, 83 (D.D.C. 2018).  So too here. Plaintiffs' remaining claims are inextricably intertwined with the appropriate scope, interpretation, and application of California tax law.

Here, just as in *Fredrickson*, resolution of the dispute turns entirely on the proper interpretation of state tax law. 840 F.3d at 1125.  Plaintiffs contend that the Counties have violated Article III of the California Constitution, by imposing illegal taxes on participants in their BCDPs.  Article III was the exact provision of the California Constitution which the Ninth Circuit held was properly subject to interpretation by California state courts. *Marvin F. Poer & Co.*, 725 F.2d at 1236.  Plaintiffs likewise seek to recover actual damages and restitution in the amounts paid in alleged unlawful taxes.  *Id.*  As in *Armstrong,* Plaintiffs seek to have this Court evaluate legislative preferences and involve itself in California's management of its fiscal operations. 745 F.Appx. at 13.  The remaining claims should proceed in state court.  *Id.*

Moreover, a federal court looks at the "practical effect on state fiscal operations" of the federal court order that plaintiffs seek. *Dillon*, 634 F.2d at 466.  This was clearly illustrated in *Fredrickson,* where the plaintiffs sought declaratory and injunctive relief, as well as statutory damages, based on the Starbucks' allegedly illegal withholding of state taxes.  840 F.3d at 1121.  The Ninth Circuit held that the practical effect of this relief would be for Starbucks to "of course" cease withholding state taxes in order to "avoid future liability." *Id.* at 1124.  The obvious result would be that the State of Oregon would be denied these monies.  *Id.*  This was even though the plaintiffs argued that neither federal nor Oregon law authorized Starbucks' conduct.  *Id.* at 1121-22.  The Ninth Circuit's holding in *Frederickson* applies with equal force here.

Plaintiffs cannot evade the reach of the comity doctrine by arguing that they are "only" challenging some of the BCDP charges – i.e., those that are retained by NCG or VSI.  The Ninth Circuit has long rejected such subterfuges under the comity doctrine and TIA, where the Plaintiffs' requested relief would indirectly

**DEFENDANTS' OMNIBUS MOTION**

impact state tax collection.  *See, e.g., Jerron W., Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997) (dismissal required where plaintiff's relief "may in every practical sense operate to suspend collection of the state taxes."); *Blangeres v. Burlington N., Inc.*, 872 F.2d 327, 328 (9th Cir. 1989) ("The fact that the injunction would restrain assessment indirectly rather than directly" is inconsequential).

The practical effect of the relief Plaintiffs seek here (i.e., a declaratory judgment that Defendants' conduct is illegal, an injunction prohibiting the collection of illegal taxes, actual damages, and statutory damages) would "of course" be for VSI to cease administering any BCDPs in California in order to "avoid future liability." *Fredrickson,* 840 F.3d at 1124. Obviously, as the alleged illegal taxes entirely fund VSI's administration of the BCDPs (it receives no government funding), VSI would have to stop running them if deprived of those monies.  Even more so than Starbucks, VSI acts as the "private collection agent" for the Counties.  *Id.* at 1125.  As in *Fredrickson,* this would deprive the Counties of ***all*** monies received from the BCDPs, even monies that Plaintiffs may feign to protest they do not challenge and are used for general revenue purposes.

State law ***requires*** that the BCDP monies sent to the DAs by NCG/VSI be deposited with the applicable County treasurer as county funds.  *See* Cal. Govt. Code § 26503[4]; Cal. Govt. Code § 26504[5]; 96 Cal. Op. Atty. Gen. 24 (2013) ("a county's district attorney is required to pay over to the county treasurer the processing fees that his or her office collects for processing bad checks in connection with a bad-check diversion program.").  "Precisely because the plaintiffs' claims turn solely on the proper interpretation of state law, there is no federal interest involved in the dispute," which California courts are "better equipped to resolve" given their familiarity with the nuances of state revenue laws.  *Fredrickson,* 840 F.3d at 1125.

Here, like the state in *Levin,* California and its counties enjoy "wide regulatory latitude" over tax and revenue policy.  *Levin*, 560 U.S. at 431.  Similarly, the California state courts are "better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative

---

[4] "The district attorney shall deliver receipts for money or property received in his official capacity and file duplicates with the county treasurer."

[5] "On the first Monday of each month, or at more frequent intervals as may be directed by the board of supervisors, the district attorney shall account for all money received by him in his official capacity and pay it over to the treasurer upon a deposit permit issued by the auditor."

**DEFENDANTS' OMNIBUS MOTION**

preferences...." *Id.* Indeed, the Supreme Court has shown a strong preference for allowing states to fashion their own remedy once a tax is deemed unlawful. *See Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 817–18 (1989).  Under these controlling authorities, the remaining claims in this action should be dismissed pursuant to the doctrine of comity.

1. **Plaintiffs Have Access To a "Plain, Adequate, and Complete" Remedy in State Court**

Federal interference is unnecessary here because the state remedies available to Plaintiffs are "plain, adequate, and complete," as required under *Levin*.  560 U.S. at 422.  As discussed above, the analysis for whether a remedy is "plan, adequate, and complete" under the comity doctrine mirrors the TIA analysis as to whether a remedy is "plain, speedy, and efficient."  *Fair Assessment,* 454 U.S. at 116 fn. 8.

The United States Supreme Court has stated that courts should construe the requirement for an adequate state remedy narrowly. *Grace Brethren Church,* 457 U.S. at 413. It only requires a state court remedy to meet "certain procedural criteria."  *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981).  A state meets such procedural criteria when it provides a taxpayer with the opportunity for a full hearing and judicial determination, including the ability to raise any constitutional objections to the tax at issue. *Grace Bretheren Church*, 457 U.S. at 411.

The requirement for a plain, adequate and complete remedy, however, does not imply a need for certainty that the state forum will provide the particular relief a plaintiff seeks.  *Dillon v. Montana,* 634 F.2d 463, 467 (9th Cir. 1980).  Moreover, the remedy need not be the best remedy available, nor does it need to be equal to the remedies available in federal court.  *Mandel v. Hutchinson,* 494 F.2d 364, 367 (9th Cir. 1974).

The Supreme Court and the Ninth Circuit have long held that California provides its taxpayers with "plain, speedy and efficient" remedies for tax disputes.  *Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 338 (1990); *Capitol Indus.-EMI, Inc. v. Bennett,* 681 F.2d 1107, 1113-14 (9th Cir. 1982); *California v. Grace Brethren Church,* 457 U.S. 393, 413-17 (1982).

Nothing prevents Plaintiffs from submitting a written tax refund request directly to the Counties or asserting each of their claims in state court. The available state agencies and courts, which frequently interpret and apply local tax laws, are far better equipped to evaluate the legality of the alleged tax at issue. Additionally, Plaintiffs may assert each of their remaining claims, under the FDCPA and UCL, in California

Superior Court. "State courts have concurrent jurisdiction over claims under the FDCPA." *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972, 997 (2013); *see also Dey v. Cont'l Cent. Credit,* 170 Cal.App.4th 721, 730 (2008) (finding that challenged fees did not violate FDCPA); *Leiss v. DeMarois*, 2020 WL 1693672, at *2 (D. Or. Apr. 7, 2020) (dismissal warranted where plaintiff's FDCPA claim concerned state tax issues and was properly heard in state court); *Logan v. S. California Rapid Transit Dist.*, 136 Cal.App.3d 116, 124 (1982) (finding state courts have concurrent jurisdiction to adjudicate federally created causes of action like § 1983 claims).

This Court has acknowledged the serious federalism concerns posed by this action, and particularly the issue of whether the challenged BCDP charges (which Plaintiffs contend are illegal taxes) violate California law. At the November 1, 2018 hearing on Plaintiffs' motion for class certification, the Court noted that the issue of whether a particular fee is authorized under California law "seems like it is something that is much better decided by a state court than a federal court." Dkt. No. 286 at 69:22-24. At that hearing, the Court envisioned the very situation the parties are now in – where all other issues have been excised from the case. The Court indicated that if it found itself in such a situation, it may order the parties to "go to state court to do that; I'm going to abstain from that question, or I'm going to decline to exercise supplemental jurisdiction on that question. If that's the sole issue you want to tee up, go to state court and let the state court decide whether the state's own program is being violated or not." *Id.* at 70:5-11.

The Court's expressed concerns are best addressed through application of the doctrine of comity. As a "plain, adequate, and complete" forum exists in California courts for Plaintiffs to assert their remaining claims and seek their remedies, dismissal is warranted under the aforementioned authorities.  It is in precisely these circumstances, where the "comity principle's teeth are sharpest," that Plaintiffs' attempts to involve the federal courts should be rejected. *Kersten*, 2017 WL 1079941, at *2.

