Michael F. Ram, CSB #104805
Email: mram@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN SOLBERG, NANCY MORIN, and NARISHA BONAKDAR, on their own behalf and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VICTIM SERVICES, INC., d/b/a CorrectiveSolutions, NATIONAL CORRECTIVE GROUP, INC., d/b/a CorrectiveSolutions, AMERICAN JUSTICE SOLUTIONS, INC., d/b/a CorrectiveSolutions, BIRCH GROVE HOLDINGS, INC., MATS JONSSON and KARL THOMAS JONSSON, <br><br> Defendants. | NO. 3:14-cv-05266-VC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** <br><br> Honorable Vince Chhabria <br><br> <u>CLASS ACTION</u> <br><br> **DEMAND FOR TRIAL BY JURY** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ..................................................................................................... 2

        A.      VSI collected fees that were not permitted by law........................................ 2

                1.      VSI—as a debt collector—may only collect fees that are
                        authorized by law ................................................................................. 3

                2.      The counties did not authorize VSI's fees ............................................. 4

                3.      VSI's arguments for deference are unavailing ..................................... 8

        B.      The UCL claim should be allowed to proceed................................................. 12

III.    CONCLUSION ................................................................................................... 15

**TABLE OF AUTHORITIES**

Page

**FEDERAL RULES**

*Evankavitch v. Green Tree Servicing, LLC,*
    793 F.3d 355 (3d Cir. 2015) ..................................................................... 9

*Gasperini v. Ctr. for Humanities, Inc.,*
    518 U.S. 415 (1996) ............................................................................. 13

*Hertz v. Record Publ'g Co. of Erie,*
    219 F.2d 397 (3d Cir. 1955) ................................................................... 15

*Hunt v. Check Recovery Systems, Inc.,*
    578 F. Supp. 2d 1157 (N.D. Cal. 2007) ........................................................ 9

*Mangold v. Cal. Pub. Utils. Comm'n,*
    67 F.3d 1470 (9th Cir. 1995) ............................................................ 12, 14

*McCollough v. Johnson, Rodenbrug & Lauinger, LLC,*
    637 F.3d 939 (9th Cir. 2011) .............................................................. 8, 9

*Meacham v. Knolls Atomic Power Lab.,*
    554 U.S. 84 (2008) ............................................................................... 9

*Moore v. Mars Petcare US, Inc.,*
    __ F.3d __, 2020 WL 4331765 (9th Cir. July 28, 2020) ................................. 12

*Newman v. Checkrite Cal.,*
    912 F. Supp. 1354 (E.D. Cal. 1995) ............................................................ 3

*Ragan v. Merchants Transfer & Warehouse Co.,*
    337 U.S. 530 (1949) ............................................................................. 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ............................................................................. 13

*Sonner v. Premier Nutrition Corp.,*
    962 F.3d 1072 (9th Cir. 2020) .......................................................... 12, 14

*Sonner v. Premier Nutrition Corp.,*
    No. 18-15890, ECF No. 67 (9th Cir. July 22, 2020) ...................................... 14

*SSMC, Inc. v. Steffen,*
    102 F.3d 704 (4th Cir. 1996) ................................................................. 15

*United Mine Workers v. Gibbs,*
    383 U.S. 715 (1966) .............................................................................. 12

**STATE CASES**

*Bay Area Cellular Tel. Co. v. Union City,*
    62 Cal. App. 4th 686 (2008) ................................................................ 5, 6

*Cal. Ass'n of Prof'l Scientists v. Dep't of Fish & Game,*
    9 Cal. App. 4th 935 (2000) ................................................................ 6, 10

*Cal. Bldg. Indus. Ass'n v. Governing Bd.,*
    06 Cal. App. 3d 212 (1988) ............................................................ *passim*

*Cal. Bldg. Indus. Ass'n v. State Water Res. Control Bd.,*
    4 Cal. 5th 1032 (2018) ........................................................................... 6

*City of Carmel-By-The-Sea v. Bd. of Supervisors,*
    71 Cal. App. 3d 84 (1977) .................................................................... 10

*Cal. Chamber of Commerce v. State Air Res. Bd.,*
    10 Cal. App. 5th 604 (2017) ................................................................... 5