### C.   The Tax Injunction Act Also Bars Plaintiffs' Remaining Claims

Additionally, dismissal of Plaintiffs' remaining claims is warranted under the TIA.  The sole remaining basis underpinning Plaintiffs' FDCPA claim is that the BCDPs charge illegal taxes under California law.  The Ninth Circuit has made clear that the "'mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground' to invoke the equitable jurisdiction of federal courts." *Amarok Corp. v. State of Nev., Dep't of Taxation*, 935 F.2d 1068, 1069 (9th Cir. 1991) (*quoting Matthews v. Rodgers*,

284 U.S. 521, 525-26 (1932)). The TIA creates a broad jurisdictional bar to federal interference with state tax systems. *Dillon,* 634 F.2d at 466. The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.,* 429 U.S. 68, 73 (1976).  As the Supreme Court has explained, Congress intended for the Act "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell,* 450 U.S. at 522.  Thus, to determine whether the TIA bars Plaintiffs' claims, this Court must examine the type of relief Plaintiffs request and whether an adequate state remedy is available for Plaintiffs in California courts. *See Hibbs v. Winn*, 542 U.S. 88, 99 (2004).

To this end, the United States Supreme Court has "interpreted and applied the [TIA] as a 'jurisdictional rule' and a 'broad jurisdictional barrier.'" *Hyatt v. Yee*, 871 F.3d 1067, 1072 (9th Cir. 2017). Where the TIA is found to apply, the statute divests a federal district court of subject matter jurisdiction and mandates that the action be dismissed. *See May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1274-75 (9th Cir. 2004).

Here, the TIA clearly bars this Court from hearing Plaintiffs' remaining claims.  In the operative SAC, Plaintiffs seek declaratory relief, injunctive relief, actual damages, restitution, and statutory damages. *See* Dkt. No. 216 at pp. 28-29.

### 1.   **The TIA Bars Plaintiffs' Requests for Injunctive and Declaratory Relief**

This Court should first consider the type of relief Plaintiffs request in their SAC.  The TIA precludes a district court from exercising jurisdiction when a plaintiff seeks to "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law" so long as an adequate state remedy exists. 28 U.S.C. § 1341. The United States Supreme Court has interpreted the phrase "enjoin, suspend, or restrain" expansively, concluding that the Act prohibits not only claims seeking injunctive relief, but also claims seeking a declaratory judgment. *California v. Grace Brethren Church,* 457 U.S. 393, 408 (1982).  But regardless of the remedy sought, "the dispositive question in determining whether the Act's jurisdictional bar applies is whether '[f]ederal-court relief . . . would have operated to reduce the flow of state tax revenue.'" *May Trucking Co.,* 388 F.3d at 1267 (quoting *Hibbs,* 542 U.S. at 105).  Under the TIA, a state tax "includes local taxation," such as the charges challenged by Plaintiffs here.  *Hibbs,* 542 U.S. at 100 n.1.

Plaintiffs expressly seek to enjoin Defendants from collecting BCDP fees, which they contend are

unlawful taxes.  Such relief will necessarily result in less money being paid to the Counties.  *See* Cal. Govt. Code §§ 26503, 26504; 96 Cal. Op. Atty. Gen. 24 (2013).  The same is true for Plaintiffs' damages claim. To receive damages, Plaintiffs must demonstrate that the way these charges are being collected somehow violates California law.

The TIA's prohibition against restraints on state tax administration "applies to declaratory as well as injunctive relief." *Franchise Tax Bd.*, 493 U.S. at 338.  Injunctive relief is inappropriate in state tax cases because "state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law." *Rosewell,* 450 U.S. at 527 (quotations omitted).  Similarly, the "declaratory judgment procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended." *Grace Brethren*, 457 U.S. at 408; *see also See Deja Vu Showgirls of Las Vegas, L.L.C. v. Nevada Dep't of Taxation*, 2006 WL 2161980 (D. Nev. July 28, 2006) (dismissing claims for equitable relief and damages under the TIA where plaintiffs challenged the validity of a Nevada entertainment tax).

Here, if either injunctive or declaratory relief is granted, the result would be an immediate decrease in tax revenues received. Plaintiffs are asking the Court to prevent Defendants from collecting allegedly illegal taxes in connection with the Counties' BCDPs.  Plaintiffs' request misapprehends the fees and the services provided, but Plaintiffs cannot dispute that granting injunctive or equitable relief would have the clear practical result of eliminating the monies remitted to the Counties.  *See Gwozdz v. HealthPort Techs.*, LLC, 846 F.3d 738, 743 (4th Cir. 2017) ("The TIA applies by its terms to suits to 'enjoin' or 'restrain' state tax collection efforts, thereby speaking directly to equitable remedies.").

Any decrease in state revenue strikes at the heart of the TIA. If granted, the requested equitable relief would force the Counties to modify their operating budgets and cut spending on important public services. Critically, these significant financial cutbacks would take place without a state administrative or judicial adjudication of whether Plaintiffs were charged unlawful taxes in violation of California law. This type of federal interference with county and state fiscal matters risks creating the precise administrative "disarray" that the TIA was enacted to prevent. *Rosewell*, 450 U.S. at 527.

## 2.  Plaintiffs' Requests for Monetary Damages Further Violate the TIA

The Ninth Circuit has held that "although the language of the Act does not specifically cover actions

for refunds or damages, federal court consideration of such cases must be barred lest the Tax Injunction Act be deprived of its full effect." *Marvin F. Poer & Co.*, 725 F.2d at 1236; *see also Jerron,* 129 F.3d at 1338 (explaining that "the Tax Injunction Act applies to actions for damages or refunds" because federal jurisdiction would "readily circumvent the Act.").

Granting Plaintiffs' request for damages would have the same practical effect as ordering Defendants to stop collecting the alleged unlawful taxes at issue. To award damages, the Court would first have to find that state law precludes the BCDP fees, and Defendants would of course cease administering any BCDPs in California to avoid future liability, which in turn would result in less monies paid to the Counties. The potential for a monetary judgment to affect the flow of revenue in a manner similar to equitable relief is the precise reason that the Ninth Circuit has placed claims for monetary damages within the jurisdictional bar of the TIA. *See Marvin F. Poer & Co.*, 725 F.2d at 1236; *Jerron*, 129 F.3d at 1338.

In addition to barring claims for damages, the TIA also prevents a plaintiff from seeking state tax refunds in federal district court. *See May Trucking*, 388 F.3d at 1274 (holding that a tax refund would "enjoin, suspend, or restrain state tax collection within the meaning of the Act"). Refund requests fall within the jurisdictional bar of the TIA because they reduce the amount of revenue available to the taxing authority and thereby frustrate the purpose of the TIA. *See Marvin F. Poer & Co.,* 725 F.2d at 1236; *Jerron*, 129 F.3d at 1338. As the Ninth Circuit has explained, allowing a federal plaintiff to pursue state tax refunds in district court "would interfere directly with [the state's] tax collection efforts[.]" *May Trucking*, 388 F.3d at 1274.

Here, while Plaintiffs' claims are stylized as actions for "actual damages" and "restitution," they seek only the return of monies collected in connection with the BCDPs, which they contend are illegal taxes, and are therefore indistinguishable from tax refund requests. Plaintiffs' mere characterization of their requests as actual damages and restitution does not exempt them from the TIA's jurisdictional bar. If this Court were to grant a request for monetary damages, it would allow Plaintiffs to interfere with state tax collection efforts and thereby circumvent the TIA's jurisdictional bar. *May Trucking*, 388 F.3d at 1274; *Marvin F. Poer & Co.,* 725 F.2d at 1236; *Jerron*, 129 F.3d at 1338.

### 3.   The TIA Applies Equally to Suits Involving Private Parties

The Ninth Circuit has long applied the TIA in suits between private parties. In *Blangeres v.*

*Burlington Northern, Inc.*, employees of a railroad sued to enjoin the employer from disclosing earning records and other tax information to Idaho and Montana taxing authorities. 872 F.2d 327 (9th Cir. 1989). In dismissing under the TIA, the court explained that, because the earning records were necessary for the assessment of state taxes, "[t]he fact that the injunction would restrain assessment indirectly rather than directly does not make the [TIA] inapplicable." *Id*. at 328.