*Cal. Farm Bureau Fed'n v. State Water Res. Control Bd.,*
    51 Cal. 4th 421 (2011) ......................................................................... 10

*Clark Equip. Co. v. Armstrong Equip. Co.,*
    431 F.2d 54 (5th Cir. 1970) .................................................................. 15

*City of Oakland v. Superior Court,*
    45 Cal. App. 4th 740 (1996) ................................................................... 6

*Cty. of L.A. v. Glendora Redevelopment Project,*
    185 Cal. App. 4th 817 (2010) ................................................................. 7

*City of San Buenaventura v. United Water Cons. Dist.,*
    3 Cal. 5th 1191 (2017) ........................................................................... 5

*Compare Lockard v. City of L.A.,*
    33 Cal. 2d 453 (1949) ............................................................................ 9

*Dey v. Cont'l Cent. Credit,*
    170 Cal. App. 4th 721 (2008) ................................................................................. 8

*Hansen v. Civil Serv. Bd. of City of Alameda,*
    147 Cal. App. 2d 732 (1957) ................................................................................. 10

*Kern Cty. Farm Bureau v. Cty of Kern,*
    19 Cal. App. 4th 1416 (1993) ................................................................................. 6

*Prof'l Engineers v. Dep't of Transportation,*
    15 Cal. 4th 543 (1997) ................................................................................. 7

*Mahoney v. S.F. City & Ctny. Emps. Retirement Bd.,*
    30 Cal. App. 3d 1 (1973) ................................................................................. 10

*Orinda Homeowners Comm. v. Bd. of Supervisors,*
    11 Cal. App. 3d 768 (1970) ................................................................................. 10

*Shapell Indus., Inc. v. Governing Bd.,*
    1 Cal. App. 4th 218 (1991) ................................................................................. *passim*

*Sinclair Paint Co. v. State Bd. of Equalization,*
    15 Cal. 4th 866 (1997) ................................................................................. 6, 7

*Topanga Ass'n for a Scenic Community v.  Cty. of L.A.,*
    11 Cal. 3d 506 (1974) ................................................................................. 10

*Utility Audit Co., Inc. v. City of L.A.,*
    112 Cal. App. 4th 950 (2003) ................................................................................. 5

*Ward v. Riverside Cty.,*
    273 Cal. App. 2d 353 (1969) ................................................................................. 10

## FEDERAL STATUTES

15 U.S.C. § 1692f ................................................................................. 4

15 U.S.C. § 1692f(1) ................................................................................. 1, 3, 8

## OTHER AUTHORITIES

Cal. Pen. Code § 1001.64(c) ................................................................................. 3

Cal. Pen. Code § 1001.65(a) ................................................................................. 3, 4

## I.  INTRODUCTION

VSI's bad-check diversion program has a problem: VSI is a debt collector under the Fair

Debt Collection Practices Act (FDCPA). And under the FDCPA, debt collectors are prohibited

from charging "any . . . fee . . . unless such amount is expressly authorized by the agreement

creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The fees that VSI charges are not

permitted by law. No statute authorizes their collection, and no county ratified them as user or

regulatory fees even though it would have been easy for the counties to do so. And VSI offers

no evidence that the counties even *tried* to lawfully ratify these fees. *No* county board of

supervisors made *any* findings concerning the fees at issue here. Because VSI is unable to point

to any law or procedurally-sufficient local-government authorization of these fees, its collection

of them violates the FDCPA. Plaintiffs respectfully request that the Court grant summary

judgment on this issue.

VSI's argument that plaintiffs must prove its class fees are taxes ignores its own burden

under the FDCPA and mischaracterizes prior proceedings in this case. A county may only adopt

a tax with the approval of two-thirds of the voters who live in the county. *See* Cal. Const. Art XIII

A § 4. No one has ever contended that any county complied with that requirement in approving

VSI's class fees. That is why the discovery the parties pursued after the Court's prior summary

judgment ruling was directed to whether VSI's fees were validly approved user fees as VSI

argued. But the evidence showed that no county did comply with the statutory requirements

for adoption of user fees so VSI renamed them "regulatory" fees.