More recently, in *Fredrickson v. Starbucks Corp.*, plaintiffs filed a class action suit against Starbucks challenging the legality of certain state and federal tax withholdings and seeking injunctive and declaratory relief, as well as statutory damages.  840 F.3d 1119. Despite the absence of any governmental entities, the *Fredrickson* court dismissed the plaintiffs' requests for declaratory and injunctive relief pursuant to the TIA, concluding that they "would 'enjoin, suspend or restrain' . . . the collection of state taxes within the meaning of the Act." *Id*. at 1122.

The Ninth Circuit's application of the TIA to suits between private parties is consistent with the remedial purposes of the statute and with case law in other jurisdictions. *See*, *e.g.*, *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722 (7th Cir. 2011) (en banc); *Gwozdz*, 846 F.3d 738; *Washer & Refrigeration Supply Co., Inc. v. PRA Government Services, LLC*, 2010 WL 3614172 (M.D. Ala. Sept. 8, 2010); *City of Maryland Heights v. Tracfone Wireles, Inc.*, 2013 WL 791866 (E.D. Mo. March 4, 2013). Indeed, if the TIA were inapplicable to private suits, a plaintiff alleging that a state tax violated a federal statute could sue every private retailer in the jurisdiction instead of the taxing authority.   Such an interpretation of the TIA would allow state taxpayers to directly challenge the collection of assessments in federal district court and would render the statute wholly ineffective.

### 4.   A "Plain, Speedy, And Efficient" State Law Remedy Is Available

The "plain, speedy, and efficient" clause of 28 U.S.C. § 1341 operates as a potential exception to the TIA's broad jurisdictional bar.   "However, in order to be "faithful to the congressional intent 'to limit drastically' federal-court interference with state tax systems," the Supreme Court has instructed district courts to narrowly construe the exception when applying the Act. *Grace Brethren*, 457 U.S. at 413. Moreover, the burden of establishing the exception's applicability rests squarely upon the party seeking to invoke federal jurisdiction. *See Chase Manhattan Bank, N.A. v. City & Cty. of San Francisco*, 121 F.3d 557 (9th Cir. 1997).   As discussed above, the analysis of whether an adequate state remedy exists mirror the

analysis under the comity doctrine. *See Fair Assessment,* 454 U.S. 100, 116 fn. 8.  For the same reasons, Plaintiffs have a plain, speedy, and efficient remedy available to them in the California state court system.

## III.   DISMISSAL IS WARRANTED BECAUSE THE COUNTIES ARE REQUIRED PARTIES UNDER RULE 19

### A.  Standard

Rule 12(h)(2) provides that the failure to join a required party may be raised "by a motion under Rule 12(c)" Rule 12(b)(7) authorizes challenges to a complaint based upon a plaintiff's failure to join a party under Rule 19.  The Ninth Circuit has stated that "there is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)" and that such a determination is heavily influenced by the facts and circumstances of each case. *Bakia v. Los Angeles County State of Cal.,* 687 F.2d 299, 301 (9th Cir.1982).  The framework of determining whether a party is required[6] is provided by Federal Rule of Civil Procedure 19.  *American Greyhound Racing, Inc. v. Hull,* 305 F.3d 1015, 1022 (9th Cir. 2002). The proper approach is first to decide whether the Counties are "required" parties who should normally be joined under the standard of Rule 19(a).  Specifically, Rule 19 requires the joinder of any party that "claims an interest relating to the subject of the action," if disposing of the action in that party's absence would "as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B).  If the Counties are required parties but cannot be feasibly joined, the district court must then determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Rule 19(b).

Determining whether the Counties are required parties does not require the Court to assess the merits of Plaintiffs' claims.  Instead, "the finding that a party is necessary to the action is predicated only on that party having a claim to an interest." *Shermoen v. United States,* 982 F.2d 1312, 1317 (9th Cir. 1992).

### B.  The Counties are Required Parties Under Rule 19(a)

### 1.  The Remaining Claims Require the Joinder of the Counties

Plaintiffs' remaining claims turn solely on the application of California law regarding whether the

---

[6] "Following stylistic amendments enacted in 2007, Federal Rule of Civil Procedure 19 no longer refers to 'indispensable' parties, but instead uses the term 'required party.'" *Alto v. Black*, 738 F.3d 1111, 1118 (9th Cir. 2013).

**DEFENDANTS' OMNIBUS MOTION**

BCDP fees are unlawful taxes under the California Constitution. As this Court has stated, the remaining claims consist of "an attack on the county's decision to collect fees." Dkt. No. 286 at 21:14-22. Given this, the Court noted that there was an issue in "that the counties are not named as defendants." *Id.* In such circumstances, federal courts look to state law to determine whether an absent party is required to be joined. *See Carver v. Sheriff of LaSalle Cty., Illinois*, 324 F.3d 947, 948 (7th Cir. 2003) (county was required party based on Illinois law).

Plaintiffs argue that the BCDP fees violate Article XIIIC of the California Constitution, popularly known as Proposition 26. The California Constitution places the burden on local governments, not private entities, to justify the imposition of any fee, tax, or levy. Specifically, the California Constitution mandates as follows:

> The ***local government*** bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.

Cal. Const., art. XIII C, § 1, subd. (e) (emphasis added); *see also City of San Buenaventura v. United Water Conservation Dist.,* 3 Cal.5th 1191, 1210 (2017) (local government bears the burden to prove a fee is not a tax).

California courts have made clear that the local government is a required party to any suit challenging a fee as an unconstitutional tax. In *Templo v. State*, the California Court of Appeal noted that "Proposition 26 shifted to the state or local government the burden of demonstrating that any charge, levy, or assessment is not a tax." 24 Cal.App.5th 730, 738 (2018). In *Templo,* the plaintiffs challenged a $150 jury fee as an illegal tax in violation of Proposition 26, naming the State of California as the defendant. *Id.* The Court of Appeal held that the proper defendant in such a case was the government entity with the "direct institutional interest" in defending the constitutionality of the fee. *Id.* at 736. In that instance, the government entity with the direct institutional interest was the California Judicial Council, not the State of California, as the plaintiffs had named. *Id.* This was because the Judicial Council was responsible for managing the funds at issue. *Id.* at 737.

The *Templo* court noted that the California Constitution "does not designate ***which public entity*** is

the proper defendant for meeting that burden [of defending a challenged levy or charge], nor is it reasonable to require the State to defend all Proposition 26 cases." *Id.* at 738 (emphasis added).  As the plaintiffs had failed to join the proper defendant (the California Judicial Council), the Court of Appeal affirmed the trial court's grant of the State of California's motion for judgment on the pleadings.  *Id.* at 733.

The *Templo* court's decision was consistent with all California cases in which a plaintiff challenged a fee or other charge as an unconstitutional tax.  In each case, the proper defendant tasked with the burden of defending the charge was the local government entity with the direct institutional interest in defending the specific charges.  *See, e.g., Cty. Inmate Tel. Serv. Cases*, 48 Cal.App.5th 354 (2020) (eight California counties sued in class action over allegedly unconstitutional telephone charges to jail inmates under contracts with private companies); *Zolly v. City of Oakland*, 47 Cal.App.5th 73, 78 (2020) (City of Oakland sued over allegedly unconstitutional franchise fee under contracts with private waste management companies); *Citizens for Fair REU Rates v. City of Redding*, 6 Cal.5th 1, 4 (2018) (City of Redding sued over allegedly unconstitutional electric power rates); *California Pub. Records Research, Inc. v. Cty. of Yolo*, 4 Cal.App.5th 150, 156 (2016) (Yolo County sued over allegedly unconstitutional copying fees); *Schmeer v. Cty. of Los Angeles*, 213 Cal.App.4th 1310, 1313 (2013) (Los Angeles County sued over allegedly unconstitutional fee on paper grocery bags).

In this case, the California Constitution explicitly requires that the "local government" bear the burden of defending any charge that is alleged to be an unconstitutional tax in violation of Proposition 26. Cal. Const., art. XIII C, § 1, subd. (e).  Plaintiffs cannot claim that the BCDP fees violate Proposition 26, and then demand that Defendants bear the burden of defending these fees when Proposition 26 itself places that burden on the local government.  The Counties are the government entities with the "direct institutional interest" in defending the BCDP fees, as they enacted and control the fees, which are collected in their names, and are responsible for the expenditure of any fees turned over the County's treasurer.  *See* Cal. Govt. Code §§ 26503, 26504; 96 Cal. Op. Atty. Gen. 24 (2013).  Defendants are not public entities of any sort, let alone a "local government," and cannot be required or permitted under California law to solely bear the burden of defending the Counties' fees.