Unable to offer any lawful basis for the fees that it charges, VSI asks this court to

reflexively defer to its position. None of its arguments for deference are correct. *First*, although

VSI argues (at 17) that it does not have to "justify that it is legal for it to charge a fee for [its] service," in the Ninth Circuit debt collectors must be able to demonstrate the lawfulness of their fees at summary judgment. *Second*, while legislative findings are afforded considerable deference, that deference is irrelevant where, as here, the counties have offered no factual findings at all. In the absence of adequate governmental findings, a private collection outfit cannot bootstrap its own self-serving characterization to supply the missing evidence from the county. *Finally*, VSI's extraordinary argument (at 23) that "California law *only* permits a plaintiff to challenge a fee, levy, or assessment as an improper tax" is flat-out wrong: where a charge "cannot stand either as [a] tax[] or [as a] fee[]," it is not permissible. *Cal. Bldg. Indus. Ass'n v. Governing Bd.*, 206 Cal. App. 3d 212, 218 (1988). A fee charged by a private company adopted without following the procedures by which local governments are authorized to impose fees is not "permitted by law" for purposes of the FDCPA.

## II.  ARGUMENT

### A.    VSI collected fees that were not permitted by law.

In administering bad-check diversion programs, VSI imposes, collects, and retains additional fees, above and beyond those authorized by California state law. VSI argues (at 24) that these fees were actually imposed by the *counties*, pursuant to their police powers. But the counties did not authorize these fees using any of the procedural mechanisms by which local governments may impose fees on Californians. *See* ECF No. 348 at 25 (identifying open questions). That is fatal to VSI's argument: Absent explicit authorization, VSI's fees are not permitted by law and so their collection of them violates the FDCPA.

1.      VSI—as a debt collector—may only collect fees that are authorized by law.

California has authorized a number of pre-trial diversion programs through which

counties encourage eligible offenders to elect rehabilitation in lieu of criminal prosecution. The

Bad Check Diversion Act, at issue here, is different. It authorizes county prosecutors to enter

into agreements with private contractors to offer diversion programs before any charges are

filed. And Private administrators of diversion programs are debt collectors under the FDCPA

where, as here, the program does not meet specific statutory exceptions. ECF No. 348 at 6-7; *id.*

at 15 (VSI "must be considered a 'debt collector' within the meaning of the FDCPA.").

Under the FDCPA, debt collectors may not collect fees that are not "expressly

authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Therefore, while private contractors administering pre-trial diversion programs in other

contexts may be free to impose fees so long as the fees are not *prohibited* by law, in the bad-

check context, program administrators may only impose fees where that are expressly

*permitted* by law. *See Newman v. Checkrite Cal.,* 912 F. Supp. 1354, 1368 (E.D. Cal. 1995). The

only fees expressly authorized by the BCDA are a $50 administrative fee, and a bank charge of

up to $15. Cal. Pen. Code §§ 1001.64(c), 1001.65(a). So VSI must look elsewhere for a source of

authority for the other "class fees" it charges. It is undisputed that no county adopted an

ordinance authorizing VSI's fees. *See* ECF No. 358-42 (VSI's chart showing no ordinances

adopting fees). VSI says that counties made appropriate findings in adopting the fees (at 18).

Although it is not entirely clear, presumably VSI is asserting that that counties followed the

procedures required to adopt regulatory fees.

2.      <u>The counties did not authorize VSI's fees.</u>

To support its bid for summary judgment, VSI argues that, because no statute "prohibits the administrative fees" at issue here, its collected fees are lawful. ECF 364 at 18. That is not enough. For its fees to be lawful, VSI must *affirmatively* identify some law that permits them. 15 U.S.C. § 1692(f). Because VSI cannot do so, the fees it collects are not lawful.

VSI suggests that the Bad Check Diversion Act supplies the necessary affirmative authorization. It does not. That statute expressly authorizes diversion-program administrators to collect only two fees in addition to restitution: a "processing fee" not to exceed fifty dollars per check, Cal. Penal Code § 1001.65(a), and "fee[s] for bank charges incurred by the victim," not to exceed fifteen dollars per check, *id.* § 1001.65(c). Neither contemplates the additional fees at issue here.