Beyond this express requirement under the California Constitution, the fact that both the Counties and the existing parties would be prejudiced by the Counties' absence makes each County a "required party"

16

**DEFENDANTS' OMNIBUS MOTION**

to this action. *See* Rule 19(a); *see also William Lyon Homes, Inc. v. Cnty. of Nye*, 2011 WL 5373670, at *1 (D. Nev. Nov. 4, 2011) (school district was a required party because it controlled collected tax proceeds and because the district's participation was necessary to protect its interest in the tax funds). However, as discussed above, joinder of the Counties in this case is not feasible because any claims for equitable or monetary relief asserted against the Counties would interfere with the administration of the BCDP charges and would clearly be subject to dismissal under the comity doctrine and the TIA. *See Rosewell*, 450 U.S. at 527; *Grace Brethren*, 457 U.S. at 408; *May Trucking*, 388 F.3d at 1274. Further, the prejudice to both the Counties and existing parties caused by the Counties' absence is so great that principles of "equity and good conscience" would mandate dismissal of the case in the County's absence. *See* Rule 19(b); *see also William Lyon*, 011 WL 5373670, at *1

Although Plaintiffs' remaining claims should not proceed in federal court, for the reasons outlined above, if the Court is to tackle Plaintiffs' claim that the BCDP fees violate the California Constitution, the Court should apply the standards mandated by the California Constitution. The Counties are required parties.

## 2.   <u>The Counties are Required Parties to Plaintiffs' Declaratory Judgment</u>

Independently, the Counties are required parties due to Plaintiffs' prayer for a declaratory judgment that the BCDP fees are illegal taxes. It has long been the rule that "all persons who have an interest in determination of the questions raised in the declaratory judgment suit should be before the court." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1317 fn. 6 (9th Cir. 1986); *accord Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.*, 416 F.2d 707, 710 (7th Cir. 1969). It is an understatement to note that the Counties, the government entities which enacted all BCDP fees and which receive fees via their county treasurers, have an interest in the determination of the question of whether these some of these fees are unlawful taxes. However, a declaratory judgment is binding "only on those parties actually before the court." *Miller v. Jennings,* 243 F.2d 157, 160 (5th Cir. 1957) *see also Int'l Soc. for Krishna Consciousness of California, Inc. v. City of Los Angeles*, 611 F.Supp. 315, 318 fn. 3 (C.D. Cal. 1984) (noting that declaratory judgment on constitutionality of municipal airport resolution would not bind parties not before the court).

If all parties with an interest in the subject matter of the declaration are not before the court, the

uncertainty giving rise to the case will not be terminated. *Delno* v. *Market St. Ry. Co.,* 124 F.2d 965, 968 (9th Cir. 1942) (declaratory judgment could not be issued in absence of affected bondholders). Accordingly, "to avoid partial disposition of a controversy," all interested persons should be joined as parties. *Diamond Shamrock Corp.*, 416 F.2d at 710; *Levin Metals Corp.*, 799 F.2d at 1317 fn. 6.

Absent joinder of the Counties, they could simply contract with a new entity or else continue to charge the same BCDP fees through a government-run program. This concern was addressed by the court in *Downing v. Globe Direct LLC*, 806 F.Supp.2d 461, 464-65 (D.Mass. 2011). In *Downing,* the plaintiff brought a putative class action against a direct mailing company, alleging violations of the Drivers Privacy Protection Act ("DPPA"). The direct mailing company entered into a contract with the Massachusetts Registry of Motor Vehicles, in which the company was provided with the names and addresses of drivers to whom Massachusetts wished to mail vehicle registration renewal notices. *Id.* The court found Massachusetts was a necessary and indispensable party to the action under Rule 19, dismissing the case. *Id.* at 468-70. In finding the State a necessary party, the court noted that any decision it made would "effectively invalidate Massachusetts's contract." *Id.* at 467

All 19(b) factors revealed Massachusetts was an indispensable party, and its Eleventh Amendment immunity prevented joinder and mandated dismissal. The court also noted that, "as Massachusetts is not a party to this case and judgment against a named defendant can never bind a non-party, ***then Massachusetts could enter into another contract with a different company***." *Id.* at 468-69 (emphasis added). Indeed, a judgment rendered in the state's absence would be inadequate as nothing prevented it "from engaging in extremely similar conduct with a different company[.]" *Id.* at 469. The court also found that a declaration that the defendant violated the DPPA would be the same as finding Massachusetts violated the law, prejudicing the absent party. *Id.* This factual scenario is exceedingly similar to the instant case, and the *Downing* court's analysis is therefore highly persuasive. Here, because the requested declaratory judgment and injunction ***could not*** require the Counties to correct the violations alleged by Plaintiffs or change the overall operations of these programs, the relief sought by Plaintiffs would be plainly hollow. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002).

As set forth above, the Counties have a direct interest in defending their interpretation and

application of the BCDP fees in an appropriate forum. The Counties' interest is unsurprising, given that a judgment adverse to Defendants would decrease the Counties' revenues and, consequently, the funding available for a wide variety of the Counties' social programs. The Counties' absence would also place the existing parties at risk of incurring multiple, inconsistent obligations. For example, if Plaintiffs were to successfully enjoin Defendants from charging BCDP fees, Defendants might find themselves in the untenable position of being instructed by the Counties to continue complying with their obligations to the Counties and being ordered by a federal court to cease such action. Defendants would be subject to conflicting legal obligations, leaving them "between the proverbial rock and a hard place." *Dawavendewa*, 276 F.3d at 1155-1156 (9th Cir. 2002).

### 3. <u>The Counties Ability To Protect Their Interests Would be Impaired</u>

This case presents a paradigmatic example of how the interests of an absent party would be impaired. Here, the Court is being asked to rule on the legality of the fees that are being charged to participants in the Counties' BCDPs. But those Counties are not here to present their views on the subject, and thus cannot respond to Plaintiffs' claims here. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010) (finding joinder necessary where, absent joinder, the unjoined party "will be unable to defend his interest in the legality of the lease provisions").

Moreover, the relief sought by Plaintiffs would have the practical effect of setting aside or invalidating the contracts (or portions of the contracts) held by VSI and the Counties. In such circumstances, all parties to the contracts must be before the Court. *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *Dawavendewa*, 276 F.3d at 1157 ("a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract").

### 4. <u>Joinder of the Counties is Not Feasible</u>

"If an absentee is a [required] party under Rule 19(a), the second stage [of the Rule 19 analysis] is for the court to determine whether it is feasible to order that the absentee be joined." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). It is not feasible to join the Counties to the case at bar. As discussed above, Plaintiffs' remaining claims are barred by the comity doctrine and the TIA. Further, the

**DEFENDANTS' OMNIBUS MOTION**

Counties are immune from suit under the UCL, as California courts have uniformly held that government entities are not "persons" subject to the UCL's reach. *Wells v. One2One Learning Found.*, 39 Cal.4th 1164, 1203 (2006); *Cmty. Mem'l Hosp. v. Cty. of Ventura*, 50 Cal.App.4th 199, 209-11 (1996) (county was not a "person" for purposes of UCL). The Counties are equally not subject to suit under the FDCPA. The FDCPA prohibits "debt collectors" from engaging in in abusive or unfair practices. *Heintz v. Jenkins* (1995) 514 U.S. 291, 292 (1995). The definition of a "debt collector" under the FDCPA specifically excludes "any officer or employee of the United States or any State" if the collection or attempted collection of any debt is in the performance of his official duties. 15 U.S.C. § 1692a (6)(C).)  In the context of the FDCPA, a "State" includes any "political subdivision" of a State, such as each of the Counties. 15 U.S.C. § 1692a (8). Under the California Constitution, a "county is a political subdivision of the state and its charter is a state law." *Olson v. Hickman*, 25 Cal. App. 3d 920, 923 (1972); Cal. Const. art. XI, § 1("The State is divided into counties which are legal subdivisions of the State."); *see also Neujahr v. Steinke,* 2009 WL 2003293, at *2–3 (D. Neb. July 6, 2009) (FDCPA against county official precluded as county is political subdivision of State); *Georgeadis v. Cty. of Fairfield*, 2000 WL 1459418, at *2 (S.D. Ohio Sept. 25, 2000) (same). As joinder of the Counties is not feasible, this Court should proceed to Rule 19's third stage analysis. *See* Rule 19(b).

## 5.   This Case Cannot Proceed Absent Joinder of the Counties

Because the Counties are required parties whose joinder is not feasible, "equity and good conscience" call for dismissal. *See* Rule 19(b).  In the usual case, the four factors that a court is to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed.  Rule 19(b).