Still, this Court has determined that the BCDA "leaves the door open for unspecified fees" and indicated that those fees could be lawful if "adopted in a manner consistent with state law." ECF No. 348 at 23. The question here, as this court recognized, is then whether the counties imposed additional fees on diversion-program participants "through at least one appropriate procedural mechanism." *Id.* at 25. For instance, the counties could have authorized VSI's collection of additional fees—beyond those contemplated by the BCDA—by imposing user fees on plan participants. But the counties did not do so. *See* ECF No. 359 at 29-31. VSI does not even attempt to contest this fact in its Response. This alone should end the inquiry.

What VSI does do is attempt to circumvent the statutory requirements for imposing user fees by characterizing its fees (at 9, 23-24) as "regulatory fees." That is wrong—California courts have squarely rejected such self-serving labels. That is because "[a]llowing [a company]

to characterize these [] fees" as regulatory fees "would have the effect of permitting them to avoid prescribed statutory limitations by judicious choice of a label." *Cal. Bldg. Indus. Ass'n v. Governing Bd.*, 206 Cal. App. 3d 212, 236 (1988). And doing that, in short, "is not permissible." *Id.*

Even so, VSI argues (at 24-25) that the class fees are regulatory in nature because they (1) are voluntary and (2) confer a benefit on program participants. Neither justification works. On (1), the voluntariness of a fee does not speak to the distinction between regulatory and user fees. *Both* types of fees are voluntary: It is their voluntary nature that distinguishes them from *taxes*, not from each other. *See Cal. Chamber of Commerce v. State Air Res. Bd.*, 10 Cal. App. 5th 604, 614 (2017) (distinguishing the fees at issue from taxes because the fees were collected based on "voluntary participation").

On (2), VSI's understanding of the conferred "benefit" is a category error. That is because the "benefit" one receives from a regulatory system—such as paying to receive a license granting permission to engage in a regulated activity—is analytically distinct from the type of "goods or services" a payor receives after paying a user fee. *See City of San Buenaventura v. United Water Cons. Dist.*, 3 Cal. 5th 1191, 1204, 1211 (2017) (fees "imposed on well operators for the privilege of extracting water from underground reserves" are "in the nature of" regulatory fees and should be categorized as such if the fee amounts are reasonably related to the costs of the regulatory program); *see Utility Audit Co., Inc. v. City of L.A.*, 112 Cal. App. 4th 950, 957 (2003) (fees charged to users of the City's sewer system are user fees). *See also Bay Area Cellular Tel. Co. v. Union City*, 162 Cal. App. 4th 686, 694 (2008) (describing "user fees" as "those which are charged only to the person actually using the service" where "the

amount of the charge is . . . related to the actual goods or services provided"); *Cal Ass'n of Prof'l Scientists*, 79 Cal. App. 4th at 950 (distinguishing regulatory fees from "other types of user fees" that are "easily correlated to the specific, ascertainable cost" of the good or service provided). The fees at issue here, however, are payments in exchange for a "specific commodity"—an educational seminar and a non-prosecution agreement, *Bay Area Cellular Tel. Co*, 162 Cal. App. 4th at 694—and so "have the appearance of" user fees and therefore "should be considered as such," *Cal. Bldg. Indus. Ass'n*, 206 Cal. App. 3d at 325.

But even if the class fees could properly be considered regulatory fees, it would not help VSI, because the counties never attempted to impose regulatory fees on diversion-program participants, either. As plaintiffs have explained at length, *see* ECF No. 359 at 20-28, regulatory fees cannot be adopted willy nilly: A local government that imposes regulatory fees must demonstrate that the fees "bear a reasonable relationship" to the costs of the regulatory program, *Sinclair Paint Co. v. State Bd. of Equalization*, 15 Cal. 4th 866, 870 (1997), and that the fees will not be spent for "unrelated purposes," *Cal. Bldg. Indus. Ass'n v. State Water Res. Control Bd.*, 4 Cal. 5th 1032, 1051 (2018). Because of these requirements, local governments commonly impose regulatory fees via ordinances or formal resolutions, where the proper findings can be made. *See, e.g.*, *City of Oakland v. Superior Court*, 45 Cal. App. 4th 740, 762 (1996) (regulatory fee imposed via city ordinance); *Kern Cty. Farm Bureau v. Cty of Kern*, 19 Cal. App. 4th 1416, 1419 (1993) (regulatory fee imposed via county ordinance). Here, by contrast, *no* county established its check-diversion program via ordinance and only twelve (of thirty-two) adopted resolutions, none of which address, let alone authorize, the class fees. ECF No. 359 at

27-28. And regardless of how the counties authorized their check-diversion programs, *no* county made *any* findings concerning the fees at issue here.