Both the Defendants and the Counties will face unfair prejudice if this case moves forward.  First, Defendants will be forced to defend the Counties' interests in the bad check diversion programs, as well as the Counties' actions in enacting the BCDP fees, in order to defend their own conduct. But Defendants are prejudiced whenever they must invoke the Counties' interests because they are ***not*** the government. *Del Campo v. Kennedy*, 517 F.3d 1070, 1077 (9th Cir. 2008).   Furthermore, the Counties have "a broad

obligation to serve the interests of the people of California, rather than any particular subset," and therefore "the different motivations" of the Counties and the Defendants likely will lead "to a later divergence of interests." *White v. Univ. of California*, 765 F.3d 1010, 1027 (9th Cir. 2014).  Accordingly, the courts have already recognized this need to have ***both*** private and public parties to a contract as parties to the litigation. *See Natural Resources Defense Council v. Kempthorne*, 539 F.Supp.2d 1155, 1187-88 (E.D. Cal. 2008).

The third Rule 19(b) factor also favors dismissal. In the context of Rule 19(b), "adequacy" refers not to the "satisfaction" of Plaintiffs' claims but rather the "public stake in settling disputes by wholes, whenever possible." *Pimentel*, 553 U.S. at 870. Here, no "adequate" remedy exists and certainly no "settling disputes by wholes" without the Counties. *See Downing,* 806 F.Supp.2d at 468-69.

Finally, the fourth Rule 19(b) factor does not require allowing this case to go forward. Given states' concurrent jurisdiction over FDCPA claims, Plaintiffs are hard-pressed to establish that federal court (as opposed to state court) is the proper forum to resolve the state claims underlying their federal allegations. This Court has already held that the California Legislature intended disputes over BCDPs to be governed by state law.  *Breazeale v. Victim Servs., Inc.*, 198 F.Supp.3d 1070, 1078 (N.D. Cal. 2016).  If it is to be decided anywhere, this case belongs in California Superior Court.

But even if Plaintiffs have no alternative forum, "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for the definitive resolution of their claims." *Pimentel*, 553 U.S. at 870. In such circumstances, any prejudice to an existing party is "outweighed by prejudice to the absent entities invoking sovereign immunity." *Id*. Under Rule 19(b), dismissal of this case is needed. Rule 19 forbids the pursuit of claims without the involvement of the parties whose interests and conduct are at stake. Given Plaintiffs' omission of the Counties as defendants, there can be no basis for the Court to conclude that, in equity and good conscience, the action should proceed among the existing parties. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 435 (4th Cir. 2014) (considering indispensability in light of reasons required parties cannot be joined); *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 633 (5th Cir. 2009) (requiring Courts applying Rule 19(b) to "tak[e] full cognizance of the practicalities involved"). The remaining claims should therefore be dismissed.

**6.  <u>Alternatively, the Counties Should be Joined as Defendants</u>**

If this Court should determine that joinder of the Counties is feasible, this case should be dismissed

with leave to amend so that Plaintiffs may join the Counties. *See William Lyon Homes*, 2011 WL 5373670, at *2. Even if Plaintiffs are unlikely to state a viable claim against the Counties, a "plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19." *Peabody I*, 400 F.3d at 781. In the alternative, such joinder should be ordered.

## IV.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A.  The Counties Bear the Burden of Defending the Challenged BCDP Fees

Plaintiffs contend that the fees BCDP participants paid to NCG and VSI are taxes under Articles XIII C and XIII D of the California Constitution. Adopted in November 1996, Proposition 218 (Articles XIII C and XIII D) requires voter approval before a local government imposes taxes, assessments and a class of so-called property rated fees. Proposition 26, adopted in November 2010, newly defined the taxes which require voter approval under Article XIII A, § 4 and Article XIII C, § 2, displacing earlier, common law definitions of the term.

As discussed above, the present posture of this action simply does not permit this Court to decide the issue of whether the BCDP fees are an illegal tax in violation of the California Constitution. The California Constitution itself demands that the "local government" bears the burden of proving that a "levy, charge or other exaction is not a tax[.]" Cal. Const., art. XIII C, § 1, subd. (e). The California Supreme Court has further held that this is the case. *City of San Buenaventura,* 3 Cal.5th at 1210. The law is well settled that in the absence of an agreement, "whether charges are permissible or not within the meaning of the FDCPA turns on state law." *Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1367 (E.D. Cal. 1995), *superseded on other grounds by statute as noted in Hunt v. Check Recovery Sys., Inc.*, 478 F.Supp.2d 1157, 1168 (N.D. Cal. 2007). When reviewing issues of state law, a federal court is "bound to follow the decisions of a state's highest court in interpreting that state's law." *Olympic Sports Prod. v. Universal Athletic Sales Co.,* 760 F.2d 910, 912–13 (9th Cir.1986). Given that the Counties are not parties to this action, California law requires that the Court decline to address this issue unless and until the Counties have been joined as defendants.

### B.  BCDP Fees Retained by Defendants are Not Taxes as a Matter of Law

As stated, the Court should not (and under California law, cannot) address whether the fees are actually unlawful taxes. However, in the event the Court elects to decide the constitutionality of the BCDP

charges, California law is clear, on a fundamental level, that these charges are not unlawful taxes. The decision in *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013) is determinative. There, the California Court of Appeal considered a challenge to a Los Angeles County ordinance that prohibited retail stores from providing plastic bags and required them to charge customers 10 cents for a paper bag to avoid substituting one environmentally burdensome product for another. *Id*. at 1313-16. The court agreed with Los Angeles County that the mandatory 10-cent charge for paper bags is not a tax because it is retained by the retail store and is not remitted to the county. *Id*. at 1326. Again, the court noted that Los Angeles County bore the burden to establish this conclusion. *Id.* at 1322.

The court first noted that "[t]he term tax in ordinary usage refers to a compulsory payment made to the government or remitted to the government. Taxes are ordinarily imposed to raise revenue for the government." *Id.* at 1326. The *Schmeer* court also considered the exceptions to Article XIII C's definition of the taxes requiring voter approval as well as the ballot materials which constitute the legislative history of Proposition 26, noting that the first three exceptions in Article XIII C, section 1, subdivision (e) apply to the reasonable costs a local government incurs to provide a benefit, service or regulation, but the exceptions did not address charges paid other than to the government or where a private payee incurs reasonable costs in addition to those the government incurs. *Id.* at 1327. The court found no reason to conclude that the voters approving the initiative intended the definition of a tax to include both charges payable to a local government ***and*** charges payable to a nongovernmental entity or person, while limiting the reasonable costs exceptions to charges payable to a local government. *Id.* at 1328. Because this 10-cent charge from a private company was not a tax at all, the court did not need to decide whether any exceptions to Proposition 26's definition of tax applied. *Id.* at 1330. In essence, the court found implicit in Proposition 26 an exemption in addition to those it expresses: a revenue measure is not a tax if it is not paid to government. *Id.* at 1329. Otherwise, every government regulation of private economic activity, like minimum wage laws and minimum pricing requirements, would require voter approval as a tax, which does not reflect the obvious intent of the voters who approved Proposition 26 in 2010.

As this Court found in its Ruling, "[t]he plaintiffs contend that Victim Services collected fees not permitted by California law—namely, up to $185 for the financial responsibility class, a $10 credit/debit card fee, a $25 class rescheduling fee, and a $10 late fee." Dkt. No. 348 at 22. ***None*** of these BCDP fees

**DEFENDANTS' OMNIBUS MOTION**

are remitted to the Counties.  Like the paper bag charges in *Schmeer,* all of these fees are retained by VSI. In its Ruling, the Court further noted the Plaintiffs do ***not*** contest the legality of the $50 processing fee and $15 bank charge outlined in California Penal Code section 1001.65.  Dkt. No. 348 at 22.  However, those are the only fees which are actually remitted to the Counties. As the BCDP fees challenged by Plaintiffs were retained by either NCG or VSI and not remitted to the Counties, they do not constitute "taxes" as a matter of California law and no further inquiry is necessary. *Schmeer*, 213 Cal.App.4th at 1329.