VSI's lengthy recitation (at 19-22) of letters from the District Attorneys of four of the thirty-two counties to their respective County Boards of Supervisors does not change any of this. VSI characterizes these letter as "evidence" that the counties "adopted . . . findings." But calling these statements "findings" cannot make them so. Signing a memo presented by the DA is not the same thing as issuing "factually supported findings," *Prof'l Engineers v. Dep't of Transportation*, 15 Cal. 4th 543, 569 (1997). For instance, there is no evidence that the counties have "drawn reasonable inferences based on substantial evidence" or that they "considered any empirical data" concerning the fees at issue. *Cty. of L.A. v. Glendora Redevelopment Project*, 185 Cal. App. 4th 817, 831 (2010). And even if the statements in these letters *could* be attributed to the counties, nothing in the DA letters demonstrates that the fees "do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged." *Sinclair Paint Co.*, 15 Cal. 4th at 876. To the contrary, the reference to the class fees in the Fresno DA's letter just lists the amount to be charged for the "Diversion Seminar," $175, without anywhere describing the relationship between this amount and the costs of providing the seminar. ECF No. 364 at 20 (describing the "Diversion Seminar Fee").

At best, the counties' approval of these DA memos demonstrates that the counties recognized that the diversion programs would not impose any costs on *them*.[1] But this is not

---

[1] That the counties recognized that the diversion programs would not cost them anything underscores the excessiveness of VSI's fees: The user fees, frequently totaling a sum of over $200, are grossly disproportionate to the cost of the diversion programs on the counties, which is $0. *See* ECF No. 348 at 25 (asking the parties to consider "whether, as a substantive matter,

nearly enough: to find that the Boards imposed regulatory fees, there must be evidence that "the Board[s] acted after finding a reasonable relationship between the fee and the need to which" the program "contributes." *Shapell Indus., Inc. v. Governing Bd.*, 1 Cal. App. 4th 218, 247 (1991). That VSI's "evidence" amounts to several cherry-picked documents from only four of the thirty-two counties and does not include any examples of relevant county findings should make clear that there are none. At the very least, this lack of evidence must preclude the court from granting summary judgment in favor of VSI. *See McCollough v. Johnson, Rodenbrug & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011).

Bottom line: If the counties had wanted to impose regulatory fees on bad-check diversion program participants beyond those authorized by the BCDA, they could have followed the procedural mechanisms for doing so. That they did not means that the fees VSI collects are not "permitted by law."

3.  <u>VSI's arguments for deference are unavailing.</u>

Unable to demonstrate that its fees are "permitted by law," 15 U.S.C. § 1692f(1), VSI presents a handful of arguments that all amount to the same thing: "Trust us." But none of its arguments for blind deference stand up to scrutiny.

*First*, VSI argues (at 17) that it does not have to "justify that it is legal for it to charge a fee for [its] service." *Dey v. Cont'l Cent. Credit*, 170 Cal. App. 4th 721, 727 (2008). But in the Ninth Circuit, while a debt collector need not establish that it is entitled to collect fees at the time it files its debt collection action in court, it must be able to do so "at the time of the

---

the user fees represent a reasonable cost to the counties (not to Victim Services) of operating the bad-check diversion programs.").

summary judgment motion." *McCollough*, 637 F.3d at 950.[2] *See also id.* ("The district court correctly concluded that [the debt collector] failed to meet its burden to show a genuine issue for trial because it presented no admissible evidence of a contract authorizing a fee award."). Here, there is "no compelling reason to reverse the 'longstanding convention' that a party seeking shelter in an exception—here, the debt collector—has the burden to prove it." *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362-63 (3d Cir. 2015) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008)).