## C.  BCDP Fees are Not an Unconstitutional Tax Because they are Voluntary

The BCDP fees are not a tax for the additional reason that they are voluntary and provide the BCDP participant with a specific thing of value: a non-prosecution agreement.  In *California Chamber of Commerce v. State Air Res. Bd.*, 10 Cal.App.5th 604 (2017), the plaintiffs challenged the charges needed to participate in California's cap-and-trade auction program as an unconstitutional tax.  *Id.* at 613.  The cap-and-trade program was designed to curb the effects of climate change, in part, by auctioning off "greenhouse gas credits" to willing participants who wished to emit such pollutants in excess of the maximum amounts established by the State.  *Id.* The California Court of Appeal held that the program's auction charges were not an unconstitutional tax.  This was because "the hallmarks of a tax are: 1) that it is compulsory; and 2) that the payor receives nothing of particular value for payment of the tax, that is, the payor receives nothing of specific value for the tax *itself*."  *Id.* at 614.  Indeed, the court astutely noted that "taxes do not attract volunteers." *Id.* at 614. Thus, the "twin aspects of the auction system, voluntary participation and purchase of a specific thing of value," precluded a finding that the auction system was a "tax."  *Id. See also California Bldg. Indus. Assn. v. Governing Bd.,* 206 Cal.App.3d 212, 236 (1988) ("Whereas taxes are compulsory in nature, development fees are imposed only if a developer elects to develop.").

In its Ruling, this Court expressly found that the "diversion program is voluntary, and suspects are always free to play the odds.  Two of the plaintiffs in this case – Solberg and Morin – took that route.  But even if prosecutions are rare, some suspects will rationally prefer the certainty of a non-prosecution agreement to the possibility (however remote) of entanglement with the criminal justice system."  Dkt. No. 348 at 22.  The Court further found that "Bonakdar was the only plaintiff to enter into a non-prosecution agreement with the district attorney."  Dkt. No. 348 at 3.  Thus, the BCDP fees do not meet either of the hallmarks of a tax. *Chamber of Commerce*, 10 Cal.App.5th at 614.  As this Court has found, the BCDP fees

are voluntary, and the payor receives something of specific value in exchange for the fees: a non-prosecution agreement.  *See also California Bldg. Indus. Assn. v. San Joaquin Valley Air Pollution Control Dist.*, 178 Cal.App.4th 120, 132 (2009) ("Regulatory fees are not compulsory. Rather, fee payers have some control both over when, and if, they pay any fee, i.e., when or if they elect to engage in a regulated activity, and/or the amount of the fee they are compelled to pay.").  Indeed, the receipt of a non-prosecution agreement in exchange for electing to complete a BCDP is similar to the election of a carbon emitting business to participate in a cap-and-trade auction.  The *Chamber of Commerce* court noted that many participants elected to purchase such carbon credits in order to "speculate" that they may eventually increase in value. *Chamber of Commerce*, 10 Cal.App.5th at 642.  In contrast, the "certainty" of a non-prosecution agreement is of even more tangible value than a speculative investment in a carbon credit that may or may not appreciate in value.

"The twin hallmarks of a tax are that it is compulsory, and that it conveys nothing of particular value to the payor."  *Chamber of Commerce*, 10 Cal.App.5th at 649.  As the BCDP fees meet neither of these conditions, they are therefore not a tax as a matter of law.

### D.  Plaintiffs Lack Standing to Challenge the BCDP Fees as Unlawful Taxes

Although the challenged BCDP fees are not a tax, under California law Plaintiffs would lack standing to seek a return of any allegedly illegal taxes.  Here, the allegedly unlawful taxes were paid to either NCG or VSI, rather than directly to the Counties.  California courts have repeatedly held that such indirect challenges to taxes are impermissible.  A person who has not paid a tax directly to the government has no standing to sue for a refund.  *TracFone Wireless, Inc. v. County of Los Angeles*, 163 Cal.App.4th 1359, 1364 (2008) ( the person is barred from seeking a refund of a tax he or she has not paid to the government); *Scol Corp. v. City of Los Angeles*, 12 Cal.App.3d 805 (1970); *Grotenhuis v. County of Santa Barbara*, 182 Cal.App.4th 1158, 1164 (2010) (plaintiff may not sue to recover excess property taxes paid by someone else, such as his landlord, who pays the tax by design or mistake).

This rule was recently affirmed in *Cty. Inmate Tel. Serv. Cases*, 48 Cal.App.5th 354 (2020), where jail inmates sued nine California counties over the high telephone charges they paid to government contractors, alleging these charges were unlawful taxes in violation of Proposition 26 and violated other statutes.  The California Court of Appeal affirmed the trial court's dismissal of the action, holding that the

inmates lacked standing to sue for a refund of monies paid because they had not actually paid the challenged tax to the counties, and "had no legal responsibility to pay anything to the counties." *Id.* "Simply asserting that they effectively or indirectly 'paid the illegal tax' does not make it true." *Id.* So too here. Plaintiffs paid the challenged "taxes" to NCG or VSI, not the Counties. Likewise, Plaintiffs had no legal obligation to pay these "taxes" – they were entirely voluntary. They lack standing to seek a refund of these monies, whether characterized as restitution or actual damages. *See also Loeffler v. Target Corp.*, 58 Cal.4th 1081, 1092 (2014) (plaintiffs may not seek to recover taxes as "restitution" under the UCL or CLRA and must instead pursue a refund action).

### E.  BCDP Fees are Lawful Regulatory Fees

California law is clear that if a fee is not a tax, the inquiry ends. Nevertheless, the BCDP fees are lawful under California's well-established body of law concerning regulatory fees. As this Court has ruled, the BCDPs were established pursuant to the government's police power. Consequently, the BCDP fees were enacted for a regulatory purpose pursuant to the local police power. Article XIII A, Section 3(a) of the California Constitution mandates that any statute that "results in a taxpayer paying a higher tax" must be passed by a two-thirds vote of the Legislature. Section 3(b) defines a "tax" is "any levy, charge, or exaction of any kind imposed by the State, except … [a] charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the State of conferring the benefit or granting the privilege to the payor." Cal. Const., Art. XIII A, § 3(b). Again, the ***government*** bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the burdens on, or benefits received from, the governmental entity. *Id.*, § 3(d).

While a tax is subject to a two-thirds vote of the Legislature, a regulatory fee may be imposed under the police power when the fee constitutes an amount necessary to carry out the purposes and provisions of the regulation. *San Diego Gas & Elec. Co. v. San Diego County Air Pollution Control Dist.*, 203 Cal.App.3d 1132, 1146, n. 4 (1988). "Regulatory fees, enacted under the police power, are an entirely different animal" from taxes. *California Assn. of Prof. Scientists v. Dept. of Fish & Game*, 79 Cal.App.4th 935, 944 (2000).

**DEFENDANTS' OMNIBUS MOTION**

The government's police power is extensive and "in its exercise a very wide discretion as to what is needful or proper for the purpose is necessarily committed to the legislative body in which the power to make such laws is vested." *Plumas Cty. v. Wheeler*, 149 Cal. 758, 762 (1906). Moreover, as held by the California Supreme Court in *Sinclair Paint Co. v. State Board of Equalization*, 15 Cal.4th 866, 877-78 (1997), the law is well settled that the police power is "broad enough to include remedial measures to mitigate the *past, present, or future* adverse impact of the fee payor's" conduct.

The California Constitution requires that the government prove by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, making the Counties required parties to this action. To make that showing, the government must prove both that (1) the amount is no more than necessary to cover the reasonable costs of the governmental activity, and (2) the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the burdens on, or benefits received from, the governmental entity. *City of San Buenaventura v. United Water Conservation Dist.*, 3 Cal.5th 1191, 1214 (2017) (holding there are two separate requirements for showing a fee is not a tax).

A starting point for the inquiry is the well settled presumption in favor of the reasonableness of the fee. *Watson v. Merced County*, 274 Cal.App.2d 263, 268 (1969) *citing Plumas County v. Wheeler*, 149 Cal. 758, 765 (1906). Additionally, the relevant inquiry "is not whether the fee is fair but whether the fee is, in effect, a tax." *California Assn. of Prof. Scientists,* 79 Cal.App.4th at 956.

To determine the tax or fee issue, courts must examine the costs of the regulatory activity to determine if there was a reasonable relationship between the fees assessed and the costs of the regulatory activity. *N. California Water Assn. v. State Water Resources Control Bd.*, 20 Cal.App.5th 1204, 1218 (2018). "***A regulatory fee does not become a tax simply because the fee may be disproportionate to the service rendered to individual payors.***" *California Farm Bureau Fed'n v. State Water Resources Control Bd.*, 51 Cal.4th 421, 438 (2011) (emphasis added; citations omitted). The inquiry looks at whether the fee "is *so great* that the court can plainly see that the purpose of its imposition was to realize a revenue under the guise of regulating a business, the provision cannot stand as an exercise of police power." *Plumas County*, 149 Cal. at 911 (emphasis added). Put another way, "[a]ll regulatory fees are necessarily aimed at raising 'revenue' to defray the cost of the regulatory program but that does not automatically render those fees 'taxes' … if regulation is the primary purpose of the fee measure, the mere fact that the measure also

**DEFENDANTS' OMNIBUS MOTION**

generates revenue does not make the imposition a tax." *Sinclair Paint Co.*, 15 Cal.4th at 880 (emphasis original).