*Second*, VSI papers over the fact that the counties made *no* factual findings concerning the class fees by arguing (at 18-19) that California law supplies a "strong presumption of the validity of the Counties' Boards of Supervisors['] resolutions approving the BCDP fees." Even ignoring the fact that, here, twenty-three of the thirty-two counties did not adopt *any* resolution concerning VSI's bad-check diversion program—and *no* county adopted a resolution "approving" the fees at issue—this argument mischaracterizes California law. To begin, VSI's characterization of the deference due to county boards as a one-size-fits-all approach is not correct: California courts recognize that the "appropriate degree of judicial scrutiny" due to local-government actions "lies somewhere along a continuum." *Shapell Indus., Inc. v. Governing Bd.*, 1 Cal. App. 4th 218, 232 (1991). *Compare Lockard v. City of L.A.*, 33 Cal. 2d 453 (1949) (affording significant deference to the legislature's findings in the zoning context), *with*

---

[2] VSI improperly relies on California law for its argument about the burden of proof under the FDCPA. While the question of "whether charges are permissible [by law] within the meaning of [§ 1692f(1) of the] FDCPA *turns on California law*," *Hunt v. Check Recovery Systems, Inc.*, 578 F. Supp. 2d 1157, 1161 (N.D. Cal. 2007), questions concerning the proper interpretation and application of the statute itself turn on *federal* law. *See McCollough*, 637 F.3d at 949-950; *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 361-63 (3d Cir. 2015) (reasoning from federal law principles to determine the burden of proof under the FDCPA).

*Topanga Ass'n for a Scenic Community v. Cty. of L.A.*, 11 Cal. 3d 506, 517 (1974) (applying a heightened scrutiny to the county's granting of a variance "in order to protect the interests of those who hold property nearby the parcel for the which the variance is sought"). But in any context, "the court must satisfy itself that the order was supported by the evidence." *Shapell Indus.*, 1 Cal. App. 4th at 232.[3]

The deference due to county actions imposing regulatory fees lies somewhere between these two poles. While courts grant local governments significant leeway when they impose regulatory fees via ordinance, *see Cal. Ass'n of Prof'l Scientists v. Dep't of Fish & Game*, 79 Cal. App. 4th 935, 954 (2000), courts recognize limitations on this power in order to ensure that local governments do not circumvent the democratic process, *see, e.g.*, *Cal. Farm Bureau Fed'n v. State Water Res. Control Bd.*, 51 Cal. 4th 421, 441 (2011) (local governments must demonstrate that there is a "reasonable relationship between the fees assessed and the costs of the regulatory activity"). In the absence of adequate governmental findings, a private

---

[3] Setting aside VSI's overstatement of the deference due under California law, the cases it cites for its deference argument do not support its position. None of the five cases that VSI cites stand for the proposition that a local government should be granted deference where it makes *no* factual findings whatsoever. Of these five cases, two are in fact examples of the court *overturning* a local government's action due to insufficient findings. *See Mahoney v. S.F. City & Cnty. Emps. Retirement Bd.*, 30 Cal. App. 3d 1, 6 (1973) (remanding to the retirement board due to the "lack of findings by the board"); *City of Carmel-By-The-Sea v. Bd. of Supervisors*, 71 Cal. App. 3d 84, 87 (1977) ("We have reviewed the administrative findings and conclude that they are not sufficient to support the decision and action of the agencies involved."). In two cases, the court did not require findings because the local government was acting pursuant to a statute that explicitly stated that findings were *not* required. *See Hansen v. Civil Serv. Bd. of City of Alameda*, 147 Cal. App. 2d 732, 734 (1957); *Ward v. Riverside Cty.*, 273 Cal. App. 2d 353, 356-57 (1969). And in the final case, the county's action was upheld because the county explicitly *did* make the requisite findings. *Orinda Homeowners Comm. v. Bd. of Supervisors*, 11 Cal. App. 3d 768, 774 (1970). The courts' statement that such findings could be "informal" did not absolve the county of its requirement to make findings at all. *Id.* at 775.

collection outfit cannot bootstrap its own self-serving characterization to supply the missing evidence from the county.

*Finally*, VSI advances (at 22) the extraordinary argument that, because the fees at issue are not a tax, they must be lawful, contending that "California law *only* permits a plaintiff to challenge a fee, levy, or assessment as an improper tax." But this argument proves too much. Under VSI's theory, a local government or its agent could impose *any* fee on *any* party via *any* procedural process and, so long as the fee was sufficiently targeted to not qualify as a tax, it would be permissible. Both common sense and California caselaw contradict such an extreme position, as this would make "local legislation . . . virtually immune from effective judicial review." *Shapell Indus., Inc.*, 1 Cal. App. 4th at 232.