A regulatory fee does not require a precise cost-fee ratio. Rather, "as long as the estimate of costs is a reasonable one, [the fee] will be upheld. *California Assn. of Prof. Scientists,* 79 Cal.App.4th at 954. Moreover, "[t]he legislative body charged with enacting laws pursuant to the police power retains the discretion to apportion the costs of regulatory programs in a variety of reasonable financing schemes. ***An inherent component of reasonableness in this context is flexibility."*** *N. California Water Assn.*, 20 Cal.App.5th at 1218-1219 (emphasis added).

When examining the reasonableness of the fee, all costs incident to the regulatory purpose must be considered such as all required costs of the service or benefit, operation, investigation, inspection, administration, maintenance of a system of supervision and enforcement. *United Bus. Com. v. City of San Diego*, 91 Cal.App.3d 156, 165-66 (1979) *relying on Plumas County, supra*, 149 Cal. at 764); *Moore,* 237 Cal.App.4th at 369.[7]

Additionally, the flexibility given a governmental body includes the ability to charge a flat fee. Although a flat fee will seldom represent the exact cost of providing a service, a flat fee is a permissible regulatory fee. *California Assn. of Prof. Scientists*, 79 Cal.App.4th at 951.[8]

Moreover, to show a regulatory fee is not a tax, "it is not necessary for the payee to perceive the regulation as a 'benefit.' A regulatory fee may be imposed under the police power when the fee constitutes an amount necessary to carry out the purposes and provisions of the regulation." *San Diego Gas & Elec. Co.,* 203 Cal.App.3d at 1146.

For example, in *California Tow Truck Ass'n v. City & Cty. of San Francisco*, 225 Cal.App. 4th 846, 859 (2014), the plaintiff tow-truck association challenged various fees charged by San Francisco that were

---

[7] To establish a regulatory fee, the governmental entity ***does not*** need to make the showing necessary to establish a user fee such as exhaustive studies, unassailable time keeping and a precise cost-fee analysis. *California Assn. of Prof Scientists*, 79 Cal.App.4th at 951-952.

[8] The facts of *California Assn. of Prof. Scientists* involved the fees imposed by the Department of Fish and Game to submit proposals to the department for review. The department $850 filing fee for proposals that had an environmental impact report, $1,250 for proposals that did not, and additional $25 documentary handling fee. The filing fees and the documentary handling fees were found to be lawful regulatory fees. *California Assn. of Prof. Scientists*, 79 Cal.App.4th at 956.

**DEFENDANTS' OMNIBUS MOTION**

required to obtain a permit to conduct a tow-truck business.  The plaintiff argued that a specific state statute prohibited counties and localities from charging any fines, penalties, assessments, or fees related to the California Vehicle Code, unless expressly authorized.  *Id.* at 852.  However, a separate statute permitted local authorities to license and regulate local tow-truck services, but was silent on the issue of fees.  *Id.* at 853.  The Court of Appeal disagreed, after reviewing the statute's legislative history, which indicated that the Legislature intended the local tow-truck regulation to be funded by local fees – although such intent was not expressed in the statute.  *Id.* at 859.  Plainly speaking, the Court of Appeal found "it difficult to believe the Legislature, on the one hand, granted local authorities special permission to license and regulate towing businesses, while on the other hand it forbade the collection of fees to fund that regulation."  *Id.* at 860.  Applying common sense, "given the Legislature's strategy for concurrent state and local regulation of tow service, it follows logically that the Legislature would allow local authorities to fund their regulatory activities with fees."  *Id.*

The court's sound reasoning in *California Tow Truck* applies with equal force here.  This Court has held that the BCDPs were established pursuant to the Counties' police power, and that VSI acts "as an agent of the government, assisting the government in the exercise of its police power."  *Breazeale v. Victim Services, Inc.*, 198 F.Supp.3d 1070, 1077 fn. 2 (N.D. Cal. 2016).  The Counties enacted the BCDP fees in furtherance of their general police power, to fund the cost of operating their BCDPs, in order to effectuate the purpose of the Bad Check Diversion Act in regulating bad check crimes.  Just as in *California Tow Truck,* it is difficult to believe that the Legislature would grant the Counties permission to establish BCDPs and have them administered by private companies, on the one hand, while on the other hand deprive them of the ability to fund those regulatory activities through local fees.  225 Cal.App. 4th at 860.

There is no strict procedure governing how a regulatory fee may be enacted, although certain statutes provide that they may be adopted by a resolution by a county board of supervisors.  *See* Cal. Govt. Code § 66016(b) ("Any action by a local agency to levy a new fee or service charge or to approve an increase in an existing fee or service charge shall be taken only by ordinance or resolution."); Cal. Pub. Res. Code § 40059(a)(2).

Clearly, a County Board of Supervisors resolution authorizing the bad check diversion program is valid.  Penal Code section 1001.60 provides "[u]pon the adoption of a resolution by the board of supervisors

declaring there are sufficient funds available to fund the program, the district attorney may create within his or her office a diversion program" for bad check writers.  Therefore, a County resolution authorizing the creation of the BCDP and the BCDP fees complies with California law regarding the enactment of regulatory fees.  *See, e.g., Cotta v. City & Cty. of San Francisco*, 157 Cal.App.4th 1550, 1556 (2007) (county resolution subsidizing clean-air taxicabs was valid exercise of police power); *City of Oakland v. Superior Court*, 45 Cal.App. 4th 740, 755 (1996) (local fee on liquor licenses was valid regulatory fee stemming from local police power); *Evans v. City of San Jose*, 3 Cal.App.4th 728, 739 (1992) (upholding fee that was "neither a true regulatory fee nor a true special assessment.").

### F.  BCDP Fees are Lawful User Fees

For the reasons previously stated in Defendants' initial motion for summary judgment, the BCDP fees also constitute permissible user fees under California law.  *See* Dkt. No. 320 at 9-15. Defendants incorporate such argument by reference and restate it for purposes of this motion.

## V.  THE CLASS SHOULD BE DECERTIFIED AS TO THE REMAINING CLAIMS

### A.  The Court May Decertify a Class at Any Time

This Court has broad discretion to decertify an existing class. See *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co*., 593 F.3d 802, 809 (9th Cir. 2010) ("a district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify"); see also Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Indeed, "the district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 966 (9th Cir. 2009).

### B.  Plaintiffs' Remaining Claims Lack Commonality and Typicality

The present posture of the case is very different from when Plaintiffs sought class certification.  Their primary argument for certification, that the class received the same misleading form letter, has been resolved against them on summary judgment.  Their remaining claims concern highly individualized questions pertaining to each County's BCDP. A question can satisfy Rule 23(a) (2) only if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1068 (9th Cir. 2014); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) "[w]hat matters to class

**DEFENDANTS' OMNIBUS MOTION**

certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.). Plaintiffs' class question cannot be answered "in one stroke."

Commonality is **not** satisfied where, as here, the court must conduct individual inquiries into each class member's claims. *See, e.g., Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571-73 (8th Cir. 2015). The plaintiff in *Powers* alleged that a "form" complaint violated the FDCPA, because it sought interest not authorized by state law. *See Powers*, 776 F.3d at 570-71. The Eighth Circuit reversed an order certifying the class, noting that even if the theory was correct, *i.e.*, the interest sought was not authorized by state law, "many individualized inquiries are required to resolve class members' claims" thereby precluding a finding of commonality. *Id*. at 571. As the Court has recognized, the same individualized inquiries would need to be performed with respect to Plaintiffs' remaining claims.

In its Ruling, the Court indicated that differences between the Counties meant that "there are really 32 diversion programs at issue in this case[,]" and noted that class certification may need to be revisited. Dkt. No. 348 at 11. The Court further noted that, to the extent that there were differences between the ways the BCDP fees were approved between the Counties, class certification would also need to be revisited. Dkt. No. 348 at 11.