Despite VSI's protestations, there is nothing "circuitous" about plaintiffs' argument: the fees imposed, collected, and retained by VSI "cannot stand either as [] taxes or [regulatory] fees" because the counties never took the necessary steps to authorize them as either. *Cal. Bldg. Indus. Ass'n v. Governing Bd.*, 206 Cal. App. 3d at 218; *see id.* at 2018-19 (finding that local-government charges were neither taxes nor lawfully-imposed fees because, though the charges were "actually in the nature of development fees," they were not enacted pursuant to the applicable statutory requirements). In the absence of such authorization, VSI's fees are neither legislatively-imposed taxes nor lawfully-enacted regulatory (or user) fees: They are ultra vires fees collected by a debt collector, in violation of the FDCPA.

B.      **The UCL claim should be allowed to proceed.**

Relying on *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020), VSI also

argues that it is entitled to partial summary judgment on the UCL claim "for the fundamental

reason that Plaintiffs do not lack an adequate remedy at law." ECF No. 364 at 1. That is wrong.

First, even if the Court agrees that *Sonner* deprives it of the power to grant Ms.

Bonakdar and some UCL class members an equitable remedy, at most it should dismiss the UCL

claim without prejudice. The Court certainly cannot do what VSI asks (at 3-8), which is grant

judgment in its favor on the ground that Court's equity jurisdiction does not extend to providing

the relief plaintiffs seek.

Second, under *Erie*'s settled rule, there is nothing "fundamental" about permitting, let

alone requiring, a federal court to bar a statutorily prescribed remedy for claims brought under

state statutory law. As the Ninth Circuit has explained even after *Sonner*, the argument that a

plaintiff "cannot seek equitable relief under the UCL" because another statute may provide "an

adequate legal remedy" is "foreclosed by statute." *Moore v. Mars Petcare US, Inc.*, __ F.3d __,

2020 WL 4331765, at *9 n.13 (9th Cir. July 28, 2020). Put another way: Where a state statute

(like the UCL) "explicitly provide[s] that remedies . . . are cumulative to each other," a federal

court may not override that state's sovereign choice to authorize multiple remedies to its

citizens. *Id.*[4]

---

[4] These basic *Erie* principles apply regardless of whether a federal court has assumed jurisdiction
over a state-law claim through diversity or supplemental jurisdiction. *See Mangold v. Cal. Pub.
Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (holding that *Erie* extends to cases heard under
supplemental jurisdiction); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Basic principles of federalism require that this rule be rigorously enforced. In our federalist system, federal courts may not "dictate to state legislatures the form that their substantive law must take." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010) (Stevens, J., concurring in part and concurring in the judgment). As a result, "[w]hen a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Id.* Federal courts that ignore that choice "limit the ways that sovereign States may define their rights and remedies." *Id.*

And this rule applies with equal force to questions concerning the scope or availability of statutory remedies. As the Supreme Court explained in *Gasperini v. Ctr. for Humanities, Inc.*, when a state's "substantive law governs a claim for relief," its "law and decisions guide the allowable damages" even where the claims proceed in federal court. 518 U.S. 415, 437 (1996). That is because "rights enjoyed under local law should not vary because enforcement of those rights was sought in federal court rather than in the state court." *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949). So, when a "cause of action is created by local law, the measure of it is found only in local law," it "carries the same burden and is subject to the same defenses in the federal court as in the state court," and it "accrues and comes to an end when local law so declares." *Id.* (citations omitted). And because restitution "actually is part of [California's] framework of substantive rights or remedies," no federal rule may override it regardless of whether a different rule might apply in federal court to federal claims. *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring in part and concurring in the judgment).

To the extent that *Sonner* could be read to discard these longstanding principles and overturn settled precedent, it would be wrong.[5] That is because such a "sweeping" interpretation, as VSI puts it, is flatly inconsistent with both of "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the law." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). If a particular UCL remedy is available in state court but not in federal court forum-shopping would become a near certainty. And a significant difference in the nature of remedies would also undoubtedly create an inequitable administration of the law. In similar circumstances, the Ninth Circuit has had little trouble rejecting efforts to broaden the scope of its own "decisional law." *See Mangold*, 67 F.3d at 1479 (holding that "the availability of a multiplier for fees in state court, but not in federal court, would likely lead to forum-shopping" and "a significant difference in fees would be available in state court but not in federal court" would create result in "inequitable administration of the law"). Although the panel in *Sonner* acknowledged this requirement, *see, e.g.*, 962 F.3d at 1076-77, it chose to ignore it. *See id.* at 1078-79 (acknowledging that "applying federal equitable principles may lead to a different result" but concluding that certain "policies" justify the difference).