Each California district attorney authorized separate intake criteria for those bad check writers that qualified for any given BCDP. Hardy Decl., ¶¶ 34-42, Exs. 33-41. Persons that might qualify for one County's BCDP would not qualify for another. Thus, Plaintiffs' individual experience with the BCDPs of Orange County, Placer County, and El Dorado County does not demonstrate commonality. Each absent class member would need to be measured against the intake criteria for the specific County whose BCDP they participated in. All of these individualized issues destroy commonality. Rule 23(a)(2) has not been satisfied.

The example of the Los Angeles County BCDP illustrates that the level of delegation differed widely between Counties. Los Angeles County established a BCDP that was implemented and administered by the Los Angeles District Attorney from 1986 until 2000. *See* Dkt. No. 320-2 ("Cooley Decl."), ¶¶ 2-5. The Los Angeles BCDP was funded largely by fees charged to diversion participants, including fees established and approved by the Board of Supervisor for participation in the required educational class. Cooley Decl., ¶ 5.

31

In 1999, Los Angeles County determined that it would be more economical for the District Attorney to utilize a private contractor to perform the educational class and to provide ancillary administrative tasks under the direct supervision of the District Attorney. Cooley Decl., ¶ 6, Ex. C. As such, the County designed and publicly distributed a Request for Proposal ("RFP"), which outlined the entire program and the duties to be performed by the prospective outside contractor. Cooley Decl., ¶¶ 8, 9. This included a request for a fully integrated software application developed specifically to meet the need of the bad checks enforcement program as defined in the RFP, the bad check agreement and by the County Contract administrator once performance on that agreement commenced. Cooley Decl., ¶¶ 7, 13; Ex. A. Once selected, the contractor would be required to extract, format and import "all data from closed and open files in the County's existing bad check database" into the contractor's own database, creating a single, all-inclusive database of all bad check cases whether handled only by the contractor or previously handled exclusively by the County. *Id.*

None of the Defendants consulted or otherwise participated in the generation of the RFP or its contents, including the development of program requirements. Cooley Decl., ¶ 11. At all times, the Los Angeles County Board of Supervisors and Los Angeles County DA were solely and exclusively responsible for the design, structure, implementation, and supervision of the BCDP, including the form, content, appearance and use of the letters sent to bad check offenders, as well as the criteria for determining whether a bad check offense objectively documented satisfaction of the District Attorney's requirements pertaining to probable cause. Cooley Decl., ¶ 11. Moreover, no vendor had any control or right to authorize any fees to be charged in connection with the bad check educational programs as "a Bad Check Diversion class must be offered in compliance with California Penal Code 1001.64 for which the bad check writer *must pay* the $100 class fee." Cooley Decl., Ex. C, p. 3 (emphasis added).

Based upon criteria established by Los Angeles County, NCG was selected to administer the Los Angeles BCDP. Cooley Decl., ¶17. At no time did Defendants have any control over the content, identification, format, appearance or substance of the letters used in the Diversion Program at any time. Cooley Decl., ¶19. While the form letters have been amended since their initial development, such amendments were designed, approved and ratified by the Los Angeles DA through his designated deputies prior to their importation into the NCG database and their use in the program. Cooley Decl., ¶18. NCG did

**DEFENDANTS' OMNIBUS MOTION**

not amend, alter or otherwise change the letters other than automatically transferring suspect information into specific fields in the forms letters as directed by the County through the DA. Cooley Decl., ¶18.

Plaintiffs cannot argue that evidence establishing that it was the County and the DA that developed, approved and ratified the letters that were used in their bad check diversion programs, is not dispositive because it encompasses only several counties and cannot be representative of all counties. Such a position is untenable in a class action where Plaintiffs continuously represent that each class member, whether a named plaintiff or not, was affected in the same manner as any other member. Therefore, evidence of the procedure in one county must necessarily be attributed to all counties less the cohesion of the class be destroyed. As this is the case, the class must be decertified.

Each diversion fee was created by either the plain language of the BCDA or upon approval and ratification by the Los Angeles County Board of Supervisors. Because payment of the fees was required in exchange for services provided by the DA in his official capacity, each district attorney was statutorily required to collect such fees prior to performing his official services whether with administrative support from a private entity or without. Cal. Gov. Code § 6100 (Each county officer "shall not perform any official services unless upon the payment of the fees prescribed by law for the performance of the services"). Moreover, all of the fees collected by the DA were considered public funds, and the manner in which the district attorney demanded, collected, managed and disbursed such funds remained within the exclusive discretion of the Board of Supervisors, not the Defendants. Cooley Decl., ¶20, Ex. E; Cal. Govt. Code § 25303.

The legal status of the diversion fees as county charges and public funds is unaffected by the fact that accounting for those fees may have been provided by an outside company. In fact, Los Angeles County maintained *all* control over the management of the diversion fees, including accounting and disbursement of those fees. Cooley Decl., ¶¶ 20-23. Finally, Los Angeles County conducted both financial audits and performance reviews of NCG's operation of the Los Angeles County BCDP. *See* Dkt. No. 329-11 ("Supp. Hardy Decl."), Ex. 33.

Separately, the Riverside County DA maintained an oversight committee with respect to the Riverside County BCDP. Hardy Decl., ¶ 34, Ex. 33; *see also* Supp. Hardy Decl., Ex. 40 at 13:3-17:17. The

**DEFENDANTS' OMNIBUS MOTION**

Riverside County DA also reviewed cases to confirm that NCG/VSI was complying with the BCDP contract.  *Id.*, at 45:20-46:20; Hardy Decl., ¶ 34, Ex. 33.

The BCDPs in these larger counties differed from those in some smaller counties, such as the El Dorado County BCDP that Bonakdar participated in.  There is no evidence that El Dorado County conducted financial audits and performance reviews of NCG or VSI, as in Los Angeles County.  El Dorado County also did not have an oversight committee assigned to review the BCDP, as was the case in Riverside County.

Among the 32 Counties, the procedures for approval of the BCDP fees differed widely.  Four Counties (Fresno, Los Angeles, Orange, and San Bernardino) approved the BCDP fees via a County Board of Supervisors resolution following an RFP.  *See* Hardy Decl., Exs. 12, 9, 18, 21.  Nineteen Counties (Alameda, Calaveras, Colusa, Contra Costa, Glenn, Imperial, Madera, Marin, Mariposa, Merced, Modoc, Nevada, Riverside, Santa Barbara, Santa Clara, Santa Cruz, Siskiyou, Tuolumne, and Tulare) approved the BCDP fees via a County Board of Supervisors resolution without an RFP.  *See* Hardy Decl., Exs. 1, 2, 3, 4, 6, 7, 10, 11, 13, 14, 15, 17, 20, 24, 25, 26, 28, 31, 32.  Four Counties (El Dorado, Monterey, Placer, and San Joaquin) approved the fees through a county purchasing agent, apparently without an accompanying Board of Supervisors resolution. *See* Hardy Decl., Exs. 5, 16, 19, 22.  Four Counties (Lassen, San Mateo, Sierra, and Stanislaus) approved the fees through the DA alone. *See* Hardy Decl., Exs. 5, 16, 19, 22.  Finally, one County (Sonoma), approved the fees through its county counsel.  *See* Hardy Decl., Ex. 29; *see also* Hardy Decl., Ex. 42 (chart summarizing approval procedures by County).

This raises a separate ground for decertification.  Bonakdar's claim is not typical of the class, as the El Dorado County BCDP differed in material respects both in terms of the level of County oversight, as well as how the BCDP fees were approved.  The prerequisite of typicality requires claims or defenses of the representative parties to be "typical of the claims or defenses of the class." Rule 23(a)(3). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal citations omitted).

Due to this lack of commonality and typicality, this Court should order that the class be decertified as to Plaintiffs' remaining claims.

**VI.**      **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' remaining claims under the doctrine of comity or the TIA.  Separately, the Court should grant judgment on the pleadings for Plaintiffs' failure to join the Counties as required parties.  Alternatively, the Court should dismiss the action and order that the Counties be joined.  In the event the Court elects to decide the issue in the absence of the Counties, summary judgment should be entered in favor of Defendants' on Plaintiffs' remaining claims.  Finally, the Court should decertify the class as to Plaintiffs' remaining claims, given the lack of commonality and typicality.


DATED: June 1, 2020                    By:  /s/M. Taitelman
                                               Michael A. Taitelman
                                               Sean M. Hardy
                                               FREEDMAN + TAITELMAN, LLP
                                               Attorneys for Victim Services, Inc.,
                                               National Corrective Group, Inc., American
                                               Justice Solutions, Inc., Birch Grove
                                               Holdings, Inc., Mats Jonsson, and Karl
                                               Thomas Jonsson

**DEFENDANTS' OMNIBUS MOTION**