Nor does the panel's decision in *Sonner* "mirror those of several other circuits." *Id.* at 1080. As the cases cited by the panel in *Sonner* make clear, federal courts exercising jurisdiction over state-law claims are empowered to award broader equitable relief than what otherwise might be permitted by state law, but only so long as doing so remains consistent with the state

---

[5] A petition for rehearing or rehearing *en banc* is currently pending. *Sonner v. Premier Nutrition Corp.*, No. 18-15890, ECF No. 67 (9th Cir. July 22, 2020).

statutory regime. *See, e.g.*, *SSMC, Inc. v. Steffen*, 102 F.3d 704 (4th Cir. 1996) (affirming lower court's decision to fashion broader equitable relief); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970) (recognizing that a federal court has "the power to enforce State-created substantive rights by well-recognized equitable remedies even though such remedy might not be available in the courts of the State"); *Hertz v. Record Publ'g Co. of Erie*, 219 F.2d 397, 393 n.2 (3d Cir. 1955) (same, noting that this is particular true "where the result would be substantially the same as in a state proceeding"). No understanding of these decisions suggests that the opposite is also true—that a federal court can narrow the scope of relief available under state statutory law—precisely because such a result would unavoidably conflict with *Erie*. This Court should reject any interpretation of *Sonner* that would lead it to disregard the settled *Erie* principles that have long governed the federal courts' approach to resolving claims brought under state law. VSI's request for summary judgment on the UCL claim should be denied. Because VSI's conduct violates the FDCPA, it is unlawful under the UCL.

In addition, members of the UCL class have no remedy at law. Many members of the UCL class do not have claims under the FDCPA because they received VSI's letters outside the statute's one-year statute of limitations. Restitution under the UCL is the only way those class members can recover the ultra vires fees VSI demanded from them. If the Court concludes that it cannot grant class members equitable relief under the UCL, they should have an opportunity to re-file their UCL claims in state court.

### III.  CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for partial summary judgment on the issue of whether VSI's class fees are permitted by California law**.**

RESPECTFULLY SUBMITTED AND DATED this 3rd day of August, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, CSB #178181
Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Blythe H. Chandler, *Admitted Pro Hac Vice*
Email: bchandler@terrellmarshall.com
Maria Hoisington-Bingham, *Admitted Pro Hac Vice*
Email: mhoisington@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Paul Arons, CSB #84970
Email: lopa@rockisland.com
LAW OFFICE OF PAUL ARONS
685 Spring Street, Suite 104
Friday Harbor, Washington 98250
Telephone: (360) 378-6496
Facsimile: (360) 378-6498

Deepak Gupta, *Admitted Pro Hac Vice*
Email: deepak@guptawessler.com
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Telephone: (202) 888-1741
Facsimile: (202) 888-7792

Michael F. Ram, CSB #104805
Email: mram@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on August 3, 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification to

all registered CM/ECF users:

> Michael A. Taitelman, CSB #156254
> Email: mtaitelman@ftllp.com
> Sean M. Hardy, CSB #266446
> Email:  smhardy@ftllp.com
> FREEDMAN & TAITELMAN, LLP
> 1901 Avenue of the Stars, Suite 500
> Los Angeles, California 90067
> Telephone: (310) 201-0005
> Facsimile: (310) 201-0045

> *Attorneys for Defendants*

DATED this 3rd day of August, 2020.

> TERRELL MARSHALL LAW GROUP PLLC

> By:  /s/ Beth E. Terrell, CSB #178181
>       Beth E. Terrell, CSB #178181
>       Email: bterrell@terrellmarshall.com
>       936 North 34th Street, Suite 300
>       Seattle, Washington 98103-8869
>       Telephone: (206) 816-6603
>       Facsimile: (206) 319-5450

> *Attorneys for Plaintiffs*